IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ) | CIVIL NO. 22-00450 SOM-KJM |
| ) | |
| QBE SPECIALTY INSURANCE ) | |
| COMPANY, ) | ORDER REJECTING THE |
| ) | MAGISTRATE JUDGE'S |
| Interpleader-Plaintiff, ) | RECOMMENDATION; GRANTING |
| ) | INTERPLEADER-PLAINTIFF QBE |
| vs. ) | SPECIALTY INSURANCE |
| ) | COMPANY'S FIRST AMENDED |
| ELIZABETH KANE, AS CHAPTER 7 ) | MOTION FOR LEAVE TO DEPOSIT |
| TRUSTEE FOR HAWAII ISLAND ) | INTERPLEADER FUNDS, |
| AIR, INC., ET AL., ) | DISCHARGE, AND DISMISSAL |
| ) | WITH PREJUDICE; AND ORDERING |
| Interpleader-Defendants. | LIMITED INJUNCTION |

_____


**ORDER REJECTING THE MAGISTRATE JUDGE'S RECOMMENDATION;
GRANTING INTERPLEADER-PLAINTIFF QBE SPECIALTY
INSURANCE COMPANY'S FIRST AMENDED MOTION FOR LEAVE
TO DEPOSIT INTERPLEADER FUNDS, DISCHARGE, AND
DISMISSAL WITH PREJUDICE; AND ORDERING LIMITED INJUNCTION**

I.        INTRODUCTION.

        Interpleader-Plaintiff QBE Specialty Insurance Company

("QBE") filed this interpleader action to avoid further

litigation associated with the bankruptcy of Hawaii Island Air,

Inc. ("Island Air"), and a lawsuit against several of the

company's former officers, directors, owners, and lenders.  The

former officers and directors are covered by QBE insurance policy

number QPLO192298 ("the Policy").  Rather than taking on the

risks associated with a determination of which Interpleader-

Defendants are entitled to the finite Policy funds, QBE filed a

Complaint for Interpleader in the U.S. Bankruptcy Court for the District of Hawaii. *See QBE Specialty Ins. Co. v. Kane, et al.*, Adv. Pro. No. 22-90006 ("Interpleader Bankruptcy Proceeding"), ECF No. 1. Not long after, QBE filed this motion for leave to deposit the remaining Policy funds with the court and for discharge, injunctive relief, and dismissal. *See* ECF No. 12.[1]

This case began in the bankruptcy court pursuant to a reference to that court by the district court. The district court later withdrew the referral, *see* ECF No. 11, and this interpleader case came before the district court. The motion seeking to deposit Policy funds with the court was then reviewed by the Magistrate Judge, who denied the motion. *See* ECF No. 32. Because QBE's motion is dispositive, the court treats that denial as the Magistrate Judge's findings and recommendation and reviews it *de novo*.[2]

QBE clearly satisfies most of the interpleader requirements, but there is a dispute as to whether QBE filed this

---

[1] All ECF references are to *QBE Specialty Insurance Company v. Elizabeth Kane, et al.*, Civil Number 22-00450 except when otherwise noted.

[2] The Magistrate Judge's decision is styled as an order, but, applying the reasoning detailed later in the present order, this court construes that decision as the Magistrate Judge's Findings and Recommendation and reviews it *de novo* because the underlying motion was dispositive. *See Florence v. Stanback*, 607 F. Supp. 2d 1119, 1122 (C.D. Cal. 2009) (Even if "the Magistrate Judge entered an order purporting to determine a dispositive matter, the Court has the authority to ignore the form of the decision and treat it as a Report and Recommendation.").

action in good faith.  If it did, the motion should be granted. If it did not (that is, if it filed without any real or reasonable fear of multiple liability), the court should deny the motion and dismiss the case.

Having reviewed the parties' positions, the court concludes that QBE faces a real threat of multiple competing claims and is properly seeking interpleader.  In so concluding, this court has before it more material than was before the Magistrate Judge.  This court includes that new material in its consideration and, combining it with the law and other evidence outlined in this order, rejects the Magistrate Judge's recommendation and grants QBE's motion for leave to deposit funds, discharge, and dismissal.  This court also orders a limited injunction.

## II.      BACKGROUND.

### A.   The Policy.

The insurance policy at issue covers directors and officers and entity ("D & O") liability and employment practices liability for claims first made against the insureds between March 2, 2017, and March 2, 2018.  *See* ECF No. 34-2.  The D & O liability covers Island Air, its subsidiaries, its executives, and its employees up to a maximum aggregate limit of liability of $5,000,000.  *See* ECF No. 34-2, PageID # 302.  It also provides $1,000,000 for nonindemnifiable loss for executives or natural

3

person general partners.  *See* ECF No. 34-2, PageID # 292.

Subject to terms and conditions, the Policy insures covered

persons against losses suffered during legal, administrative, or

regulatory proceedings related to their wrongful acts.

### B.   **The Litigation**.

Island Air filed for bankruptcy in 2017.  *See* Adv. Pro.

No. # 17-01078, ECF No. 1.  Two years later, the bankruptcy

trustee, joined by two labor unions, filed an adversary

proceeding with a 13-count complaint in the Bankruptcy Court for

the District of Hawaii against several of Island Air's prior

owners, executives, directors, and lenders, arguing that they

caused the company's bankruptcy.  *See* Adv. Pro. No. # 19-90027

("the Trustee Proceeding" filed in the Bankruptcy Court for the

District of Hawaii), ECF No. 1.

Throughout the course of the Trustee Proceeding, a

number of parties sought funds from QBE to cover defense costs

related to the trustee's claim, as well as the related cross-

claims, third-party complaints, and subpoenas.  *See* ECF No. 14,

PageID # 108-09.[3]  QBE has acknowledged that the Trustee

Proceeding, and various claims deriving from it, are covered

claims.  *See* ECF No. 13, PageID # 97.  Indeed, QBE has already

---

[3] A global settlement has twice been attempted, but the
matter has not so far settled.  *See* ECF No. 33; *see also Paul
Marinelli v. QBE Speciality Insurance Company*, Civ. No. 22-00391,
ECF No. 1, PageID # 12.

advanced defense costs to three Interpleader-Defendants for losses related to these claims. *See* ECF No. 35, PageID # 340. These payments have reduced the available Policy funds to $5,513,221.51. *See* ECF No. 35, PageID # 9, 11.

In March 2022, QBE initiated this interpleader action in the Bankruptcy Court for the District of Hawaii. *See* ECF No. 1. After QBE filed its complaint, several additional parties requested advancement of Policy funds for defense costs. Interpleader-Defendants Paul Marinelli, David H. Pflieger Jr., Philip Wegescheide, and Jeffrey Au each secured relief from an automatic stay imposed by the bankruptcy court and submitted formal requests to QBE for $3,560,783.84, $48,945, $12,678.37, and $3,630,732.93, respectively. *See* ECF No. 13, PageID # 98; ECF No. 35, PageID # 342; Adv. Pro. No. #17-01078, ECF Nos. 1105, 1131, 1153.

During this same period, the bankruptcy trustee proposed to settle with Interpleader-Defendants Christopher Gossert and Catherine Yannone by having Gossert and Yannone each pay the trustee $1.2 million in exchange for resolution of all claims against them. The proposal was contingent on QBE's approval and has not yet been finalized. *See* Interpleader Bankruptcy Proceeding, ECF No. 133, Pg. 14.

QBE filed this motion in July 2022.[4]  *See* ECF No. 12. In October 2022, the Bankruptcy Judge recommended that the district court withdraw the reference of this matter to the bankruptcy court.  *See* Interpleader Bankruptcy Proceeding, ECF No. 154.  The court adopted that recommendation, and the matter is now proceeding in a district court.  *See* ECF No. 11.

Several Interpleader-Defendants filed timely responses to QBE's Motion for Leave to Deposit Funds, Discharge, Injunctive Relief, and Dismissal.  *See* ECF Nos. 17–20.  The responses by Philip Wegescheide, Paul Marinelli, and Jeffrey Au, Malama Investments, LLC, and PaCap Aviation Finance LLC were in opposition.  *See* ECF Nos. 17–19.  The response filed by Gossert and Yannone urged the court to approve their proposed settlement and to then dismiss Gossert and Yannone before granting QBE's motion.  *See id*.

On November 29, 2022, the Magistrate Judge denied QBE's Motion.  *See* ECF No. 32.  He concluded that the plain language of the Policy makes clear which parties are entitled to the Policy funds and that claims inconsistent with that language lack substance and do not give rise to real and reasonable fears of multiple liability.  See *id*.

QBE challenges the Magistrate Judge's ruling, as do

---

[4] QBE filed the original motion on July 14 and a first amended version the following day.  *See* Interpleader Bankruptcy Proceeding, ECF Nos. 110, 114.

Gossert and Yannone.  *See* ECF Nos. 34–35.  They argue that QBE
faces competing claims to its limited Policy funds and that the
claims are substantial enough to justify interpleader.

Marinelli agrees with the Magistrate Judge's conclusion
that the plain language of the Policy resolves competing claims
to the funds and forecloses any real threat of multiple
liability.  *See* ECF No. 38.  According to Marinelli, the Policy
clearly requires that funds be paid to the first claimant who
seeks Policy funds.  *See id.*, PageID # 410.  Characterizing the
sequence of claim submissions as clear and recognizing the
likelihood that the claims already submitted will exhaust the
remaining Policy funds, Marinelli argues that QBE cannot
reasonably fear adverse claims and is improperly using the
interpleader procedure to avoid clear, contractual obligations.
*See id.*, PageID# 410-12.

During the pendency of QBE's motion, two
Interpleader–Defendants, Marinelli and Au, have separately filed
actions against QBE (PaCap Aviation Finance, LLC and Malama
Investments, LLC are also plaintiffs in the Au action).  Both
actions include claims for breach of contract and insurance bad
faith.  *See Marinelli v. QBE Specialty Insurance Company*, Civ.
No. 22-00391, ECF No. 1; *Au v. QBE Specialty Insurance Company*,
Civ. No. 22-00557, ECF No. 1.  Marinelli has also filed a Motion
for Preliminary Injunction, urging the court to order QBE to pay

7

his defense costs.  *See Marinelli v. QBE*, ECF No. 11.  One week later, QBE filed a Motion to Dismiss.  *See Marinelli v. QBE*, ECF No. 14.  The court has not taken action on either Marinelli's preliminary injunction motion or QBE's motion to dismiss while settlement discussions have been ongoing.  *See Marinelli v. QBE*, ECF No. 30.

**III.    JURISDICTION.**

The court has an independent duty to ascertain whether it has subject matter jurisdiction over this case; it may raise this issue *sua sponte*.  *See Bridge Aina Le'a, LLC v. State of Hawaii Land Use Comm'n*, 125 F. Supp. 3d 1051, 1059 (D. Haw. 2015).

QBE brought this action as a rule interpleader case, under Federal Rule of Civil Procedure 22.[5]  *See* Trustee Proceeding, ECF No. 1, Pg. 2.  In a rule interpleader case, subject-matter jurisdiction derives from the general grants of jurisdiction in federal law.  In this case, diversity jurisdiction exists because the amount in controversy exceeds $75,000 and the Interpleader-Plaintiff's citizenship is diverse from that of all Interpleader-Defendants.  The court also has

---

[5] QBE says that the case also arises under Rule 7022 of the Federal Rules of Bankruptcy Procedure.  Rule 7022 operates to make Rule 22 of the Federal Rules of Civil Procedure applicable in adversary proceedings in Bankruptcy Court.  Rule 7022 pertains to bankruptcy proceedings and does not affect the district court's jurisdiction.

jurisdiction because this matter relates to a bankruptcy.  *See*
28 U.S.C. § 1334; *see also* Interpleader Bankruptcy Proceeding,
ECF No. 154, Pg. 8 (finding that the court has bankruptcy
jurisdiction over this matter because QBE's action arises in and
is related to the Trustee Proceeding).

## IV.        LEGAL STANDARD.

In the absence of the parties' consent on the record, a
magistrate judge cannot issue orders on dispositive motions.  *See*
28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(1); *Reynaga v.
Cammisa*, 971 F.2d 414, 416 (9th Cir. 1992).  The parties in this
case have not submitted such consent, so a magistrate judge may
only issue findings and a recommendation to the district judge
with respect to a dispositive motion.  The district judge would
then review the findings and recommendation *de novo*.  With a
nondispositive motion, a magistrate judge issues an order, and
the district judge may reconsider the order if it is clearly
erroneous or contrary to law.  *See* 28 U.S.C. § 636(b)(1)(A); Fed.
R. Civ. P. 72(a).

To determine whether QBE's motion is dispositive, the
court begins by looking at the language of 28 U.S.C.
§ 636(b)(1)(A), which provides a list of eight motions that are
always dispositive.

QBE requests four forms of relief: leave to deposit
interpleader funds, discharge, injunctive relief, and dismissal.

*See* ECF No. 13.  Motions for injunctive relief and dismissal are listed in 28 U.S.C. § 636(b)(1)(A) and are therefore dispositive. At the very least, part of QBE's motion is dispositive.

The other two forms of relief requested—leave to deposit funds and discharge from liability—are not explicitly addressed by 28 U.S.C. § 636(b)(1)(A).  Given the statute's silence concerning these forms of relief, the court considers the function the relief would serve in the broader case.  *See Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015) ("Though the list contained in 28 U.S.C. § 636(b)(1)(A) appears to be exhaustive . . . the Supreme Court has identified some judicial functions as dispositive notwithstanding the fact that they do not appear in the list.").  Specifically, the court must determine whether its decision could "effectively den[y] the ultimate relief sought by a party or dispose[] of any claims or defenses." *CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 807 (9th Cir. 2022) (internal quotation marks omitted).  If it would, the underlying motion is dispositive.[6]  *See id.*

The denial of QBE's motion "effectively denies the ultimate relief sought" and disposes of QBE's central claim.  *See*

---

[6] This court need not decide whether motions for leave to deposit funds or for discharge of liability are always dispositive, just whether they are dispositive in the context of this case.  *Cf. Hall v. Cnty. of Fresno*, 2016 WL 374550, at *3 (E.D. Cal. 2016) (deeming the motion to unseal dispositive even though similar motions are generally characterized as nondispositive).

*id.* (internal quotation marks omitted).  This is an interpleader case.  *See* Interpleader Bankruptcy Proceeding, ECF No. 1.  The ultimate relief sought in every interpleader action is leave to deposit funds and to be discharged from liability.  *See* 7 Charles Alan Wright, et al., *Federal Practice & Procedure* § 1702 (3d ed.) ("*Federal Practice & Procedure*").  Accordingly, denying these requested forms of relief would prevent QBE from securing the ultimate relief it seeks.  Without leave to deposit funds and a discharge from liability, QBE cannot attain interpleader, which is the sole aim of its Complaint.

When courts confront motions for interpleader, they almost uniformly treat them as dispositive.  *See, e.g.*, *Texas Life Ins. Co. v. Ford*, 2016 WL 10932919, at *1 (S.D. Tex. 2016) ("A motion for dismissal is a dispositive motion, as is a decision to proceed as an interpleader."), *report and recommendation adopted*, 2017 WL 7726734 (S.D. Tex. 2017); *Aes-Apex Emp. Servs., Inc. v. Rotondo*, 2016 WL 6462244, at *5 (E.D. Mich. 2016) (referring to a motion to interplead funds as one of "three dispositive motions"), *report and recommendation adopted in part, rejected in part on separate grounds*, 2016 WL 5334636 (E.D. Mich. 2016), *clarified on denial of reconsideration*, 2017 WL 3225985 (E.D. Mich. 2017), and *aff'd*, 924 F.3d 857 (6th Cir. 2019); *State Farm Life & Assur. Co. v. Epps*, 2013 WL 3992754, at *1 (W.D.N.Y. 2013) (noting that the

court referred a motion for interpleader deposit to a magistrate

judge for issuance of findings and a recommendation).[7]

---

[7] *See also N. Am. Co. for Life & Health Ins. v. Jones*, 2022 WL 4389288 (D.S.C. 2022) (issuing a report and recommendation in response to a motion for interpleader deposit), *report and recommendation adopted*, 2022 WL 4387488 (D.S.C. 2022); *Kernon v. Banner Life Ins. Co.*, 2022 WL 2121513 (M.D. Fla. 2022) (issuing a report and recommendation in response to a motion to interplead), *report and recommendation adopted*, 2022 WL 1683361 (M.D. Fla. 2022); *Unum Life Ins. Co. of Am. v. Scales*, 2021 WL 259352 (W.D. Mich. 2021) (issuing a report and recommendation in response to a motion for interpleader deposit), *report and recommendation adopted sub nom. Unum Life Ins. Co. of Am. v. Robert Scales, et al.,* 2021 WL 2592572 (W.D. Mich. 2021); *Tumiak v. Berryhill*, 2019 WL 4040633, at *1 (W.D. Pa. 2019) (mentioning that the magistrate judge issued a report and recommendation in response to a motion for interpleader), *aff'd sub nom. Tymiak v. Comm'r Soc. Sec.*, 844 F. App'x 537 (3d Cir. 2021); *Huntington Nat'l Bank v. Jesus Film Project*, 2019 WL 2225754, at *1 (M.D. Fla. 2019) (mentioning that the magistrate judge issued a report and recommendation in response to a motion for interpleader); *Allstate Indem. Co. v. Collura*, 2017 WL 6380343 (E.D.N.Y. 2017) (issuing a report and recommendation in response to a motion for interpleader deposit), *report and recommendation adopted in part, rejected in part*, 2017 WL 1076328 (E.D.N.Y. 2017), *modified on reconsideration*, 2018 WL 718398 (E.D.N.Y. 2018); *Unum Life Ins. Co. of Am. v. Brookshire*, 2015 WL 13229264 (D.S.C. 2015) (issuing a report and recommendation in response to a motion for interpleader deposit), *report and recommendation adopted*, 2016 WL 8711680 (D.S.C. 2016), *amended*, 2016 WL 703933 (D.S.C. 2016); *Metro. Life Ins. Co. v. Bell*, 2014 WL 8021562 (M.D. Fla. 2014) (issuing a report and recommendation in response to a motion to interplead), *report and recommendation adopted*, 2015 WL 926040 (M.D. Fla. 2015); *Feehan v. Feehan*, 2011 WL 497852 (S.D.N.Y. 2011) (issuing a report and recommendation in response to a motion to interplead), *report and recommendation adopted*, 2011 WL 497776 (S.D.N.Y. 2011); *Ireijo v. Agnew*, 2007 WL 4633328 (D. Haw. 2007) (issuing findings and a recommendation in response to a motion to interplead), *findings and recommendation adopted as modified*, 2007 WL 4190694 (D. Haw. 2007).

Cases involving orders in response to motions for interpleader sometimes arise in significantly different contexts[8] or lack sufficient detail to determine why courts have treated motions as they have. *See Wells Fargo Bank v. Mesh Suture Inc.*, 2021 WL 1207444 (D. Colo. 2021); *Roland v. Hickman*, 2015 WL 10735658 (D. Nev. 2015); *Est. of Evans v. Kinecta Fed. Credit Union*, 2014 WL 12790972 (D. Nev. 2014); *Reliastar Life Ins. Co. of New York v. LeMone*, 2006 WL 733968 (W.D. Va. 2006). Of course, if the parties in the foregoing cases previously consented to having a magistrate judge issue final determinations on dispositive motions, the issuance of orders in these cases would not necessarily indicate that the courts deemed the motions to be dispositive.

None of the above courts discussed why interpleader motions might or might not be dispositive. This court is guided by the analysis in other cases unrelated to interpleader but involving motions not listed in 28 U.S.C. § 636(b)(1)(A). Those cases suggest that QBE's motion is dispositive.

In *Flam v. Flam*, the Ninth Circuit considered whether motions to remand are dispositive and determined that they are because they possess "important elements of finality" that "put

---

[8] *See Nat'l Ins. Crime Bureau v. Wagner*, 2019 WL 5592862, at *4 (W.D. Wash. 2019) (deeming a motion to be nondispositive for purposes of a local rule's notice provisions). The analysis did not address Rule 72 of the Federal Rules of Civil Procedure, and so did not apply the Ninth Circuit's functional approach.

the parties effectively out of *federal* court."  788 F.3d at 1047 (quoting *Harmston v. City & Cnty. of San Francisco*, 627 F.3d 1273, 1278-1279 (9th Cir. 2010))(emphasis in original, internal quotation marks omitted).

Like a motion to remand, a motion to interplead funds in a case aimed entirely at interpleader gives the court an opportunity to completely conclude the interpleader-plaintiff's claims.  It signals the end of the road for those claims.  That is, a motion for leave to deposit funds, discharge, injunctive relief, and dismissal shares with a motion to remand "important elements of finality" and appears similarly dispositive of a plaintiff's claims (although interpleader-defendants' cross-claims may remain).

In *Reynaga v. Cammisa*, 971 F.2d 414 (9th Cir. 1992), the Ninth Circuit made clear that when a form of relief is not listed in 28 U.S.C. § 636(b)(1)(A) but has the effect of one of the listed motions, it should be characterized as dispositive. The Ninth Circuit therefore characterized the motion to stay in that case as dispositive, even though motions to stay are generally nondispositive.  The requested stay would have "effectively denied [the movant's] request for an injunction." *Id*. at 416.  The court suggested that, just as motions for injunctive relief are explicitly deemed dispositive by 28 U.S.C.

§ 636(b)(1)(A), any motion that could serve to block or grant injunctive relief should be considered dispositive.

The reasoning in *Reynaga* has implications for the case at hand.  Motions for leave to deposit funds and discharge from liability are not listed in 28 U.S.C. § 636(b)(1)(A), but motions for injunctive relief and dismissal are.  If the court denies QBE's requests for leave and discharge, determining that QBE has no real and reasonable fear of multiple liability, QBE cannot obtain the injunctive relief and dismissal that it also requests.  As in *Reynaga*, these forms of requested relief, while not explicitly deemed dispositive in 28 U.S.C. § 636(b)(1)(A), are dispositive here because they dictate the viability of injunctive relief or dismissal.

Given the above, this court treats QBE's motion as dispositive and construes the Magistrate Judge's decision as his findings and recommendation, reviewed *de novo* here.

Even if the court characterizes QBE's motion as nondispositive, the court reaches the same conclusion.  When reviewing a magistrate judge's conclusions of law or mixed questions of law and fact, it is proper for the court to reject a magistrate judge's determination when it is contrary to law.  *See Bennett v. Yoshina*, 98 F. Supp. 2d 1139, 1145 (D. Haw. 2000), *aff'd*, 259 F.3d 1097 (9th Cir. 2001).  As discussed below, this court rules that QBE has real and reasonable fears of multiple

15

liability.  Accordingly, the denial of QBE's motion, on the basis of an absence of good faith, is clearly erroneous or contrary to law and must be rejected.

**V.      DISCUSSION.**

The purpose of interpleader is to free a stakeholder from involvement in a battle among claimants when the stakeholder has no interest in the fund.  *See Federal Practice & Procedure* § 1702.  "Interpleader is proper [when] there is a single fund at issue [and] adverse claimants to that fund."  *Hyan v. Liberty Surplus Ins. Corp.*, 2014 WL 12573542, at *4 (C.D. Cal. 2014) (internal quotation marks omitted).  The party seeking interpleader has the burden of demonstrating that it is justified.  *See Metro. Life Ins. Co. v. Sanchez*, 2017 WL 2081794, at *2 (E.D. Cal. 2017).  QBE must therefore show that it has a "real and reasonable fear of exposure to double liability or the vexation of conflicting claims."  *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 894 (9th Cir. 2012).

"This is not an onerous requirement."  *See id.*; *see also* 4 James Wm. Moore, *Moore's Federal Practice* § 22.03(1)(c) (3d ed. 1997) ("In most cases, it is not difficult for the stakeholder to meet the requirement of a reasonable or good faith fear of multiple litigation.").  The stakeholder need not prove that any claims have already been filed or are meritorious.  *See Michelman*, 685 F.3d at 895.  The interpleading party must merely

demonstrate that potential adverse claims meet "a minimal threshold level of substantiality." *Lincoln Nat'l Life Ins. Co. v. Ridgway*, 293 F. Supp. 3d 1254, 1261 (W.D. Wash. 2018)(quoting *Michelman*, 685 F.3d at 895)(internal quotation marks omitted).

To meet the minimal threshold, the movant must demonstrate that its fear of multiple liability is "more than conjectural." *All. for Educ., Inc. v. Airborne Wireless Network, Inc.*, 2018 WL 6016994, at *3 (C.D. Cal. 2018)(quoting 4 James Wm. Moore, *Moore's Federal Practice* § 22.03(1)(c) (3d ed. 1997)). Courts sometimes deny interpleader based on an absence of good faith, but "it is only in rare instances that [interpleader] is withheld on this ground alone." *Federal Practice & Procedure* § 1704. When it happens, it is typically because the potential adverse claims are highly improbable or entirely baseless.

In *Bierman v. Marcus*, 246 F.2d 200, 203 (3d Cir. 1957), the Third Circuit held that the movant had filed for interpleader in bad faith because the corporation with the supposedly adverse claim was actually owned by the interpleader-plaintiff. There was thus no real threat that the corporation would sue.

In *John Hancock Mut. Life Ins. Co. V. Beardslee*, 216 F.2d 457 (7th Cir. 1954), the Seventh Circuit found an absence of good faith because the reputedly adverse claimant never claimed she was entitled to benefits under the life insurance policy in issue and had no apparent basis for making such a claim. The

17

court noted, "Instead of amounting to a claim of right[,] her letter could only be considered as a plea for help."  *Id.* at 461. In both *Bierman* and *Beardslee*, there were no actual adverse claims, and the courts denied interpleader on that basis.

When courts reject interpleader in cases with actual adverse claims, those claims are clearly baseless.  In *Hyan v. Liberty Surplus Ins. Corp.*, 2014 WL 12573542 (C.D. Cal. 2014), the professional liability policy at issue expressly foreclosed competing claims.  The interpleader-plaintiff argued that it feared multiple liability because of conflicting claims between parties seeking coverage for defense costs and those seeking coverage for settlement costs.  *Id.* at *6.  The policy language squarely required "payment of claims expenses (defense costs) before damages (settlement costs)."  *Id.* (internal quotation marks omitted).  The court therefore concluded that "the plain terms of the policy eliminate[d] any possible 'real or reasonable' fear of multiple liability."  *Id.*  When the only issue underlying an adverse claim can be resolved by the court based solely on the record, a court may reject an assertion of multiple conflicting claims.

But this is rare, given the liberal application of interpleader.  The more common occurrence is for courts to find in favor of the interpleader, even when the supposedly adverse claims are not particularly strong or fleshed-out.  In *Bitstamp*

18

*Ltd. v. Ripple Labs Inc.*, 2015 WL 13025768 (N.D. Cal. 2015), the court chose not to interrogate the substance of the competing claims at all; it was enough that adverse claims had already been made.  "Bitstamp was not required to determine whether Ripple Labs's claim to the disputed funds was colorable; it is sufficient that Ripple Labs made a claim."  *Id.* at *3. Similarly, in *West Coast Stock Transfer, Inc. v. Terra Tech Corp.*, 2019 WL 6998770, at *7 (C.D. Cal. 2019), the court refused to parse the merits of the competing claims, "since it appears inevitable that West Coast would be faced with litigation whether it transferred or refused to transfer the Disputed Restricted Stock."  When it is indisputable that multiple claims will arise against the stakeholder, the party seeking interpleader may not have to prove that those claims have any substance at all.

Once parties secure interpleader, they often seek injunctions to prevent further lawsuits related to the interpleaded funds.  QBE has made such a request here and already faces two separate lawsuits that would be implicated by injunctive relief, if granted.  *See Marinelli v. QBE*, Civ. No. 22-00391, ECF No. 1 (filed on Aug. 24, 2022); *Au v. QBE*, Civ. No. 22-00557, ECF No. 1 (filed on Dec. 30, 2022, after the Magistrate Judge filed his ruling on QBE's motion to deposit

funds).[9]  Both of these cases include breach of contract claims
and requests for compensatory damages.  *See Marinelli v. QBE*, ECF
No. 1; *Au v. QBE*, ECF No. 1.  These matters directly implicate
the Policy funds at issue in this case and thus would be affected
by even a narrowly tailored injunction.

> **A.   QBE Has a Real and Reasonable Concern That the
> Policy Language Does Not Necessarily
> Resolve The Competing Claims to the Policy Funds.**

Marinelli argues that the Policy language is so clear
that QBE could have no reasonable fear of multiple liability.
*See* ECF No. 38, PageID # 405.  According to Marinelli, "the
policy's 'Advancement' and 'Priority of Payments' provisions
easily solve all the purported conflicts identified by QBE."  *See*
ECF No. 38, PageID # 404.  But QBE's fear that the Policy
language Marinelli relies on may not necessarily resolve
competing claims is neither unrealistic nor unreasonable.  In so
stating, this court is not here making a summary judgment ruling
as to the import of any Policy provision.  This court is instead
considering only whether QBE's fears are real and reasonable.  Of
course, even if a fear is real and reasonable, that does not
definitively establish the meaning of any Policy language.

---

[9] Au had submitted a claim to QBE before the Magistrate
Judge ruled, but had not commenced a lawsuit.  Au's lawsuit may
have been a reaction to the Magistrate Judge's ruling.

### 1. "On a Current Basis."

Central to Marinelli's claim is the "Advancement" provision of the D & O Policy:

> A.   . . . In any other Claim, the Insurer shall advance Defense Costs on a current basis, but no later than 60 days after receipt of the legal bills and any supporting documentation.
>
> B.   If it is determined by a final adjudication that any advanced Defense Costs are not covered under this Coverage Part, the Insureds, severally according to their respective interests, shall repay such uncovered Defense Costs to the Insurer[.]

*See* ECF No. 34-2, PageID # 304.  Marinelli argues that the phrase "on a current basis" in subsection (A) requires QBE to distribute Policy funds based on when parties first submitted claims to QBE. The objectors (QBE and the Gossert Defendants, Gossert and Yannone) disagree.

First, QBE, while conceding that advancement must be made "on a current basis," argues that the Policy might not determine substantive rights on that same basis.  *See* ECF No. 35, PageID # 354 ("The Advancement provision does not resolve any substantive right to coverage or address conflicting claims."). Because advancement provisions do not always conclusively resolve a party's ultimate entitlement to funds, contracts often treat advancement and ultimate entitlement differently.  *Cf. Heine v. Bank of Oswego*, 144 F. Supp. 3d 1198, 1207 (D. Or. 2015)

(addressing advancement and indemnification as separate matters and noting that "an individual ultimately determined to be ineligible for indemnification may still be entitled to advancement before that ultimate determination"); *Advanced Mining Sys., Inc. v. Fricke*, 623 A.2d 82, 84 (Del. Ch. 1992) (noting that advancement of legal expenses and ultimate entitlement to indemnification are two distinct questions).

Further, as QBE points out, the Policy acknowledges that advancement differs from ultimate entitlement in that a party must return to QBE any money received as an advancement that is subsequently found not to be covered by the Policy. *See* ECF No. 34-2, PageID # 304 (D & O Policy, Section V(B)).

Marinelli responds that, because QBE has already conceded his right to the Policy funds, he will not have to return any of his advancement. *See* ECF No. 38, PageID # 408. ("QBE's argument conflicts with QBE's earlier concessions that Mr. Marinelli (and Mr. Au) are insured persons under the policy, that the case against them asserts covered claims, and that they are therefore entitled to reimbursement of their reasonable defense costs.") QBE's admissions might not, however, preclude future conflicts.

QBE did concede that the Trustee Proceeding is a covered matter and that the company must cover defense costs in connection with it. *See* ECF No. 14, Pg. 109. However, that does

not amount to a concession that Marinelli and Au are entitled to receive and ultimately retain all of the Policy funds they claim. QBE makes clear that whatever money it pays to these parties is "subject to a full reservation of all of the Policy's terms, conditions, and exclusions." *See id.* Thus, even if the company acknowledges that Marinelli and Au are covered persons with covered claims, there are a number of possibilities that could preclude them from retaining funds. This court assumes here that Marinelli and Au have given QBE sufficient documentation supporting their reimbursement requests, but the court is uncertain as to whether those documents include expenses related to any uninsured matter, or reflect some improper or excessive expense. Thus, if QBE provided Marinelli with advancements, he might have to return some of the money later if it were determined, for example, that the advancement was for expenses unrelated to covered claims by insured persons. This process could give rise to multiple lawsuits, as parties could dispute how much of his advancement a claimant like Marinelli had to return and to whom those funds should be redistributed.

Separately, QBE argues that QBE was not able to make payments on a current basis, and that this inability has rendered the "Current Basis" clause inoperable. *See* ECF No. 35, PageID # 352. While engaged in settlement discussions, Marinelli and Au chose not to submit claims on an ongoing basis. QBE argues that

it was thus in no position to make payments as fees and costs were incurred.  *See id*.

QBE has not pointed to any language in the contract or any law indicating that an insured's failure to submit claims on an ongoing basis somehow changes how funds are to be distributed. Moreover, as Marinelli highlights, the language of the Policy specifically ties payments—at least advancement payments—to the submission of claims, not the accrual of fees and costs.  *See* ECF No. 34-2, PageID # 304 (referring to advancements "no later than 60 days after receipt of the legal bills and supporting documentation").  This court, given the present record, is therefore not relying on this argument as, on its own, justifying interpleader.

Lastly, Gossert and Yannone argue that the "Current Basis" clause does not resolve competing conflicts because Marinelli has not yet submitted a completed claim.  *See* ECF No. 34, PageID # 278.  They argue that payments cannot be provided until a party provides all "legal bills and supporting documentation" and that money does not yet become due until that point.  *See id*.  As Marinelli points out, QBE itself does not make this argument in its objection.  *See* ECF No. 38, PageID # 405.  Indeed, QBE indicates that Marinelli has provided substantial information including "copies of defense invoices" and "backup documentation."  *See* ECF No. 35, PageID #342.  On the

24

present record, this particular argument by Gossert and Yannone is not determinative of the matters before this court.

Although this court is not here relying on all of the challenges to the Magistrate Judge's ruling, QBE's assertion that the "Current Basis" clause addresses advancement only, not ultimate entitlement, is sufficient to demonstrate that the Policy language may not foreclose all adverse claims. This court stresses again that this conclusion goes only to the court's determination of whether QBE's fears of multiple liability are real and reasonable, not to a substantive ruling construing any Policy language.

### 2.   "Priority of Payments."

Marinelli also argues that the "Priority of Payments" provision resolves who is entitled to Policy funds. The relevant portion of the "Priority of Payments" provision provides:

> A.   In the event that Loss under Insuring Clause A and any other Loss are concurrently due under this Coverage Part, then the Loss under Insuring Clause A shall be paid first. In all other instances, the Insurer may pay Loss as it becomes due under this Coverage Part without regard to the potential for other future payment obligations under this Coverage Part.

See ECF No. 34-2, PageID # 305. According to Marinelli's opposition to QBE's motion, this language provides that "any settlement payment can be made only after all pending defense costs have been paid." See ECF No. 17, PageID # 124. As a

result, he argues, Gossert and Yannone's settlement negotiations with the trustee could never give rise to a genuinely adverse claim.  *See* ECF No. 17, PageID # 125.

QBE responds that the "Priority of Payments" provision does not address conflicts between concurrently filed claims for defense and settlement costs.  *See* ECF No. 35, PageID # 334. QBE's argument is by no means frivolous.  The provision requires that claims under "Insuring Clause A" must be paid before claims for other losses.  *See* ECF No. 34-2, PageID # 305.  All of the potentially adverse claims arise under "Insuring Clause A," so the "Priority of Payments" provision does not clarify which claimant has priority to the funds in dispute.

Marinelli also argues that "the Priority of Payments clause . . . makes it clear that earlier-submitted claims for defense costs . . . should be paid first."  *See* ECF No. 38, PageID # 412 (internal quotation marks omitted).  The Policy does indeed say that "the Insurer may pay Loss as it becomes due," but that could possibly be read as permissive and not mandatory. That language does not expressly require QBE to distribute funds to cover or reimburse defense costs before addressing settlements.

Both of the Policy provisions Marinelli relies on (the "Current Basis" provision and the "Priority of Payments" provision) allow for considerable interpretation.  In the context

26

of determining whether QBE's fears of multiple liability are real and reasonable, this court notes that adverse claims might indeed arise.

Gossert and Yannone argue, for instance, that state law supports the distribution of Policy proceeds first to parties that work out settlement agreements with the trustee.  *See* ECF No. 20, PageID # 173-76.  Whether this argument does or does not ultimately succeed, the failure of the Policy language to definitively resolve all claims leaves the potential for adverse claims of sufficient substance to justify QBE's fear of multiple liability.

QBE suggests that, because claims were not submitted when expenses were first incurred, the court will now need to determine a new method of distributing funds.  *See* ECF No. 35, PageID # 352.  This court is not agreeing or disagreeing with that position, but it is premature to reject it.

### B.  Parties Have Already Filed Multiple Lawsuits

In some cases, potentially adverse claims are deemed "too conjectural" to justify interpleader.  *Airborne Wireless Network*, 2018 WL 6016994, at *3.  That is not so here.  Multiple adverse claims have already been filed against QBE.  *See Marinelli v. QBE*, ECF No. 1; *Au v. QBE*, ECF No. 1.  Moreover, Gossert and Yannone have given QBE ample reason to believe that they may bring adverse claims if they are not allowed to proceed

with settlement.   QBE's fear of multiple litigation is not merely speculative.

       *Bitstamp* and *Terra Tech* suggest that, when adverse claims are actually present, an interpleader-plaintiff need not even prove that those claims meet a threshold of substantiality. *See Bitstamp,* 2015 WL 13025768, at *3; *Terra Tech*, 2019 WL 6998770, at *7.   Whether or not this court adopts that position, there are adverse claims with substance here.   The presence of actual and engaged adverse claimants counsels in favor of interpleader.   QBE is already embroiled in multiple lawsuits over its limited Policy funds and has every reason to fear that the claims will conflict, even if one claim turns out to be stronger than the others.   *Michelman*, 685 F.3d at 894 (9th Cir. 2012)(*citing New York Life Ins. Co. v. Welch*, 297 F.2d 787, 790 (D.C.Cir.1961) ("A stakeholder, acting in good faith, may maintain a suit in interpleader to avoid the vexation and expense of resisting adverse claims, even though he believes only one of them is meritorious.")).

       The substance of the asserted adverse claims and the reality of engaged adverse claimants makes this case distinguishable from interpleader cases involving a lack of good faith.   This case differs significantly from *Bierman*, which involved a putative claimant the court concluded would never file a claim because it was a corporation owned by the interpleader-

28

plaintiff.  246 F.2d at 203.  This case is also distinguishable from *Beardslee*, in which the supposedly adverse claimant had never asserted a right to the stake and there was no readily apparent basis for such a claim.  216 F.2d at 461.

Nor is this case akin to *Hyan*, which involved policy language so clear that the supposedly adverse claim lacked any substance at all.  As discussed above, the policy in *Hyan* required "the payment of claims expenses (defense costs) before damages (settlement costs)."  2014 WL 12573542, at *6 (internal quotation marks omitted).  The supposedly conflicting claims in *Hyan* involved defense costs, on the one hand, and settlement costs, on the other.  *See id*.  The policy language clearly resolved any conflict: "claim expenses shall *first* be subtracted from the applicable limit of liability with the *remainder, if any*, being the amount available to pay damages."  *See id*. (emphasis in original).  As a result, the court denied the request for interpleader, finding an absence of good faith.  *See id*.

The "Advancement" and "Priority of Payment" provisions in QBE's Policy are not as explicit as the language addressed in *Hyan*, and the circumstances under which claims have been filed may raise questions about who is entitled to what.  While in *Hyan* "[a]pplication of the plain terms of the policy eliminates any possible 'real or reasonable fear' of multiple liability," *see*

*id.*, this court cannot say the same here.  In fact, adverse lawsuits have already been filed.[10]

**VI.        RELIEF.**

Because QBE satisfies the requirements of rule interpleader, the court vacates the Magistrate Judge's Findings and Recommendations and grants most of QBE's motion.

### A.    Leave to Deposit Funds.

Pursuant to its equitable powers, the court orders QBE to deposit $5,513,221.51 with the court within three working days.  QBE should make the deposit in accordance with Rule 67 of

---

[10] Marinelli argues that granting interpleader in this case would exceed the proper scope of interpleader, allowing QBE to use interpleader to avoid its clear contractual obligations.  *See* ECF No. 38, PageID # 404.  But the cases he cites in advancing this argument are clearly distinguishable.  The court in *Wells Fargo Bank, N.A. v. Waterfall Asset Management, LLC*, 2019 WL 1172269, at *8 (S.D.N.Y., 2019), denied interpleader because the "case [was] not merely about the distribution of a single fund held by Wells Fargo."  The court did not focus on whether the interpleader-plaintiff's fears of multiple liability were real or reasonable.  *See id.*  Instead, it noted that the supposedly adverse claims went "well beyond the distribution of the res held by Wells Fargo."  *See id.* at *9.  While Marinelli and others do have claims going beyond Policy funds, QBE is seeking interpleader protection only with respect to Policy funds.  In *Sun Life Assur. Co. of Canada v. Thomas*, 735 F. Supp. 730 (W.D. Mich. 1990), the court actually granted complete discharge from liability to the interpleader-plaintiff.  The court examined the obligation that insurance companies have to deal with competing claims only in explaining its decision to deny the interpleader-plaintiff's request for attorney's fees and costs.  *See id.* at 733.  *Kurz v. New York Life Ins. Co.*, 168 So. 2d 564 (Fla. Dist. Ct. App. 1964), is also distinguishable.  The trial court and the court of appeals assessed the merits of the case, determining that the insurer's obligations were "unequivocally supported by the record."  *Id.* at 566.  An equivalent finding on the merits has not issued at this stage of this case.

the Federal Rules of Civil Procedure.

      **B.**   **Discharge.**

      QBE requests that the court discharge it from liability. *See* ECF No. 13, PageID # 95. Doing so is within the court's authority. *See Advantage Title Agency, Inc. v. Rosen*, 297 F. Supp. 2d 536 (E.D.N.Y. 2003) ("[T]he Court is empowered to discharge a plaintiff from further liability in any civil interpleader action."); *see also* 28 U.S.C. § 2361.

      Once QBE deposits the remaining Policy funds, it will have satisfied the requirements of rule interpleader. Contingent on QBE's deposit of the money, the court grants QBE's discharge from all claims of entitlement to the Policy funds. There are, of course, other pending claims against QBE, which are not affected by this order.

      **C.**   **Dismissal.**

      QBE has also requested dismissal with prejudice. When interpleader is granted and the stakeholder is disinterested in the deposited funds, the court can dismiss the party from the case. *See, e.g.*, *Scottrade, Inc. v. Gibbons*, 590 F. App'x 657, 659 (9th Cir. 2014); *Gen. Atomic Co. v. Duke Power Co.*, 553 F.2d 53, 56 (10th Cir. 1977)("If the stakeholder is disinterested, he is entitled to dismissal.").

      Because QBE has not asserted any claims to the remaining Policy funds, dismissal with prejudice is proper. This

dismissal concerns only the remaining Policy funds.  The court is not here considering the merits of other claims against QBE concerning other aspects of the Policy or claims seeking relief other than Policy funds.  Those other claims are not covered by this dismissal, and this dismissal addresses QBE only as Interpleader-Plaintiff.

> **D.   Injunctive Relief.**

QBE requests an injunction to prevent "the Interpleader-Defendants and any other third parties . . . from bringing any action in state or federal court against QBE concerning the Policy." *See* ECF No. 13, PageID # 104; *see also Pan Am. Fire & Cas. Co. v. Revere*, 188 F. Supp. 474, 485 (E.D. La. 1960) (concluding that courts can issue injunctions against overlapping proceedings in rule interpleader cases, notwithstanding the limitations on injunctions imposed by 28 U.S.C. § 2283); 48 C.J.S. Interpleader § 28 ("[I]n a rule interpleader proceeding, the court retains discretion to restrain litigants before the court from litigating claims in derogation of the court's exercise of jurisdiction.").

Injunctive relief is common in interpleader, "the whole purpose being to avoid inconsistent results in separate lawsuits." *Aristud-Gonzalez v. Gov't Dev. Bank for Puerto Rico*, 501 F.3d 24, 27 (1st Cir. 2007).  Of course, as in other contexts, the party requesting injunctive relief must show

"irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 507 (1959). This court is persuaded that QBE will face irreparable harm if claimants are able to initiate or continue litigation against QBE seeking part or all of the Policy funds outside of this proceeding. *See Trustmark Ins. Co. v. Barragan,* 2018 WL 5116459, at *5 (C.D. Cal. 2018) ("Relitigation would defeat the purpose of Trustmark's interpleader action and result in waste."). Legal remedies alone would not sufficiently redress those harms given QBE's real and reasonable fears of multiple liability. Once it deposits funds with this court, QBE will have no assurance that it can recover from any insured even were QBE to prevail in particular lawsuits brought by potentially multiple claimants. Injunctive relief is proper.

Interpleader-Defendant Wegescheide notes that, in seeking to enjoin any action "concerning the Policy," QBE may be seeking injunctive relief that goes "above and beyond what might otherwise be appropriate." *See* ECF No. 18, PageID # 133. He argues that any injunction should only extend to claims over the Policy funds, as opposed to reaching all claims "concerning" the Policy. *See* ECF No. 18, PageID # 136-37. Anything more, he says, would exceed the proper scope and purpose of interpleader. *See id*.

33

Courts recognize interpleader as having benefits for the stakeholder, the claimants, and the court; as such, it is applied liberally. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967). But the Supreme Court has made clear that interpleader is not an all purpose "bill of peace." *See id*. at 537.

Given the important constraints on the court's discretion in the interpleader context, the court concludes that a narrowly tailored injunction is proper. The court enjoins only claims seeking Policy funds. Such an injunction will prevent overlapping litigation and inconsistent decisions, without improperly constraining the substantial rights of interested parties.

During the pendency of this litigation, the court enjoins the institution or prosecution by any party to this action of any proceeding in a state or federal court against QBE seeking all or part of the Policy funds.[11]

**E.  Disposition.**

Having decided that interpleader is a proper remedy in this case, the court must address the claimants' respective rights. *See United States v. High Tech. Prod., Inc.*, 497 F.3d

---

[11] The court may extend the preliminary injunction to third-parties if QBE proves that the third-parties have been notified of this order. If and when QBE provides such proof, the court may extend the injunction to the notified parties.

637, 641 (6th Cir. 2007) ("An interpleader action typically proceeds in two stages.").  To do so, the court relies on the normal litigation processes, including pleading, discovery, motions, and trial.  *See id.* (*citing Federal Practice & Procedure* § 1704).

To aid in this process, the court directs the Magistrate Judge to establish a schedule for discovery (if warranted) and briefing in this matter.  The claimants should have an opportunity to address their claims to the res and to outline any asserted priority over other claimants.  One of the matters to which this procedure applies is the settlement that Gossert and Yannone seek approval of.

**VII.    CONCLUSION.**

The court, having reviewed QBE's motion *de novo*, concludes that interpleader is proper.  QBE's motion to deposit funds and for discharge and dismissal with prejudice is granted to the extent the motion concerns Policy funds.  This court enjoins claimants in this case from proceeding in other actions seeking all or part of the Policy funds.  QBE is ordered to deposit the remaining Policy balance with the Clerk of Court within three working days of the date this order is filed.

It appears to this court that the pending claims in other civil actions by Marinelli and Au to Policy funds cannot proceed consistent with this order and must instead be litigated

in the interpleader action with other claimants to Policy funds.
If Marinelli or Au contends otherwise, a written explanation must
be filed no later than February 6, 2023.  If, without waiving any
right to challenge this order in later proceedings, Marinelli or
Au agrees that this order precludes pending claims to Policy
funds in separate actions, they are directed to state that in
writing by the same deadline.  If Marinelli so states, this court
will deny his pending preliminary injunction motion and grant
QBE's motion to dismiss in Civ. No. 22-00391 to the extent the
motion addresses Marinelli's claim to Policy funds.  Au is
directed to confer with QBE as to the possibility of a
stipulation to dismiss any claim to Policy funds in Civ. No.
22-00557.  Such a stipulation could be without prejudice to an
appeal by Au to this order when it is appealable.  Claims seeking
relief other than Policy funds are unaffected by this order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 27, 2023.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge


*QBE SPECIALTY INSURANCE COMPANY v. ELIZABETH KANE, AS CHAPTER 7 TRUSTEE FOR HAWAII ISLAND AIR, INC., ET AL.,* CIVIL NO. 22-00450 SOM-KJM; ORDER REJECTING THE MAGISTRATE JUDGE'S RECOMMENDATION; GRANTING INTERPLEADER-PLAINTIFF QBE SPECIALTY INSURANCE COMPANY'S FIRST AMENDED MOTION FOR LEAVE TO DEPOSIT FUNDS, DISCHARGE, AND DISMISSAL WITH PREJUDICE; AND ORDERING LIMITED INJUNCTION.