# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII**

PAUL MARINELLI,           )
                                      )

             Plaintiff,     )  CIVIL NO.  1:22-cv-00391-SOM-KJM

vs.                      )
                                      )  **DECLARATION OF DARRYL P.**

QBE SPECIALTY INSURANCE   )  **RAINS IN SUPPORT OF**
COMPANY,                )  **PLAINTIFF PAUL MARINELLI'S**
                                      )  **APPLICATION FOR**
                                        )  **PRELIMINARY INJUNCTION**
             Defendant.    )
                                        )
_____

**DECLARATION OF DARRYL P. RAINS IN SUPPORT OF PLAINTIFF
PAUL MARINELLI'S APPLICATION FOR PRELIMINARY
INJUNCTION**

1.     I, Darryl P. Rains, am a senior of counsel at the law firm of Morrison

& Foerster LLP, counsel for Plaintiff Paul Marinelli in the adversary proceedings

captioned *Kane et al. v. PaCap Aviation Finance, LLC*, Adversary Proceeding No.

19-90027, and *QBE Specialty Insurance Company v. Elizabeth Kane, As Chapter 7

Trustee et al*, 1:22-ap-90006, each currently pending before the United States

Bankruptcy Court for the District of Hawai'i, and, as such, I have personal

knowledge of the facts set forth herein.

2.     I make this declaration, based upon my personal knowledge and a

review of my files relating to the above-referenced adversary proceedings,

including the documents referenced herein, in support of Mr. Marinelli's

application for a preliminary injunction directing defendant QBE Specialty

Insurance Company ("QBE") to advance the defense costs incurred by Mr.

Marinelli in connection with the Underlying Litigation (as defined herein) as it

contractually committed and is required to do under the terms of the Policy (as

defined below).

3.      QBE issued Liability Policy No. QPLO192298 (the "Policy") to

Hawaii Island Air, Inc. ("Island Air") to protect its directors and officers, including

Mr. Marinelli, against incurring liability in connection with claims arising from

alleged wrongful acts or omissions taken by them while serving as an officer or

director of Island Air.  The Policy was issued for the period covering March 2,

2017 to March 2, 2018 (the "Policy Period").  A true and correct copy of the Policy

is attached hereto as **Exhibit A**.

4.      The Policy consists of General Terms and Conditions (the "General

Terms & Conditions") and two individual Liability Coverage Parts: a Directors and

Officers and Entity Liability Coverage Part (the "D&O Coverage Part") and an

Employment Practices Liability Coverage Part.  The Policy provides, in relevant

part, that QBE will provide "Side A" directors' and officers' liability insurance,

pursuant to which it will "pay, on behalf of an **Insured Person**, **Loss** on account of

a **Claim** first made during the **Policy Period** to the extent that such **Loss** has not

been paid or indemnified by any **Company**."  Ex. A, D&O Coverage Part, § I.A.

The Policy also provides that QBE "shall have the … duty to defend any **Claim**, unless otherwise specifically stated in a particular **Liability Coverage Part** … even if any of the allegations in such **Claim** are groundless, false or fraudulent." *Id.*, General Terms & Conditions, § VI.A.

5. The Policy defines "**Insured Person**" as any "**Executive**," which is itself defined as "any natural person who was, now is or shall become … a duly elected or appointed director" of Island Air.  *Id.*, D&O Coverage Part, § X.D.1; General Terms & Conditions, § XII.F.1.  Mr. Marinelli served as a director for Island Air from 2013 to July 10, 2017, and is thus an "Insured Person" under the Policy.  The Policy defines "**Loss**" as "the amount that an **Insured** becomes legally obligated to pay on account of any **Claim**," including "**Defense Costs**," which includes "reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses … incurred in … investigating, defending, opposing or appealing any Claim."  *Id.*, D&O Coverage Part, §§ X.B & X.E.

6. The Policy has a total limit of liability of $6 million, comprised of a $5 million "Combined Maximum Aggregate Limit of Liability" across all Coverage Parts, plus a $1 million "Additional Limit" applicable exclusively to the "Side A" coverage provided under the D&O Coverage Part.  *Id.*, General Terms & Conditions, at § IV; *id*. General Terms and Conditions Declarations, Item 3; *id.,* D&O Coverage Part, § IV.B; *id*. D&O Coverage Part Declarations, Items 2 & 3.

The Policy requires QBE to "advance **Defense Costs** on a current basis, but no later than 60 days after receipt of the legal bills and any supporting documentation," *id.*, D&O Coverage Part, at § V.A, and provides that QBE shall continue to discharge this duty of advancement "until ... the [$6 million] Limit of Liability ... has been exhausted." *Id*.

7.     The Policy further provides that "If it is determined by a final adjudication that any advanced **Defense Costs** are not covered under this Coverage Part, the **Insureds**, severally according to their respective interests, shall repay such uncovered **Defense Costs** to the Insurer." *Id.*, D&O Coverage Part, at § V.B. Moreover, to protect QBE against the risk of competing or conflicting claims by multiple Insured Persons, the Policy contains a "Priority of Payments" provision dictating the order in which claims made under the Policy are to be paid:

> In the event that **Loss** under Insuring Clause A and any other **Loss** are concurrently due under this Coverage Part, then the **Loss** under Insuring Clause A shall be paid first.  In all other instances, the Insurer may pay **Loss** as it becomes due under this Coverage Part without regard to the potential for other future payment obligations under this Coverage Part.

*Id.*, D&O Coverage Part, § VIII.A.

8.     On October 16, 2017, Island Air filed a Chapter 11 Petition in the United States Bankruptcy Court for the District of Hawaii (the "Bankruptcy Court"), captioned *In re Hawaii Island Air, Inc.*, No. 17-01078.  On November 15, 2017, the case was converted from Chapter 11 to Chapter 7 and Elizabeth A. Kane

(the "Chapter 7 Trustee") was appointed Chapter 7 Trustee of the estate of Island

Air.

9.     On August 12, 2019, the Chapter 7 Trustee and others jointly sued

Mr. Marinelli and other former Island Air directors in an adversary proceeding in

the Bankruptcy Court styled *Kane et al. v. PaCap Aviation Finance, LLC*,

Adversary Proceeding No. 19-90027 (the "Underlying Litigation").  The

Underlying Litigation includes four claims against Mr. Marinelli in his capacity as

a director of Island Air, for breaches of fiduciary duty and aiding and abetting

fiduciary breaches by another director.

10.     In early 2020, Mr. Marinelli tendered the Underlying Litigation to

QBE consistent with the reporting requirements of the Policy.  By correspondence

dated May 22, 2020, a true and correct copy of which is attached hereto as **Exhibit

B**, QBE acknowledged receipt of Mr. Marinelli's claims, confirming that they are

covered Claims under the Policy, and agreed to advance Defense Costs in

connection with the Underlying Litigation, subject to a reservation of rights.  QBE

also consented to the joint representation of Mr. Marinelli and several of the other

persons and entities named as defendants in the Underlying Litigation by Morrison

& Foerster LLP, Pillsbury Winthrop Shaw Pittman LLP, and Tsugawa Lau &

Muzzi LLP.

11.     On or about May 4, 2020, I had a telephone conversation with Tim Vasquez, a claims manager for QBE.  Part of our discussion concerned whether a global settlement might be reached, and how negotiations toward a global settlement might be initiated.  We discussed how QBE's policy would need to be the major component of any such settlement.  I indicated that Mr. Marinelli might be willing to temporarily defer submitting his legal bills while the parties attempted to negotiate a global settlement in the Underlying Litigation, in order to avoid depleting the insurance proceeds available for a potential settlement.  I indicated that QBE would need to agree that it would not later claim that our legal services had not received prior written consent, as required by QBE's policy.  Mr. Vasquez agreed to this proposal, and indicated he would need to reserve the ability to review Mr. Marinelli's Defense Costs for reasonableness under the terms of the policy.

12.     Mr. Marinelli continued to incur Defense Costs in connection with the Underlying Litigation following this May 4, 2020 discussion.  In accordance with my discussion with Mr. Vasquez, I temporarily deferred submission of Mr. Marinelli's Defense Costs to QBE.

13.     In early 2022, after the parties were unable to reach agreement on a settlement in the Underlying Litigation, I notified QBE that Mr. Marinelli would be submitting his Defense Costs for advancement.  QBE confirmed that it would

advance Mr. Marinelli's Defense Costs once the Bankruptcy Court granted relief

from the automatic stay permitting it to do so.  Mr. Marinelli promptly filed a

motion with the Bankruptcy Court for an order lifting the automatic stay, which

was granted on May 31, 2022.  *See In re Hawaii Island Air, Inc.*, No. 17-01078

(Bankr. D. Haw.), Dkt. No. 1105.

14.     Upon learning of Mr. Marinelli's intent to seek advancement of his

Defense Costs, and despite its agreement to pay these costs once the automatic stay

was lifted, QBE immediately took action to avoid its obligation to pay Mr.

Marinelli's impending claim.  On March 8, 2022, QBE filed an interpleader action

in the Bankruptcy Court, styled *QBE Specialty Insurance Company v. Elizabeth

Kane, as Chapter 7 Trustee for Hawaii Island Air, Inc., et. al.*, Adversary

Proceeding No. 22-90006 (the "Interpleader Action").  A true and correct copy of

the complaint by QBE in the Interpleader Action is attached hereto as **Exhibit C**.

15.     In the Interpleader Action complaint, QBE admitted that it had

"agreed to provide Defense Costs coverage in connection with [Underlying

Litigation], subject to a full reservation of all of the Policy's terms, conditions, and

exclusions, and subject to the order of [the Bankruptcy Court] that such payments

are not in violation of the automatic stay."  Ex. C, ¶¶ 21-22.  Yet it claimed that it

now faced "conflicting and competing demands for payments of defense costs,

future judgment, and future settlement demands"—and thus "the risk [of]

inconsistent decisions exposing QBE to multiple liability in excess of the Policy's proceeds"—thereby making it necessary and appropriate "for the [Bankruptcy] Court to determine the allocation of the Policy proceeds among those [allegedly conflicting] demands." *Id.*, ¶¶ 1, 26. QBE made no mention of the fact that the express terms of the Policy foreclose the possibility of any such "conflicting and competing demands for payment."

16. During a June 3, 2022, scheduling conference with the Bankruptcy Court, QBE's counsel admitted that, its recently commenced Interpleader Action notwithstanding, QBE remained under a duty to advance Defense Costs to Mr. Marinelli under the Policy, and expressly represented to the Bankruptcy Court that QBE would continue to fulfill that duty. Indeed, alluding to the Bankruptcy Court's recent order granting Mr. Marinelli's motion for relief from stay and Mr. Marinelli's stated intention to submit a claim to QBE for his Defense Costs, QBE's counsel acknowledged that QBE had been advancing Defense Costs under the Policy to *other* Insureds, and stated:

> There have been a few motions in the main bankruptcy proceeding to lift the automatic stay to allow defense costs to be advanced, and there's been – some defense costs have been advanced and other insureds are gathering their invoices, and *it's the intention of QBE to continue advancing those costs until such time as it's granted a discharge*….

A true and correct copy of the transcript of the June 3, 2022 Scheduling Conference is attached hereto as **Exhibit D**.

17.     On June 7, 2022—mere days after QBE represented to the Bankruptcy Court that it would continue to advance Defense Costs to its Insureds—I submitted to QBE on behalf of Mr. Marinelli a formal request for advancement of approximately $3.5 million in Defense Costs (the "<u>First Advancement Request</u>"), representing Defense Costs incurred by Mr. Marinelli in connection with the Underlying Litigation through April 2022.  In this correspondence, I explained to QBE that my firm had already carefully reviewed and revised the included invoices to exclude "charges not properly allocated to" the Underlying Litigation, and requested a conference call with QBE to discuss, among other things, "[w]hether [QBE] will commit to paying these invoices, and our current and future invoices, on an ongoing basis" or "[w]hether we will need to file a declaratory judgment action, and assert claims for bad faith, in order to compel [QBE] to pay these invoices."  Included with the First Advancement Request was a spreadsheet breaking down in separate tabs the monthly fees and disbursements invoiced by each of the firms that, collectively, represented Mr. Marinelli and other co-defendants.  A true and correct copy of the First Advancement Request is attached hereto as **Exhibit E**.  Hard copies of supporting documentation in connection with the First Advancement Request were sent to QBE via overnight mail on that same date.  A true and correct copy of correspondence confirming shipment of these hard copy documents is attached hereto as **Exhibit F**.

18.     On June 13, 2022, I spoke by phone with counsel for QBE, who reaffirmed QBE's commitment to advance Mr. Marinelli's Defense Costs on an ongoing basis unless and until QBE received permission to interplead the Policy to the Bankruptcy Court and received a discharge of its duties under the Policy.  QBE did not express any objection to the reasonableness of Mr. Marinelli's submitted Defense Costs on this call, but requested that I provide an electronic version of the invoices for these costs in order to facilitate QBE's processing thereof.  My firm promptly sent electronic versions of these invoices, and reiterated Mr. Marinelli's request for advancement of his Defense Costs incurred through April 2022.

19.     Despite the fact that Mr. Marinelli's request for advancement of his Defense Costs and all supporting documentation was submitted to QBE no later than June 8, 2022, and despite QBE's assurances to me that it would advance Mr. Marinelli's Defense Costs unless and until it received an order from the Bankruptcy Court permitting interpleader of the Policy proceeds, on July 14, 2022, I received a letter from QBE stating that QBE refused to pay for Mr. Marinelli's Defense Costs already incurred, and also refused to advance his future Defense Costs.  A true and correct copy of the July 14, 2022 letter from QBE is attached hereto as **Exhibit G**.  In the letter, QBE again admitted that it "intended to continue paying pay [sic] covered Defense Costs, including those incurred by Mr. Marinelli…."  Ex. G at 2.  QBE disingenuously asserted, however, that, "prior to

receipt of supporting documentation from [my] firm, QBE was informed that certain Insureds received settlement demands that together with the legal fees submitted by Mr. Marinelli (as well as those incurred and to be submitted by other Insureds), exceed the remaining limit of liability of the Policy," and that "[i]n light of the competing demands on the Policy's proceeds by various Insureds," QBE is "constrained to seek leave to deposit the remaining Policy proceeds into the Bankruptcy Court's registry" and "unable to make further Defense Cost payments at this time." *Id.*

20.    That same day, QBE filed a Motion for Leave to Deposit Interpleader Funds and for Discharge, Injunction and Dismissal with Prejudice with the Bankruptcy Court (as amended on July 15, 2022, the "Interpleader Motion").  In its motion, QBE admitted that there is still *more than five million dollars available* under the Policy—$5,513,221.51 to be precise.  It also identified the alleged "conflicting claims" to the Policy proceeds that gave rise to its purported "real and reasonable fear of multiple liability."  These are Mr. Marinelli's First Advancement Request, totaling $3,560,783.84, Defense Costs for Island Air executive David Pflieger, totaling $48,945.00, Defense Costs for Island Air executive Philip Wegescheide, totaling $12,678.37, and "a demand to settle the Trustee Proceeding with respect to [certain] defendants only for $2.4 million" (the "Settlement Offer").

21.    An August 19, 2022 filing in the Bankruptcy Court indicates that, as of that date, the parties to the Settlement Offer referenced in the Interpleader Action remained "in active and ongoing discussions" about the offer, and were "working … to finalize … an accepted settlement," which would be subject to the Bankruptcy Court's approval before becoming binding.  *See QBE Specialty Ins. Co. v. Kane, et. al.*, Adv. Pro. No. 22-90006, Declaration of Counsel for Interpleader Defendants Christopher Gossert and Catherine Yannone in support of Interpleader-Defendants Christopher Gossert and Catherine Yannone's Response to the Court's July 25, 2022 Order to Show Cause Why Adversary Proceeding Should Not Be Dismissed, Dkt. # 133, at ¶¶ 3-4 (Aug. 19, 2022).  A true and correct copy of this document is attached hereto as **Exhibit H**.

22.    A September 2, 2022 filing in the Interpleader Action indicates that an additional claim was made against the Policy consisting of requests for advancement of Defense Costs submitted by Jeffrey Au, another named defendant in the Underlying Litigation, on August 8, 2022 and September 2, 2022—long *after* the submission of Mr. Marinelli's First Advancement Request.  *See QBE Specialty Insurance Company v. Elizabeth Kane, as Chapter 7 Trustee for Hawaii Island Air, Inc., et. al.*, Adv. Pro. No. 22-90006, Interpleader-Plaintiff QBE Specialty Insurance Company's Reply in Support of First Amended Motion for Leave to Deposit Interpleader Funds and For Discharge, Injunction, and Dismissal

with Prejudice, Dkt. # 146, at 4 (Sept. 2, 2022).  A true and correct copy of this document is attached hereto as **Exhibit I**.

23.     To date, QBE has paid none of Mr. Marinelli's Defense Costs.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct based on my personal knowledge, information and belief.

Dated: September 8, 2022

Darryl P. Rains

EXHIBIT A

# QBE® Specialty Insurance Company
A Stock Company



**_The Solution_ for Management Liability**

---

**Home Office:**

c/o CT Corporation
314 East Thayer Avenue
Bismarck, North Dakota  58501

**Administrative Office:**

Wall Street Plaza
88 Pine Street
New York, New York  10005
 1-877-772-6771

QBE and the links logo are registered service marks of QBE Insurance Group Limited.

**This policy consists of:**          Declarations
                                      One or more coverage parts.
                                      A coverage part consists of:
                                      — One or more coverage forms
                                      — Applicable forms and endorsements

**QBE Specialty Insurance Company**

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Robert V. James                       Jose Ramon Gonzalez, Jr.
President                             Secretary

**QBBP-3034 (05-14)**                                                    **Page 2 of 2**

QBBP-3004 (09-14)



*The Solution*
**General Terms and Conditions Declarations**

**QBE Specialty Insurance Company**
Wall Street Plaza, 88 Pine Street, New York, New York 10005
Home Office:  c/o CT Corporation System, 314 East Thayer Avenue, Bismarck, North Dakota  58501

**THE LIABILITY COVERAGE PARTS PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.   THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS.  PLEASE READ THIS POLICY CAREFULLY.**

**Item 1**:    Parent Company:    Hawaii Island Air, Inc.

       Mailing Address:    550 Paiea Street Suite 236
                           Honolulu, HI 96819

**Item 2**:    Policy Period    From: March 2, 2017 To: March 2, 2018
                                  At 12:01 A.M. Standard Time at the mailing address stated in Item 1

**Item 3**:    Limit of Liability    $5,000,000 Combined Maximum Aggregate Limit of Liability for Liability Coverage Parts

**Item 4**:    Coverage Parts:    Directors & Officers and Entity Liability
                                Employment Practices Liability

**Item 5**:    A. Notice to Insurer of a Claim or circumstance:      B. All Other Notices to Insurer:

     QBE Specialty Insurance Company             QBE Specialty Insurance Company
     Attn: The Claims Manager                    Attn: Underwriting
     Wall Street Plaza                             Wall Street Plaza
     88 Pine Street, 18th Floor                  88 Pine Street, 18th Floor
     New York, New York 10005              New York, New York 10005
     Telephone: (877) 772-6771              Telephone: (877) 772-6771
     Email: professional.liability.claims@us.qbe.com      Email: MLPLadmin@us.qbe.com

**Item 6**:    Extended Reporting Period
                Premium:  100% of annual premium
                Length:    One Year

**Item 7**:    Premium: $42,487

In witness whereof, the Insurer has caused this Policy to be executed, but it shall not be valid unless also signed by a duly authorized representative of the Insurer.

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 1   Filed  03/08/22   Page 13 of 42

**QBE.**

*The Solution*
**General Terms and Conditions**

In consideration of the payment of the premium, the Insurer and the **Insureds** agree as follows:

**I.     PREAMBLE**

The insurance coverages offered in this Policy are part of a portfolio of insurance coverages, consisting of this General Terms and Conditions ("GTC") and any individual **Liability Coverage Parts** and **Non-Liability Coverage Parts** purchased, as stated in Item 4 of the Declarations of this GTC. The type of coverage provided by each of the **Liability Coverage Parts** and **Non-Liability Coverage Parts** are identified in each particular Coverage Part. Unless expressly stated to the contrary, the terms, conditions and limitations in this GTC apply to the entire Policy, whereas the terms, conditions and limitations of each individual Coverage Part only apply to that particular Coverage Part. In the event of a conflict between any terms, conditions or limitations of the GTC and any terms, conditions and limitations of any individual Coverage Part, the terms, conditions and limitations of the individual Coverage Part shall control.

**II.    EXCLUSIONS**

No coverage shall be provided under any **Liability Coverage Part** for **Loss** on account of that portion of a **Claim**:

A.  Bodily Injury/Property Damage - for bodily injury, mental anguish, emotional distress, humiliation, sickness, disease or death of any person or damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is damaged or destroyed;

B.  Conduct - based upon, arising out of or resulting from any deliberate fraud, deliberate criminal act or deliberate violation of any statute or regulation, or any illegal profit or remuneration, by an **Insured**, established by a final, non-appealable adjudication adverse to such **Insured** in any underlying action, and the Insurer shall not utilize a declaratory action or proceeding brought by or against the Insurer to establish such final, non-appealable adjudication;

C.  ERISA - for any violation of the responsibilities, obligations or duties imposed by **ERISA** or for any functions identified in **ERISA** Section 3(21)(A) as not being the functions of a fiduciary, and commonly referred to as "settlor" functions;

D.  Pending or Prior Proceedings - based upon, arising out of or resulting from an action, proceeding or **Claim** commenced against an **Insured** pending on or prior to the Pending or Prior Proceedings Date stated in the Declarations of each applicable **Liability Coverage Part**;

E.  Pollution - based upon, arising out of or resulting from any:

1.  discharge, emission, release, dispersal or escape of any **Pollutants** or any threat thereof;

2.  treatment, removal or disposal of any **Pollutants**; or

3.  regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**,

including any **Claim** for financial loss to a **Company**, its securityholders or its creditors based upon, arising from or in consequence of any matter described in paragraphs 1, 2, or 3 above;

F.  Prior Notice - based upon, arising out of or resulting from any claim reported, or any circumstance reported and accepted, under the insurance policy (including any policies of which such policy is a renewal policy) replaced by this Policy; and

G.  Wage and Hour - based upon, arising out of or resulting from any violation of the responsibilities, obligations or duties imposed by any law governing wage, hour or payroll, including the Fair Labor Standards Act;

Exclusions D and F above shall not apply where this Policy is a renewal of a policy issued by the Insurer to the **Parent Company**.

With respect to all Policy exclusions, no conduct or knowledge of any **Insured** shall be imputed to any other **Insured Person**, and solely with respect to Exclusion B, only the conduct or knowledge of any past, present or future chief executive officer or chief financial officer of a **Company** shall be imputed to such **Company** and its **Subsidiaries**.

**III.   RETENTION OR DEDUCTIBLE**

A.  Any Retention or Deductible applicable to any Coverage Part shall apply as set forth in each Coverage Part and in the amount(s) stated in the Declarations of each Coverage Part. If different parts of a single **Claim** are

subject to different Retentions or Deductibles, then the total amount of **Loss** applied to the applicable Retentions or Deductibles shall not exceed the largest applicable Retention or Deductible.

B. No Retention shall apply to any **Loss** for which an **Insured Person** is not indemnified by a **Company** because of such **Company's Financial Impairment**.

## IV.   LIMIT OF LIABILITY

A. The Combined Maximum Aggregate Limit of Liability, stated in Item 3 of the Declarations of this GTC, represents the maximum amount payable under all **Liability Coverage Parts** during the **Policy Period** for all **Liability Coverage Parts** combined.

B. The Limit of Liability, stated in Item 2 of the Declarations of each **Liability Coverage Part**, represents the maximum amount payable under each **Liability Coverage Part** during the **Policy Period** for any one **Claim** and in the aggregate as set forth in each such **Liability Coverage Part**.

C. **Defense Costs** are part of, and not in addition to, the Limit of Liability of each **Liability Coverage Part**.

D. The remaining portion of each of the limits of liability described above shall be the limits of liability available during any Extended Reporting Period applicable to any Coverage Part.

## V.   REPORTING

A. Notice of any **Claim** under any **Liability Coverage Part** is considered timely when reported to the Insurer as soon as practicable after the **Parent Company's** chief executive officer or chief financial officer first becomes aware of such **Claim**. The Insurer shall not assert that notice of a **Claim** was untimely unless the Insurer is materially prejudiced by the untimely notice.  However, in no event shall any notice be provided later than:

   1.   if the applicable **Liability Coverage Part** expires (or is otherwise terminated) without being renewed with the Insurer, 60 days after the effective date of such expiration or termination; or

   2.   the expiration date of the Extended Reporting Period, if applicable.

B. Notice requirements involving any **Non-Liability Coverage Part** shall be in accordance with the reporting requirements set forth in such **Non-Liability Coverage Part**.

C. Notice of any circumstance which could give rise to a **Claim** under any **Liability Coverage Part** is optional.  If an **Insured** elects to report any circumstance which could give rise to a **Claim**:

   1.   such notice shall include information regarding the nature of any **Wrongful Acts** or alleged or potential damages and the names of any actual or potential defendants; and

   2.   any **Claim** that may subsequently arise out of a reported circumstance shall be deemed to have been first made during the **Policy Period** in which such circumstance was first reported.

## VI.   DEFENSE AND SETTLEMENT

A. With respect to any **Claim** under any **Liability Coverage Part**, the Insurer shall have the right and duty to defend any **Claim**, unless otherwise specifically stated in a particular **Liability Coverage Part**.  The Insurer shall have such right and duty to defend even if any of the allegations in such **Claim** are groundless, false or fraudulent.  Any such duty to defend shall cease upon exhaustion of the applicable Limit of Liability.

B. With respect to any **Claim** under any **Liability Coverage Part**:

   1.   the **Insured** shall:

      (a)   not agree to any settlement, stipulate to any judgment, incur any **Defense Costs**, admit any liability or assume any contractual obligation, without the Insurer's prior written consent, provided that, unless otherwise stated in a particular **Liability Coverage Part**, the **Insured** may settle any **Claim**, without the Insurer's prior written consent, where the amount of such settlement, including **Defense Costs**, does not exceed the applicable Retention or Deductible;

      (b)   not do anything that could prejudice the Insurer's position or its potential or actual rights of recovery; and

      (c)   agree to provide the Insurer with all information, assistance and cooperation which the Insurer may reasonably require,

   provided that the failure of any **Insured** to comply with any of the requirements in paragraphs (a) - (c) above, shall not impair the rights of any **Insured Person** under this Policy; and

   2.   the Insurer:

(a) may make any investigation it deems reasonably necessary and may, with the consent of the **Insureds**, make any settlement of any **Claim** it deems appropriate; and

(b) shall not be liable for any such settlement, stipulation, incurred **Defense Costs**, admission or assumed obligation to which it has not given its prior written consent, and the Insurer shall not unreasonably withhold such consent.

## VII.   ALLOCATION

If in any **Claim**, the **Insureds** who are afforded coverage for a **Claim** incur **Loss** that is covered by this Policy and loss that is not covered by this Policy because such **Claim** includes both covered and uncovered matters, 100% of **Defense Costs** incurred by such **Insured** shall be covered **Loss**, and all loss other than **Defense Costs** shall be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

## VIII.   TREATMENT OF RELATED CLAIMS

All **Related Claims** shall be deemed a single **Claim** first made during the policy period in which the earliest of such **Related Claims** was either first made or deemed to have been first made in accordance with Section V. REPORTING above.

## IX.   SUBROGATION

A.   In the event of any payment under this Policy, the Insurer shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery, and the **Insureds** shall take all reasonable actions to secure and preserve the Insurer's subrogation rights.

B.   In no event shall the Insurer exercise any subrogation right against an **Insured Person**.  In any subrogation action against a **Company**, it is agreed that each **Company** agrees to fulfill any indemnification obligations to the fullest extent permitted by law and any contract or agreement providing an indemnification obligation exceeding any such law.

C.   If the Insurer recovers, either through subrogation or recoupment, any portion of an amount paid under this Policy, the Insurer shall reinstate the applicable limit of liability with any amounts recovered up to such amount paid, less any costs incurred by the Insurer in its recovery efforts.

## X.   EXTENDED REPORTING PERIOD

With respect to all **Liability Coverage Parts**:

A.   If this Policy does not renew, or terminates other than for non-payment of premium, the **Insureds** shall have the right to purchase an ERP for the premium and time period stated in Item 6 of the Declarations. In the event of the non-renewal or termination of one or more **Liability Coverage Parts** of this Policy, the **Insureds** may purchase an ERP solely as respects the **Liability Coverage Part(s)** that has been non-renewed or terminated.

B.   The right to an ERP shall lapse unless written notice of election to purchase such ERP, together with payment of the specified premium, is received by the Insurer within 30 days after the effective date of non-renewal or termination of the Policy. In the event the **Parent Company** elects not to purchase an ERP and an individual **Insured** or group of **Insureds** elects to purchase such ERP, such ERP shall only apply to **Claims** against such **Insured** or group of **Insureds**.

C.   The premium for the ERP shall be deemed fully earned at the inception of the ERP.

D.   Any ERP purchased shall become part of the **Policy Period**, extending such **Policy Period** to the expiration of the time period stated in Item 6 of the Declarations, but only with respect to **Loss** on account of a **Claim** for a **Wrongful Act** taking place before the effective date of non-renewal or termination.

## XI.   CHANGES IN EXPOSURE

A.   New Companies and Old Companies

This Policy's treatment of **Subsidiaries** shall be as stated below and as supplemented by any individual Coverage Part.

Any **Insured** of a **Subsidiary**:

1.   acquired before or during the **Policy Period** is eligible for coverage under any:

(a) **Liability Coverage Part**, but only for **Loss** on account of a **Claim** for a **Wrongful Act** which occurs after the date of such acquisition; and

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 1   Filed  03/08/22   Page 16 of 42

(b) **Non-Liability Coverage Part**, but only after the effective date of such acquisition, and with respect to the Crime Coverage Part, subject to Section VIII. Other Insurance of such Coverage Part.

2. ceasing to be a **Subsidiary** before or during the **Policy Period** is eligible for coverage under any:

(a) **Liability Coverage Part**, but only for **Loss** on account of a **Claim** for a **Wrongful Act** which occurs while such entity was a **Subsidiary**; and

(b) **Non-Liability Coverage Part**, as provided in such **Non-Liability Coverage Part**, but such **Subsidiary** and its **Insureds** shall cease to be **Insureds** under such **Non-Liability Coverage Part** as of the date of such cessation.

B. Acquisition of the **Parent Company**

In the event of a **Change in Control** of the **Parent Company** during the **Policy Period**:

1. any **Liability Coverage Part** shall remain in force until the expiration of the **Policy Period**, but only for any **Claim** for a **Wrongful Act** which occurs prior to such acquisition;

2. the entire premium for this Policy shall be deemed fully earned as of the effective date of such **Change in Control**; and

3. the **Parent Company** shall be entitled to receive a quote for an extension of the **Liability Coverage Parts** ("Run-Off Coverage") solely for **Claims** for **Wrongful Acts** which occurred prior to a **Change in Control**. Coverage offered pursuant to such quote shall be subject to additional or different terms and conditions and payment of additional premium. Any Run-Off Coverage purchased shall replace any Extended Reporting Period provided under Section X. EXTENDED REPORTING PERIOD.

## XII.   NOTICE

A. All notices to the Insurer under this Policy of any event, loss, **Claim** or circumstances which could give rise to a **Claim** shall be given in writing to the address listed in Item 5A of the Declarations, and any such notice shall be deemed notice under the Policy in its entirety.

B. All other notices to the Insurer under this Policy shall be given in writing to the address listed in Item 5B of the Declarations.

C. Any notice under this Policy shall be effective on the date of mailing or receipt by the Insurer, whichever is earlier.

## XIII.   TERMINATION OF POLICY

This Policy shall terminate at the earliest of:

A. 20 days after receipt by the **Parent Company** of written notice from the Insurer of termination for non-payment of premium;

B. expiration of the **Policy Period**; or

C. surrender of the Policy to the Insurer by the **Parent Company** or notice to the Insurer by the **Parent Company** stating when such cancellation will take effect, and in either case any returned premium shall be computed on a pro rata basis.

## XIV.   REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGE

A. In issuing this Policy, the Insurer has relied upon the information and representations in the **Application** as being true and accurate, and the **Application** is the basis for, and considered incorporated into, this Policy.

B. The **Application** shall be construed as a separate request for coverage by each **Insured**, without any knowledge possessed by an **Insured** being imputed to any other **Insured Person**.

C. If the **Application** contains any misrepresentation made with the actual intent to deceive or which, for reasons other than simple negligence or oversight, materially affect the Insurer's acceptance of the risk or the hazard assumed, the Insurer shall not be liable for **Loss** on account of any **Claim** based upon, arising out of or resulting from either of such misrepresentations:

1. with respect to any **Insured Person** who had actual knowledge of any misrepresentation described in paragraph C above, and the Insurer can demonstrate that with such actual knowledge, such **Insured Person** reasonably believed that a **Claim** would arise from such misrepresentation;

2. with respect to any **Company**, if the **Insured Person** described in paragraph 1 above is a past or present chief executive officer or chief financial officer of the **Parent Company**.

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 1   Filed  03/08/22   Page 17 of 42

D.  The Insurer shall not be entitled under any circumstances to void or rescind this Policy with respect to any **Insured**.

## XV.  EFFECT OF BANKRUPTCY

Bankruptcy or insolvency of any **Insured** shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this Policy.

## XVI.  WORLDWIDE TERRITORY

This Policy shall apply anywhere in the world, and any reference to laws, however described, shall include all U.S. federal, state and local statutory laws, all amendments to and rules and regulations promulgated under any such laws, common law, and any equivalent body of law anywhere in the world, unless specifically stated to the contrary.

## XVII.  ROLE OF THE PARENT COMPANY

The **Parent Company** shall act on behalf of each **Insured** with respect to paying premiums, receiving any return premiums, agreeing to endorsements to this Policy and the giving or receiving of any notice provided for in this Policy (except notices of a **Claim** or circumstance which could give rise to a **Claim** or notice to apply for an ERP).

## XVIII.  VALUATION AND FOREIGN CURRENCY

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If any element of **Loss** under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the exchange rate published in The Wall Street Journal on the date the element of **Loss** is due.

## XIX.  ALTERATION, ASSIGNMENT AND HEADINGS

A.  Any change in or modification of this Policy or assignment of interest under this Policy must be agreed to in writing by the Insurer.

B.  The descriptions and headings and sub-headings of this Policy are solely for convenience, and form no part of the terms, conditions and limitations of coverage.

## XX.  ESTATES, HEIRS, LEGAL REPRESENTATIVES, ASSIGNS, SPOUSES AND DOMESTIC PARTNERS

With respect to any **Liability Coverage Part**, **Insured Person** shall include:

A.  the estate, heirs, legal representatives or assigns of any **Executive**, if such **Executive** is deceased, legally incompetent, insolvent or bankrupt; and

B.  the lawful spouse or domestic partner of any **Executive** solely by reason of such spouse's or domestic partner's: 1. status as such; or 2. ownership interest in property which a claimant seeks as recovery for an alleged **Wrongful Act** of such **Executive**,

provided that no coverage shall apply with respect to loss arising from an act, error or omission by any estate, heir, legal representative, assign, spouse or domestic partner of an **Insured Person**.

## XXI.  TRADE SANCTIONS

This insurance coverage does not apply to the extent that trade or economic sanctions of any country prohibit the insurer or any member of the insurer's group from providing insurance coverage.

## XXII.  GLOSSARY

The following terms shall have the meaning ascribed to such terms in each applicable Coverage Part: **Claim**, **Defense Costs**, **Insured**, **Insured Person**, **Loss** and **Wrongful Act**.

A.  **Application** means where provided to the Insurer, the application and any accompanying documentation submitted to the Insurer for this Policy or any documentation submitted to the Insurer in connection with the underwriting of this Policy.

B.  **Change in Control** means:

1.  the **Parent Company's** merger with, or acquisition by, another entity or the acquisition of all or substantially all of its assets by another entity, such that the **Parent Company** is not the surviving entity; or

2.  when a person or entity or group of persons or entities acting in concert, acquires securities or voting rights which result in ownership or voting control by such person(s) or entity(ies) of more than 50% of the

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 1   Filed  03/08/22   Page 18 of 42

outstanding securities or voting rights representing the present right to vote for or appoint directors or **Managers** of the **Parent Company**.

C. **Company** means the **Parent Company** and any **Subsidiary**, any foundation, political action committee or charitable trust controlled or sponsored by the **Parent Company** or any **Subsidiary**, and the **Parent Company** or any **Subsidiary** in its capacity as a debtor in possession under United States bankruptcy law.

D. **Employee** means any natural person whose labor or service was, is or will be engaged and directed by a **Company**, including a part-time, seasonal, leased and temporary employee, intern or volunteer. **Employee** does not include an independent contractor.

E. **ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")).

F. **Executive** means any natural person who was, now is or shall become:

   1. a duly elected or appointed director, officer, **Manager**, trustee, regent, governor, risk manager, comptroller or in-house general counsel of any **Company** organized in the United States of America, or in a functionally equivalent or comparable role to any of the foregoing; or

   2. a holder of a functionally equivalent position or comparable role to those described in paragraph 1 above in a **Company** that is organized in a jurisdiction other than the United States of America, including any position on an advisory board or committee.

G. **Extradition** means any formal process by which an **Insured** located in any country is or is sought to be surrendered to any other country for trial or otherwise to answer any criminal accusation, including the execution of an arrest warrant where such execution is an element of such process.

H. **Financial Impairment** means the status of a **Company** resulting from: 1. the appointment by a state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate such **Company**; or 2. such **Company** becoming a debtor in possession under United States bankruptcy law.

I. **Liability Coverage Part** means any Coverage Part identified in this Policy as a "Liability Coverage Part" within the heading to such Coverage Part or providing third party liability coverage in such Coverage Part.

J. **Manager** means any natural person, who was, now is, or shall become, a manager, member of the Board of Managers or equivalent executive of a **Company** that is a limited liability company.

K. **Non-Liability Coverage Part** means any Coverage Part or insuring clause in this Policy that does not provide any third party liability coverage.

L. **Parent Company** means the entity named in Item 1 of the Declarations.

M. **Policy Period** means the period of time stated in Item 2 of the Declarations of this GTC (subject to any termination in accordance with Section XIII. TERMINATION OF POLICY) and the ERP, if applicable.

N. **Pollutants** means any solid, liquid, gaseous or thermal irritants or contaminants, including smoke, soot, vapor, fumes, acids, chemicals, alkalis, asbestos, asbestos products or waste. Waste includes materials to be reconditioned, recycled or reclaimed.

O. **Related Claims** means all **Claims** based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances or **Wrongful Acts**.

P. **Subsidiary** means:

   1. any entity while more than 50% of the outstanding securities or other equity ownership, representing the present right to vote for election of, or to appoint, directors, **Managers**, or the foreign equivalent of any such directors or **Managers** of such entity, are owned or controlled by the **Parent Company** directly or indirectly through one or more **Subsidiaries**; or

   2. any entity while the **Parent Company** has the right, pursuant to either written contract or the bylaws, charter, operating agreement or similar documents of a **Company**, to elect or appoint a majority of the Board of Directors of a corporation or **Managers**.

POLICY NUMBER: QPL0193298

**QBBP-3000 (05-14)**



*The Solution* **for Directors & Officers and Entity Liability**
**Coverage Part Declarations**

**QBE Specialty Insurance Company**
Wall Street Plaza, 88 Pine Street, New York, New York 10005
Home Office:  c/o CT Corporation System, 314 East Thayer Avenue, Bismarck, North Dakota  58501

**THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.   THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

**Item 1**:     Parent Company:        Hawaii Island Air, Inc.

**Item 2**:     A.  Limit of Liability

              $5,000,000 per Claim
              $5,000,000 in the aggregate

              B.  Securityholder Derivative Demand Investigation Limit: $250,000

**Item 3**:    Additional Limit for Non-Indemnifiable Loss: $1,000,000

**Item 4**:     Retention:

              A.  Insuring Clause B: $50,000 per Claim
              B.  Insuring Clause C: $50,000 per Claim

**Item 5**:     Pending or Prior Proceedings Date: March 2, 2016

QBE and the links logo are registered service marks of QBE Insurance Group Limited.



*The Solution* for Private Company
*Directors & Officers and Entity Liability
Coverage Part*

In consideration of the payment of the premium and subject to the General Terms and Conditions, the Insurer and the **Insureds** agree as follows:

**I.   INSURING CLAUSE**

A.   Side A - Non-Indemnifiable Loss Coverage for Insured Persons

The Insurer shall pay, on behalf of an **Insured Person**, **Loss** on account of a **Claim** first made during the **Policy Period**, to the extent that such **Loss** has not been paid or indemnified by any **Company**.

B.   Side B - Corporate Reimbursement Coverage for Indemnification of Insured Persons

The Insurer shall pay, on behalf of a **Company**, **Loss** on account of a **Claim** first made during the **Policy Period** to the extent the **Company** pays or indemnifies an **Insured Person** for such **Loss**.

C.   Side C - Entity Coverages

The Insurer shall pay, on behalf of a **Company**, **Loss** on account of a **Claim**, and **Defense Costs** on account of a **Securityholder Derivative Demand Investigation**, first made during the **Policy Period**.

**II.   EXCLUSIONS**

In addition to the Exclusions set forth in Section II. EXCLUSIONS of the GTC, no coverage shall be provided under this Coverage Part for **Loss** on account of that portion of a **Claim**:

A.   Insured v. Insured - brought by, or on behalf of:

1.   a **Company** against another **Company**;

2.   a **Company** or **Outside Entity** against an **Insured Person**;

3.   an **Insured Person**, in any capacity, against an **Insured**,

provided that:

(a)   Exclusion A2 above shall not apply to a **Claim** brought: (i) outside the United States of America, Canada or their territories or possessions; (ii) while the **Parent Company** or **Outside Entity** is in **Financial Impairment**; (iii) as a securityholder derivative action; or (iv) while an **Insured Person** is no longer serving in his capacity as such; and

(b)   Exclusion A3 above shall not apply to any **Claim**: (i) for employment-related **Wrongful Acts** against an **Insured Person**; (ii) for contribution or indemnity; (iii) brought by an **Insured Person** who has ceased serving in his capacity as such for at least 1 year; or (iv) brought by, on behalf of or with the participation of a whistleblower.

B.   Publicly Traded Securities - based upon, arising out of or resulting from any public offering of, or purchase or sale of, equity or debt securities issued by any **Company** or **Outside Entity**, provided that this Exclusion B shall not apply to any **Claim** based upon, arising out of or resulting from the **Company's**: 1. securities that are not required to be registered; 2. failure to undertake or complete an initial public offering or sale of its securities; or 3. preparation for any public offering, including any "road show" presentation to potential investors or other similar presentation;

Exclusions C - I below shall only apply to Insuring Clause C, Side C - Entity Coverages:

C.   Antitrust - based upon, arising out of or resulting from anti-trust, price fixing or discrimination, restraint of trade, monopolization, unfair trade practices, predatory pricing or false advertising;

D.   Contract - based upon, arising out of or resulting from any liability in connection with any contract or agreement to which a **Company** is a party, provided that this Exclusion D shall not apply to the extent that such **Company** would have been liable in the absence of such contract or agreement;

E.   Employment Practices - based upon, arising out of or resulting from any employment-related **Wrongful Act**;

F.   Intellectual Property - based upon, arising out of or resulting from any infringement of copyright, patent, trademark, trade dress, trade name or service mark or any misappropriation of ideas, trade secrets or other intellectual property rights;

G.  Personal Injury - based upon, arising out of or resulting from any defamation (including libel and slander), disparagement, wrongful entry or eviction, invasion of privacy, false arrest, false imprisonment, assault, battery, loss of consortium, malicious use or abuse of process or malicious prosecution.

H.  Professional Services - based upon, arising out of or resulting from the performance of or failure to perform **Professional Services**; and

I.  Third Party Discrimination or Harassment - based upon, arising out of or resulting from any discrimination against, or harassment of, any third party.

With respect to this Coverage Part, the following exceptions shall apply to Section II. EXCLUSIONS of the GTC:

1.  Exclusion A. Bodily Injury/Property Damage shall not apply to any **Claim** under Insuring Clause A; and

2.  Exclusion E. Pollution shall not apply to any **Claim**: (a) under Insuring Clause A; or (b) brought by a securityholder of a **Company** against an **Insured Person**.

**III.   RETENTION**

No retention shall apply to any **Claim** under Insuring Clause A or to any **Securityholder Derivative Demand Investigation**.

**IV.   LIMIT OF LIABILITY**

A.  The Securityholder Derivative Demand Investigation Limit stated in Item 2B of the Declarations of this Coverage Part represents the maximum amount payable under this Coverage Part during the **Policy Period** for **Defense Costs** on account of all **Securityholder Derivative Demand Investigations**, which amount shall be part of, and not in addition to, the Limit of Liability stated in Item 2A of such Declarations.

B.  The Additional Limit for Non-Indemnifiable Loss stated in Item 3 of the Declarations of this Coverage Part represents an additional limit of liability available solely to an **Executive** or natural person **General Partner** for **Loss** on account of a **Claim** covered under Insuring Clause A. This additional limit of liability shall be in addition to and not part of, and excess of any other insurance written specifically as excess of, the Limit of Liability stated in Item 2A of such Declarations.

**V.   ADVANCEMENT**

A.  If a **Company** fails to respond to an **Insured Person's** request for indemnification within 60 days of the **Insured Person's** request to the **Company** for such indemnification, then upon the reporting of the **Claim**, the Insurer shall advance **Defense Costs** and any other incurred **Loss** until such time that the **Company** accepts the **Insured's** request for indemnification or the Limit of Liability set forth in Item 2A of the Declarations of this Coverage Part has been exhausted, whichever occurs first. In any other **Claim**, the Insurer shall advance **Defense Costs** on a current basis, but no later than 60 days after receipt of the legal bills and any supporting documentation.

B.  If it is determined by a final adjudication that any advanced **Defense Costs** are not covered under this Coverage Part, the **Insureds**, severally according to their respective interests, shall repay such uncovered **Defense Costs** to the Insurer, provided that nothing in this paragraph B shall limit the final non-appealable adjudication requirement in Exclusion B. Conduct of Section II. EXCLUSIONS of the GTC.  If the Insurer recovers any portion of an amount paid under this Coverage Part, the Insurer shall reinstate the applicable limit of liability with any amounts recovered up to such amount paid, less any costs incurred by the Insurer in its recovery efforts.

**VI.   REPORTING**

Notice of a **Securityholder Derivative Demand Investigation** is optional, but only **Loss** incurred after such **Securityholder Derivative Demand Investigation** is reported is eligible for coverage under this Coverage Part. If an **Insured** elects to report any **Securityholder Derivative Demand Investigation**, any **Claim** that may subsequently arise out of any reported **Securityholder Derivative Demand Investigation** shall be deemed to have been first made during the **Policy Period** in which such investigation was first reported.

**VII.   OTHER INSURANCE**

A.  With the exception of insurance written specifically as excess of the Limit of Liability of this Coverage Part, this Coverage Part shall be excess of and shall not contribute with any valid and collectible insurance providing coverage for **Loss** for which this Coverage Part also provides coverage, provided that any payment by an **Insured** of a retention or deductible under any such other insurance shall reduce the applicable Retention under this Coverage Part by the amount of such payment which would otherwise have been **Loss** under this Coverage Part.

B. This Coverage Part shall also be excess of and shall not contribute with any indemnity provided, and any valid and collectible insurance maintained, by an **Outside Entity** for an **Insured Person** serving in his capacity as such for the **Outside Entity**.

C. Any personal umbrella excess liability insurance, independent directors liability insurance or any other similar personal liability insurance available to an **Insured** shall be specifically excess of this Coverage Part.

**VIII.  PRIORITY OF PAYMENTS**

A. In the event that **Loss** under Insuring Clause A and any other **Loss** are concurrently due under this Coverage Part, then the **Loss** under Insuring Clause A shall be paid first.  In all other instances, the Insurer may pay **Loss** as it becomes due under this Coverage Part without regard to the potential for other future payment obligations under this Coverage Part.

B. The coverage provided by this Coverage Part is intended first and foremost for the benefit and protection of **Insured Persons**. In the event a liquidation or reorganization proceeding is commenced by or against a **Company** pursuant to United States bankruptcy law:

   1. the **Insureds** hereby agree not to oppose or object to any efforts by the Insurer, the **Company** or an **Insured** to obtain relief from any stay or injunction issued in such proceeding; and

   2. the Insurer shall first pay **Loss** on account of a **Claim** for a **Wrongful Act** occurring prior to the date such liquidation or reorganization proceeding commences, and then pay **Loss** in connection with a **Claim** for a **Wrongful Act** occurring after the date such liquidation or reorganization proceeding commences.

**IX.  SECURITIES OFFERING**

If during the **Policy Period**, a **Company** intends a public offering of securities under the Securities Act of 1933 and gives written notice to the Insurer within 30 days of the effective date of the Registration Statement for such offering, together with any additional information requested by the Insurer, the Insurer shall provide the **Company** with a quote for coverage with respect to such offering.  Coverage offered pursuant to this quote shall include coverage for **Wrongful Acts** occurring in the course of any "road show" presentation to potential investors or other similar presentation and shall be subject to additional or different terms and conditions and payment of additional premium.

**X.  GLOSSARY**

A. **Claim** means:

   1. with respect to Insuring Clauses A and B, any investigation, evidenced by any written document, including a subpoena, target letter or search warrant, against an **Insured Person** for a **Wrongful Act**; and

   2. with respect to Insuring Clauses A, B and C:

      (a) a written demand for monetary or non-monetary (including injunctive) relief, including demands for arbitration, mediation, waiving or tolling of a statute of limitations or **Extradition**;

      (b) a civil or criminal proceeding, evidenced by: (i) the service of a complaint or similar pleading in a civil proceeding; or (ii) the filing of an indictment, information or similar document or an arrest in a criminal proceeding; and

      (c) a formal administrative or regulatory proceeding, evidenced by the filing of a formal notice of charges or the entry of a formal order of investigation,

      against an **Insured** for a **Wrongful Act**, including any appeal therefrom.

The time when a **Claim** shall be deemed first made for the purposes of this Coverage Part shall be the date on which the **Claim** is first made against, served upon or received by the **Insured** or the applicable notice or order is filed or entered.

B. **Defense Costs** means that part of **Loss** consisting of:

   1. reasonable costs, charges, fees (including, attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of any **Insured**) incurred in: (a) investigating, defending, opposing or appealing any **Claim** or (b) any **Securityholder Derivative Demand Investigation**; and

   2. the premium for appeal, attachment or similar bonds (but the Insurer shall be under no obligation to furnish any bond).

C. **Insured** means any **Company** or **Insured Person**.

D. **Insured Person** means:

   1. an **Executive**;

2. an **Employee**, but only with respect to a **Claim**: (a) brought by a securityholder of a **Company** in his capacity as such; or (b) that is also brought and maintained against an **Insured Person** included in paragraph 1 above; or

3. a holder of an equivalent position to those included in paragraph 1 above in an **Outside Entity**, while serving at the specific request or direction of the **Company**.

E. **Loss** means the amount that an **Insured** becomes legally obligated to pay on account of any **Claim** including:

1. compensatory damages;

2. judgments and settlements, including a judgment or settlement awarding plaintiffs' attorneys fees, provided that with respect to any settlement including plaintiffs' attorneys fees, that portion of the settlement can be demonstrated to be reasonable, taking into consideration the nature of legal action, time and expense involved in prosecuting such action, and the likelihood of a court awarding a similar amount as part of a judgment;

3. pre and post-judgment interest;

4. **Defense Costs**;

5. solely with respect to Insuring Clause A, taxes imposed by law upon an **Insured Person** in his capacity as such in connection with any bankruptcy, receivership, conservatorship or liquidation of a **Company**, to the extent such taxes are insurable by law; and

6. punitive, exemplary or multiplied damages, fines or penalties, if and to the extent that any such damages, fines or penalties are insurable under the law of the jurisdiction most favorable to the insurability of such damages, fines or penalties.

In determining the most favorable jurisdiction as set forth in paragraph 6 above, due consideration shall be given to the jurisdiction with a substantial relationship to the relevant **Insureds** or to the **Claim** giving rise to such damages, fines or penalties, and the Insurer shall not challenge any opinion of independent legal counsel (mutually agreed to by the Insurer and the **Insured**) that such damages, fines or penalties are insurable under applicable law.

**Loss** does not include any portion of such amount that constitutes any:

(a) amount not insurable under the law pursuant to which this Coverage Part is construed;

(b) cost incurred to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c) amount that represents or is substantially equivalent to an increase in consideration paid (or proposed to be paid) by a **Company** in connection with its purchase of any securities and assets;

(d) tax, other than taxes described in paragraph 5 above; or

(e) cost incurred to clean up, remove, contain, treat, detoxify or neutralize **Pollutants**.

F. **Outside Entity** means:

1. any non-profit entity, community chest, fund or foundation; or

2. any other entity specifically added as an **Outside Entity** by endorsement to this Coverage Part,

that is not a **Company**.

G. **Professional Services** means services which are performed for others for a fee.

H. **Securityholder Derivative Demand Investigation** means an investigation by a **Company** to determine whether it is in the best interest of such **Company** to prosecute the claims alleged in a securityholder derivative demand or lawsuit. Where a **Securityholder Derivative Demand Investigation** is initiated because of a lawsuit rather than a demand, any coverage provided for **Defense Costs** on account of such **Securityholder Derivative Demand Investigation** shall in no way limit the coverage otherwise afforded under this Coverage Part to an **Insured** for **Loss** on account of a **Claim**.

J. **Wrongful Act** means:

1. any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by: (a) an **Insured Person** in his capacity as such; or (b) by a **Company**; or

2. any other matter claimed against an **Insured Person** solely by reason of serving in his capacity as such.

POLICY NUMBER: QPL0139298

QBBP-3001 (05-14)



***The Solution*** for Employment Practices Liability
**Coverage Part Declarations**

**QBE Specialty Insurance Company**

Wall Street Plaza, 88 Pine Street, New York, New York 10005

Home Office:  c/o CT Corporation System, 314 East Thayer Avenue, Bismarck, North Dakota  58501

**THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.  THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

**Item 1**:     Parent Company:       Hawaii Island Air, Inc.

**Item 2**:     Limit of Liability

                        $5,000,000 per Claim
                        $5,000,000 in the aggregate

**Item 3**:     Retention: $50,000 per Claim

**Item 4**:     Pending or Prior Proceedings Date: March 2, 2016

QBE and the links logo are registered service marks of QBE Insurance Group Limited.



***The Solution*** for Employment Practices Liability
Coverage Part

In consideration of the payment of the premium and subject to the General Terms and Conditions, the Insurer and the **Insureds** agree as follows:

**I.  INSURING CLAUSE**

The Insurer shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made during the **Policy Period**.

**II.  EXCLUSIONS**

In addition to the Exclusions set forth in Section II. EXCLUSIONS of the GTC, no coverage shall be provided under this Coverage Part for **Loss** on account of that portion of a **Claim**:

A.  Breach of Written Employment Contract - based upon, arising out of or resulting from any breach of any written employment contract or agreement, provided that this Exclusion A shall not apply to: 1. **Loss** to the extent an **Insured** would have been liable for such **Loss** in the absence of such written employment contract or agreement; or 2. **Defense Costs**;

B.  OSHA, Workforce Notification and Labor Relations - based upon, arising out of or resulting from any violation of the responsibilities, obligations or duties imposed by the Occupational Safety and Health Act, the Worker Adjustment and Retraining Notification Act, the National Labor Relations Act or any similar law; and

C.  Workers Compensation, Disability Benefits, Social Security, Unemployment - based upon, arising out of or resulting from any failure to comply with any obligation under any workers compensation, disability benefits, social security or unemployment  insurance law;

Exclusions A - C above shall not apply to any **Claim** for **Retaliation**.

With respect to this Coverage Part, the following exceptions shall apply to Section II. EXCLUSIONS of the GTC:

1.  Exclusion A. Bodily Injury/Property Damage shall not apply to **Loss** for any mental anguish, emotional distress or humiliation when alleged as part of a **Claim** otherwise covered under this Coverage Part; and

2.  Exclusion C. ERISA and E. Pollution shall not apply to any **Claim** for **Retaliation**.

**III.  OTHER INSURANCE**

A.  With respect to any **Claim** for an **Employment Practices Wrongful Act**, other than that portion of a **Claim** made against a leased or temporary employee or **Independent Contractor**, this Coverage Part shall be primary insurance.

B.  With respect to:

1.  that portion of any **Claim** made against any leased or temporary employee or **Independent Contractor**; or

2.  any **Claim** for a **Third Party Wrongful Act**, where **Loss** is covered under this Coverage Part and other valid and collective insurance,

this Coverage Part shall be specifically excess of and shall not contribute with any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by the Coverage Part), regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

**IV.  COORDINATION OF COVERAGE**

Any **Loss** covered under this Coverage Part and one or more other **Liability Coverage Parts** shall first be covered under this Coverage Part, subject to its terms, conditions and limitations.  Any remaining portion of such **Loss** shall be covered under such other **Liability Coverage Part(s)**, subject to its terms, conditions and limitations.

**V.  GLOSSARY**

A.  **Benefits** means any payments (including insurance premiums), deferred compensation, perquisites or fringe benefits, in connection with an employee benefit plan and any other payment to or for the benefit of an employee arising out of the employment relationship. However, **Benefits** shall not include salary, wages, bonuses, commissions, **Stock Benefits** or non-deferred cash incentive compensation.

B. **Claim** means any:

1. written demand for monetary or non-monetary (including injunctive) relief, including demands for arbitration, waiving or tolling of a statute of limitations, reinstatement, reemployment or re-engagement;

2. civil or criminal proceeding, evidenced by: (a) the service of a complaint or similar pleading in a civil proceeding; or (b) the filing of an indictment, information or similar document or an arrest in a criminal proceeding; and

3. arbitration proceeding pursuant to an employment contract or agreement, policy or practice of a **Company**;

4. administrative, regulatory or tribunal proceeding, other than a labor, grievance or other proceeding under a collective bargaining agreement, evidenced by the filing of a formal notice of charges or the entry of a formal order of investigation; or

5. any audit of an **Insured** conducted by the United States of America Office of Federal Contract Compliance Programs ("OFCCP"),

against an **Insured** for a **Wrongful Act**, including any appeal therefrom.

The time when a **Claim** shall be deemed first made for the purposes of this Coverage Part shall be the date on which the **Claim** is first made against, served upon or received by the **Insured** or the applicable notice or order is filed or entered.

C. **Defense Costs** means that part of **Loss** consisting of:

1. reasonable costs, charges, fees (including, attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of any **Insured**) incurred in investigating, defending, opposing or appealing any **Claim**; or

2. the premium for appeal, attachment or similar bonds (but the Insurer shall be under no obligation to furnish any bond).

D. **Discrimination** means any violation of any employment discrimination law.

E. **Employment Practices Wrongful Act** means any:

1. breach of any employment contract or agreement or contractual obligation, including any contract or agreement or contractual obligation arising out of any employee handbook, personnel manual, policy statement or other representation;

2. **Discrimination**;

3. **Harassment**;

4. **Retaliation**;

5. **Workplace Tort**; or

6. **Wrongful Employment Decision**,

committed, attempted, or allegedly committed or attempted by an **Insured** while acting in his or its capacity as such.

F. **Harassment** means any:

1. sexual harassment that is made a condition of employment with, used as a basis for employment decisions by, interferes with performance or creates an intimidating, hostile or offensive working environment within, a **Company**; or

2. workplace harassment, including bullying that interferes with performance or creates an intimidating, hostile or offensive working environment within a **Company**.

G. **Independent Contractor** means any natural person working for a **Company** pursuant to a written contract or agreement between such natural person and the **Company** which specifies the terms of the **Company's** engagement of such natural person.

H. **Insured** means any **Company** or **Insured Person**.

I. **Insured Person** means any:

1. **Executive** or **Employee**; or

2. **Independent Contractor**, but only if the **Company** agrees to indemnify the **Independent Contractor** in the same manner as **Employees** for liability arising out of a **Claim**.

J. **Loss** means the amount that an **Insured** becomes legally obligated to pay on account of any **Claim** including:

1. compensatory damages (including back pay and front pay);

2. judgments and settlements, including a judgment or settlement awarding plaintiffs' attorneys fees, provided that with respect to any settlement including plaintiffs' attorney fees, that portion of the settlement can be demonstrated to be reasonable, taking into consideration the nature of legal action, time and expense involved in prosecuting such action, and the likelihood of a court awarding a similar amount as part of a judgment;

3. pre and post-judgment interest;

4. liquidated damages awarded pursuant to the Age Discrimination in Employment Act, Family Medical Leave Act or Equal Pay Act;

5. **Defense Costs**; and

6. punitive, exemplary or multiplied damages, if and to the extent that any such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages.

In determining the most favorable jurisdiction as set forth in paragraph 6 above, due consideration shall be given to the jurisdiction with a substantial relationship to the relevant **Insureds**, to the **Company**, or to the **Claim** giving rise to such damages, and the Insurer shall not challenge any opinion of independent legal counsel (mutually agreed to by the Insurer and the **Insured**) that such damages are insurable under applicable law.

**Loss** does not include any portion of such amount that constitutes any:

(a) amount not insurable under the law pursuant to which this Coverage Part is construed;

(b) cost incurred to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c) future salary, wages, commissions, or **Benefits** or other monetary payments of a claimant who has been or shall be hired, promoted or reinstated to employment pursuant to a settlement, order or other resolution of any **Claim**;

(d) salary, wages, commissions, **Benefits** or other monetary payments which constitute severance payments or payments pursuant to a notice period;

(e) **Benefits** due or to become due or the equivalent value of such **Benefits**;

(f) cost associated with providing any accommodation for persons with disabilities or any other status which is protected under any law, including the Americans with Disabilities Act and the Civil Rights Act of 1964;

(g) tax, fine or penalty imposed by law; or

(h) cost incurred to clean up, remove, contain, treat, detoxify or neutralize **Pollutants**.

K. **Retaliation** means retaliatory treatment against an **Employee** of a **Company** on account of such individual:

1. exercising his or her rights under law, refusing to violate any law or opposing any unlawful practice;

2. having assisted or testified in or cooperated with a proceeding or investigation (including any internal investigation conducted by the **Company's** human resources or legal department) regarding alleged violations of law by the **Insured**;

3. disclosing or threatening to disclose to a superior or any governmental agency any alleged violations of law; or

4. filing any claim against the **Company** under the Federal False Claims Act, Section 806 of the Sarbanes Oxley Act or any other whistleblower law.

L. **Stock Benefits** means any:

1. offering, plan or agreement between a **Company** and any **Employee** which grants stock, warrants, shares or stock options of the **Company** to such **Employee**, including grants of restricted stock, performance stock shares, membership shares or any other compensation or incentive granted in the form of securities of the **Company**; or

2. payment or instrument, the amount or value of which is derived from the value of securities of the **Company**, including stock appreciation rights or phantom stock plans or arrangements,

provided that **Stock Benefits** shall not include amounts claimed under any employee stock ownership plans or employee stock purchase plans.

M. **Third Party** means any natural person who is not an **Insured Person**.

N. **Third Party Wrongful Act** means any sexual harassment, or discrimination based upon status protected under any anti-discrimination law, against a **Third Party** committed, attempted, or allegedly committed or attempted by any **Insured** while acting in his or its capacity as such.

O. **Workplace Tort** means any employment-related:

1. misrepresentation, defamation (including libel and slander), invasion of privacy, wrongful infliction of emotional distress, mental anguish or humiliation; or

2. negligent retention, supervision, hiring or training, failure to provide or enforce consistent employment-related corporate policies and procedures, false imprisonment, negligent evaluation, wrongful discipline or wrongful deprivation of career opportunity,

but only when alleged as part of a **Claim** for any **Wrongful Employment Decision**, breach of employment contract, **Discrimination**, **Harassment** or **Retaliation**.

P. **Wrongful Act** means an **Employment Practices Wrongful Act** or **Third Party Wrongful Act**.

Q. **Wrongful Employment Decision** means any wrongful termination, discharge of employment, demotion, denial of tenure, failure or refusal to employ or promote, or wrongful or negligent employee reference.

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 1   Filed  03/08/22   Page 29 of 42

**POLICY NUMBER: QBE-6192298** **INTERLINE**
**Endorsement Effective Date: March 2, 2017** QBIL-0199 (06-13)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Service of Process Clause

# HAWAII

Upon any cause of action under this policy, QBE Specialty Insurance Company (hereafter "the Company") may be sued in the district court of the county in which the cause of action arose.

The Company appoints the Commissioner of Insurance for the State of Hawaii as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy.  Service of process upon the Commissioner shall be lawful service upon the Company.

The Company further designates

The Corporation Company, Inc.
900 Fort Street Mall, Suite 1800
Honolulu, HI 96813

as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

All other terms and conditions of this policy remain unchanged.

**POLICY NUMBER: DP153292SI**
**Effective Date of Endorsement: March 2, 2017**                                                **QBBPP-2090 (05-14)**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### PRIOR ACTS EXCLUSION

This endorsement modifies insurance provided under the following:
 DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART
 EMPLOYMENT PRACTICES LIABILITY COVERAGE PART


It is hereby agreed that Section **II. EXCLUSIONS** is amended by the addition of the following:

Prior Acts - based upon, arising out of or resulting from any **Wrongful Act** actually or allegedly committed or attempted, in whole or in part, prior to February 4, 2016.


All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER: QPL0419298**

**Endorsement Effective Date: March 2, 2017**                        **QBBPP-2117 (04-15)**


# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# INSURED PERSON AMENDED TO INCLUDE ANY ADVISORY BOARD MEMBER ENDORSEMENT


This endorsement modifies insurance provided under the following:

DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART


It is hereby agreed that:

**I.**    The definition of **Insured Person** in paragraph D. of Section **X. GLOSSARY** is amended by the addition of the following:

An **Insured Person** shall include any natural person who was, now is or shall be a board observer or duly elected member of an advisory board including a **Scientific Advisory Board**.

**II.**    Section **X. GLOSSARY** is amended by the addition of the following:

**Scientific Advisory Board** means a group of scientists, independent from management, created by or requested by the **Company** to provide objective feedback and guidance on the **Company's** progress and goals.

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER: QPL0149298**                                                    **QBBPP-2168 (05-14)**
**Endorsement Effective Date: March 2, 2017**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AMEND FORMER INSURED PERSON TIME THRESHOLD ENDORSEMENT

This endorsement modifies insurance provided under the following:

DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that paragraph (b)(iii) in Exclusion A. Insured v. Insured of Section **II. EXCLUSIONS** is replaced by the following:

(iii) brought by an **Insured Person** who has ceased serving in his or her capacity as such for at least 2 year(s); or

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER: QPL0439298**  
**Endorsement Effective Date: March 2, 2017**                              **QBBPP-2180 (05-14)**

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AMEND BODILY INJURY/PROPERTY EXCLUSION FOR SECURITYHOLDER CARVEBACK

This endorsement modifies insurance provided under the following:
DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

It is hereby agreed that Section **II. EXCLUSIONS,** paragraph 1. is replaced by the following:

1.  Exclusion A. Bodily Injury/Property Damage shall not apply to: (a) any **Claim** under Insuring Clause A; or (b) **Loss** on account of derivative demand or action or **Claim** brought by a securityholder or limited partner of a **Company** against an **Insured Person**.

All other terms and conditions of this Policy remain unchanged.

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 1   Filed  03/08/22   Page 34 of 42

**POLICY NUMBER: QPL0199298**

**Endorsement Effective Date: March 2, 2017**                                            QBBPP-2200 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AMEND DEFINITION OF CLAIM TO INCLUDE MEDIATION

This endorsement modifies insurance provided under the following:

 EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

It is hereby agreed that Section **V. GLOSSARY**, paragraph B. **Claim** 1. is amended by the addition of the word "mediation," after the word "arbitration,".

All other terms and conditions of this Policy remain unchanged.

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 1   Filed  03/08/22   Page 35 of 42

**POLICY NUMBER: QP500132298**
**Endorsement Effective Date: March 2, 2017**                                    **QBBPP-2213 (09-14)**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PROFESSIONAL SERVICES EXCLUSION WITH SECURITYHOLDER CLAIM CARVEBACK

This endorsement modifies insurance provided under the following:
DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that Exclusion H. Professional Services in Section **II. EXCLUSIONS** is amended by the addition of the following:

Exclusion H shall not apply to any **Claim** brought by a securityholder of a **Company** against a **Company**. However, in no event shall any coverage be provided for any portion of such **Claim** that is brought by the securityholder in solely his capacity as a client of such **Company**.

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER: QPL0182298**
Endorsement Effective Date: March 2, 2017                                    QBBPP-2216 (05-14)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**INSURED V. INSURED CARVEBACK FOR FINANCIAL IMPAIRMENT**

This endorsement modifies insurance provided under the following:
DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that paragraph (b) of Exclusion A. Insured v. Insured in Section **II. EXCLUSIONS** is replaced by the following:

Exclusion A3 above shall not apply to any **Claim**: (i) for employment-related **Wrongful Acts** against an **Insured Person**; (ii) for contribution or indemnity; (iii) brought by an **Insured Person** who has ceased serving in his capacity as such for at least 1 year; (iv) brought while the **Parent Company** is in **Financial Impairment**; or (v) brought by, on behalf of or with the participation of a whistleblower;

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER: QPL0150298**

**Effective Date of Endorsement: March 2, 2017**                                    **QBBPP-2247 (12-14)**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NAMED CO-DEFENDANT COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

It is hereby agreed that:

I.      Coverage under this Policy shall also apply to the **Named Co-Defendants** for any **Claim** made against the **Named Co-Defendants** but only to the extent that:

   a.   a **Claim** is made against the **Named Co-Defendants** for a **Wrongful Act** of an **Insured** and such **Claim** is made and continuously maintained against both the **Insured** and the **Named Co-Defendants**;
   b.   the **Named Co-Defendants** become co-defendants in such **Claim** by reason of their actual or alleged status as a controlling shareholder; and
   c.   the **Insured** and the **Named Co-Defendants** are represented by the same legal counsel.

II.     Section **XXII. GLOSSARY** is amended by the addition of the following:

   **Named Co-Defendants** means the **Sponsor Company** and any **Affiliated Entity** including any directors, of-ficers, general partners, managing directors or employees thereof.

   **Sponsored Company** means:

   PaCap Aviation Finance
   Malama Investments

   **Affiliated Entity** means any entity that is:

   a.   A pooled investment vehicle created, managed or controlled by the **Sponsored Company**;
   b.   An investment or management company controlled by the **Sponsored Company** that renders services to an **Affiliated Entity** described in paragraph a. above; or
   c.   A special purpose vehicle created and controlled by the **Sponsored Company** for the purpose of making an acquisition of the **Parent Company**.

All other terms and conditions of this Policy remain unchanged.

**QBBPP-2247 (12-14)**                                                               **Page 1 of 1**

**POLICY NUMBER: QPL0192298**
**Effective Date of Endorsement: March 02, 2017**                                      **QBBPP-2073M (05-14)**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.


### SPECIFIED INDIVIDUAL EXCLUSION – CLAIMS BROUGHT BY SUCH INDIVIDUAL


This endorsement modifies insurance provided under the following:

DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that Section **II. EXCLUSIONS** is amended by the addition of the following:

No coverage shall be provided under this Coverage Part for **Loss** on account of that portion of a **Claim** brought by or on behalf of any Individual listed below, and/or any entity on which such individual(s) is a director, officer, management committee member or trustee (or equivalent position), or any entity in such individual(s) owns, or controls, five percent (5%) or more of an equity or debt ownership interest (individually or collectively) either directly or indirectly and/or any past, present or future director or officer (or equivalent position) of any such entity.


Larry Ellison


All other terms and conditions of this Policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

It is hereby agreed that:

**I.**   This Policy is amended by the addition of the following:

If aggregate insured losses attributable to a **Certified Act of Terrorism** under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**II.**   Solely for the purposes of this endorsement, this Policy is amended by the addition of the following:

**Certified Act of Terrorism** means an act that is certified by the Secretary of Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act,, to be an act of terrorism.  The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

**1.**   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.**   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**III.**   The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any **Loss** that is otherwise excluded under this Policy.

All other terms and conditions of this Policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

EXHIBIT B

**From:** Timothy Vazquez <Timothy.Vazquez@us.qbe.com>
**Sent:** Friday, May 22, 2020 12:56 PM
**To:** Rains, Darryl P. <DRains@mofo.com>
**Subject:** Matter: Elizabeth A. Kane, et al.; QBE Claim Number 570784N

**- External Email -**

Mr. Rains,

Attached is a copy of QBE's coverage with respect to the above referenced matter. If you have any questions with regard to this matter please do not hesitate to contact me.

Regards,

**Tim Vazquez**
AVP, Claims Practice Leader-Directors and Officers
Specialty Claims- Management Liability | North America
55 Water Street, New York, NY 10041
+1 646 453 2264 | +1 973 879 0905
Website      LinkedIn      Twitter



------------------ IMPORTANT NOTICE : The information in this email is confidential and may also be privileged. If you are not the intended recipient, any use or dissemination of the information and any disclosure or copying of this email is unauthorised and strictly prohibited. If you have received this email in error, please promptly inform us by reply email or telephone. You should also delete this email and destroy any hard copies produced.

*This electronic message from QBE North America and any attachment to it is intended exclusively for the individual or entity to which it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any unauthorized disclosure, copying, distribution or use of this electronic message or any attachment is prohibited. If you have received this message in error, please return it to the sender and delete this original from your system.*

EXHIBIT B



QBE North America
55 Water Street, 20th Floor
New York, NY 10041

May 22, 2020

**VIA EMAIL**

Darryl Rains
Morrison & Foerster LLP
DRains@mofo.com

Re:     **Insured:**         **Hawaii Island Air, Inc.**
        **Insurer:**         **QBE Specialty Insurance Company**
        **Matter:**          **Elizabeth A. Kane, Bankruptcy Trustee, et al.**
        **QBE Policy:**      **QPL0192298**
        **QBE Claim:**       **570784N**

Dear Mr. Rains:

I am handling the above-referenced matter under the above-referenced primary policy issued by
QBE Specialty Insurance Company ("QBE") to ii Island Air, Inc. ("Island Air"). A file has been
established for this matter under the above file number.  Please refer to this number whenever
corresponding with QBE.

We are directing this letter to you as the authorized representative of Paul Marinelli (the
"Insured") for insurance coverage purposes.  If you are not authorized to act on behalf of the
Insured with respect to insurance matters, we request that you direct a copy of this letter to the
appropriate representative of the Insured for his or her information and advise us accordingly.

QBE is in receipt of the complaint captioned Elizabeth A. Kane, et al. v. PaCap Aviation
Finance, LLC, et al. filed in the United States Bankruptcy Court for the District of Hawaii (the
"Trustee Action"). The following will set forth QBE's initial coverage position in connection
with the Trustee Action. As set forth below, coverage is triggered for the Trustee Action, subject
to the reservations herein.

## I.     **BACKGROUND**

Initially, please understand that the foregoing is based on the allegations as set forth in the
Trustee Action. By reciting the allegations therein, we do not mean to intend to imply that the
allegations have any merit.

The Trustee Action is brought by Elizabeth Kane, the court appointed Chapter 7 Trustee for
Island Air (the "Trustee"). Also named as Plaintiffs are the Air Line Pilots Association,
International and the Hawaii Teamsters and Allied Workers Local 996. The Trustee Action
names numerous entities and individuals as defendants. Please understand that given that the

majority of the Trustee Action is directed to non-Insureds, the following will focus on only those allegations as they pertain to Mr. Marinelli.

By way of background, we understand that Mr. Marinelli was Lawrence Investments' President, Ohana Airline Holdings, LLC's manager, Carbonview Limited LLC's President, a trustee of the Lawrence J. Ellison Revocable Trust, and a director at Island Air.

It is alleged, among other things, that Mr. Marinelli violated the Dislocated Workers Act and the WARN Act. In addition, it is alleged that Mr. Marinelli, as proxy for Mr. Ellison, had an interest in keeping Island Air unnaturally on life support because Island Air was in possession of five aircraft that Mr. Ellison owned. Plaintiffs allege that Mr. Marinelli knew that if Island Air went into bankruptcy, it would be extremely difficult to sell Mr. Ellison's five airplanes without the assistance of Island Air's maintenance personnel, and that the price that could be obtained would plummet. So it is alleged that Mr. Marinelli made just enough funds available to Island Air to keep it alive long enough for him to sell those aircraft. Plaintiffs allege that even those funds were given reluctantly and in situations where: (1) the ultimate purchaser of Mr. Ellison's aircraft required some of the purchase funds be made available to Island Air; or (2) where loans were made on terms that Mr. Marinelli thought were very low risk for Mr. Ellison. It is alleged that when the goal of selling Mr. Ellison's aircraft was accomplished, not only did the flow of funds from Mr. Ellison stop, the flow was reversed. Mr. Marinelli used his control over Island Air to take critical monies back from the company, just days before the bankruptcy filing. Plaintiffs also allege that Mr. Marinelli knew that the business plan was undercapitalized from the beginning and approved the plan.

Based on the foregoing, the Plaintiff sets forth causes of action against Mr. Marinelli for violation of the Dislocated Workers Act – Failure to Make Prompt Payment of Wages and Benefits and Failure to Provide Notification (Counts I and II), violation of the WARN Act-Failure to Provide Notification, (Count III), breach of fiduciary duty of loyalty for allowing assets to dissipate in order to further own interests (Count VII), breach of fiduciary duty of care for resigning while corporation in crisis (Count VIII), breach of fiduciary duty of care and loyalty for implementing undercapitalized business plan (Count IX), aiding and abetting Jeffery Au's breach of fiduciary duty (Count X), and Indemnity (Count XI).

## II.    THE POLICY

QBE issued to Island Air The Solution for Management Liability policy number QPL0192298 for the March 2, 2017 to March 2, 2018 policy period. The Policy provides coverage under the following Coverage Parts: Directors & Officers and Entity Liability ("D&O); and Employment Practice Liability ("EPL"). The D&O Coverage Part provides a $5,000,000 Limit of Liability which is subject to a $0 per Claim Retention for Claims arising under Insuring Clause A. The EPL Coverage Part provides a $5,000,000 Limit of Liability which is subject to a $50,000 per Claim Retention. Please understand that the Policy is subject to a $5,000,000 combined maximum aggregate Limit of Liability for all Coverage Parts. Defense Costs erode the retention and are subject to, and not in addition to, the Limit of Liability.

### A.    D&O COVERAGE PART

Initially, given Island Air's bankruptcy filing, we presume that Island Air is unable to indemnify Mr. Marinelli. As such, the foregoing will focus on coverage potentially available under Insuring

Clause A. QBE reserves its right to consider coverage under Insuring Clause B should additional information reveal that Island Air is able to provide indemnification.

Insuring Clause A provides coverage for Loss incurred by an Insured Person on account of a Claim first made during the Policy Period to the extent that such Loss has not been paid or indemnified by any Company. As a former director Mr. Marinelli would appear to constitute an Insured Person under the Policy. Additionally, the Trustee Action involves a civil proceeding setting forth allegations of wrongful conduct in connection with the failure to provide notification and pay certain wages and benefits, as well as various allegations of breaches of fiduciary duty. Such allegations would give rise to a Claim for a Wrongful Act.

As noted above, the Claim must be first made during the Policy Period. The Policy expired on March 2, 2018. By a letter dated April 2, 2018, QBE accepted as a notice of circumstance a February 27, 2018 letter from the Trustee which identified several circumstances that the Trustee believed could give rise to a Claim under the Policy. Such circumstances included the failure to comply with the WARN Act. The Trustee Action arises from the circumstances detailed in the February 27, 2018 letter. Accordingly, pursuant to Section V. of the Policy's General Terms and Conditions, the Trustee Action will be deemed having first made during the March 2, 2017 to March 2, 2018 Policy Period.

While QBE has determined that coverage is triggered for the Trustee Action, we take this opportunity to highlight certain policy provisions which may limit and/or preclude coverage for this matter. Section X of the D&O Coverage Part sets forth the Policy's definition of Loss. QBE reserves its rights to deny coverage for that portion of any judgment or settlement which does not fall under the Policy's definition of Loss.

Section II of the General Terms and Conditions excludes from coverage any Loss on account of that portion of a Claim:

> B. Conduct - based upon, arising out of or resulting from any deliberate fraud, deliberate criminal act or deliberate violation of any statute or regulation, or any illegal profit or remuneration, by an Insured, established by a final, non-appealable adjudication adverse to such Insured in any underlying action, and the Insurer shall not utilize a declaratory action or proceeding brought by or against the Insurer to establish such final, non-appealable adjudication.

> G. Wage and Hour - based upon, arising out of or resulting from any violation of the responsibilities, obligations or duties imposed by any law governing wage, hour or payroll, including the Fair Labor Standards Act.

Given the allegations in Trustee Action, QBE reserves its rights under the Conduct and Wage and Hour exclusions.

Section VII of the Policy's D&O Coverage Part sets forth the Policy's Other Insurance provision. Pursuant to Section VII, the Policy provides coverage excess of any valid and collectible insurance providing coverage for Loss for which this Policy also provides coverage. Please advise whether Mr. Marinelli has any additional insurance that may be applicable to this matter. In particular, it is alleged that that Mr. Marinelli was Lawrence Investments' President, Ohana Airline Holdings, LLC's manager, Carbonview Limited LLC's President, and a trustee of

the Lawrence J. Ellison Revocable Trust. Please confirm whether Mr. Marinelli is entitled to coverage under any insurance policies issued to any of these other entities.

Section VIII. of the General Terms and Conditions sets forth the Policy's Allocation provision. As the Trustee Action involves allegations against Mr. Marinelli in an uninsured capacity, QBE reserves its rights under Section VIII. of the Policy.

Pursuant to Section VI of the Policy's General Terms and Conditions, QBE has the right and duty to defend. We understand that you are representing Mr. Marinelli in connection with the bankruptcy proceedings. QBE will consider the retention of Morrison & Foerster LLP once we receive additional information regarding hourly billing rates and staffing. Please find attached our billing guidelines.

Lastly, the parties' consent and settlement obligations are also detailed in Section VI. Specifically, the Insured may not agree to any settlement, stipulate to any judgment, incur any Defense Costs, admit any liability or assume any contractual obligation without QBE's prior written consent. Additionally, the Insured agrees not to do anything that would prejudice QBE's position or potential or actual rights of recovery and agrees to provide QBE with all information, assistance and cooperation which QBE may reasonably require. Please continue to keep us apprised of any developments in this matter including but not limited to the filing of any substantive pleadings and settlement discussions. I would also like to schedule an initial call to discuss the allegations in the Trustee Action and strategy.

### B.  **EPL COVERAGE PART**

Although QBE accepted coverage for the Trustee Action under the D&O Coverage Part, we note that coverage would be excluded under the EPL Coverage Part by the operation of Exclusion B. Specifically, Exclusion B provides that there is no coverage for Loss on account of that portion of a Claim:

> B.  OSHA, Workforce Notification and Labor Relations – based upon arising out of or resulting from any violation of the responsibilities, obligations or duties imposed by the Occupational Safety and Health Act, the Worker Adjustment and Retraining Notification Act, the National Labor Relations Act or any similar law.

As noted above, Trustee Action seeks recovery under the WARN Act and the Hawaii Dislocated Workers Act, which are considered "similar law[s]" under Exclusion B. As such, the Trustee Action falls within the ambit of Exclusion B and would be precluded from coverage.

### RESERVATION OF RIGHTS

Additional terms, conditions, and/or exclusions may also apply to bar or limit coverage for the matters. QBE continues to reserve all of its rights, remedies, and defenses. Nothing herein shall serve to waive rights, remedies, or defenses that QBE may now have or obtain in the future.

If you have any questions or concerns regarding this matter, please feel free to contact me by telephone at 646.453.2264 or by e-mail at Timothy.Vazquez@us.qbe.com.

Very truly yours,

*/s/ **Timothy Vazquez***
Timothy Vazquez
AVP, Claims Practice Leader-Directors and Officers

# EXHIBIT C

GALLAGHER KANE AMAI & REYES
Attorneys at Law, A Law Corporation

J. PATRICK GALLAGHER          3417-0
KAMALOLO K. KOANUI-KONG   10753-0
745 Fort Street, Suite 1550
Honolulu, Hawaii 96813
Tel. No. (808) 531-2023

Attorneys for Interpleader-Plaintiff
QBE SPECIALTY INSURANCE COMPANY

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| HAWAII ISLAND AIR, INC., | ) | Case No.: 17-01078 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| QBE SPECIALTY INSURANCE | ) | ADVERSARY NO. _____ |
| COMPANY, | ) | |
| | ) | COMPLAINT FOR |
| Interpleader-Plaintiff, | ) | INTERPLEADER; EXHIBIT "1"; |
| | ) | CERTIFICATE OF SERVICE |
| v. | ) | |
| | ) | |
| ELIZABETH KANE, AS CHAPTER 7 | ) | |
| TRUSTEE FOR HAWAII ISLAND | ) | |
| AIR, INC., DAVID UCHIYAMA, | ) | |
| CHRISTOPHER GOSSERT, PAUL | ) | |
| MARINELLI, JEFFREY AU, | ) | |
| CATHERINE YANNONE, PHILIP | ) | |
| WEGESCHEIDE, DAVID PFLIEGER, | ) | |
| AND PARTIES UNKNOWN, | ) | |
| | ) | |
| Interpleader-Defendants. | ) | |
| _____ | ) | |

EXHIBIT C

## **COMPLAINT FOR INTERPLEADER**

Interpleader-Plaintiff QBE Specialty Insurance Company ("QBE"), by and through its undersigned counsel, hereby submits this Complaint for Interpleader against Interpleader-Defendants Elizabeth Kane (the "**Trustee**"), duly appointed Chapter 7 trustee of Debtor Hawaii Island Air, Inc. ("**Island Air**");  David Uchiyama, Christopher Gossert, Paul Marinelli, Jeffrey Au, Catherine Yannone Philip Wegescheide, and David Pflieger (the "**Individual Defendants**"); and Parties Unknown (collectively, the "**Interpleader-Defendants**").

### **NATURE OF THE ACTION**

1.      This is an action for interpleader brought under Rule 7022 of the Federal Rules of Bankruptcy Procedure and Federal Rule of Civil Procedure 22.  As described more fully below, QBE issued Liability Policy No. QPLO192298 ("the Policy") issued to Island Air for the period from March 2, 2017 to March 2, 2018. As described more fully below, the Policy contains a Directors and Officers and Entity Liability ("**D&O**") Coverage Part and an Employment Practices Liability ("**EPL**") Coverage Part, both subject to an aggregate limit of liability of $5,000,000. The D&O Coverage Part contains an additional limit for Non-Indemnifiable Loss of $1,000,000.[1]   The Individual Defendants have sought insurance coverage in connection with multiple matters for which they maintain there is coverage under

---

[1]      Capitalized terms not defined herein are defined in the Policy.

2

the Policy.  In the face of conflicting and competing demands for payments of defense costs, future judgments, and future settlement demands, QBE brings this interpleader action for the Court to determine allocation of the Policy proceeds among those demands.  Subject to a complete reservation of rights, QBE has acknowledged coverage for certain amounts in connection with the matters submitted under the Policy.

## JURISDICTION AND VENUE

2.     This adversary proceeding arises in connection with and is related to the bankruptcy proceeding captioned *In re: Hawaii Island Air*, No. 17-01078 (the "**Bankruptcy Proceeding**"), which is currently pending in this Court pursuant to Chapter 7 of Title 11 of the United States Code.

3.     This Court has jurisdiction over the subject matter of this adversary proceeding under 28 U.S.C. §§ 157 and 1334. The Court also has jurisdiction over the subject matter of this adversary proceeding under 28 U.S.C. § 1332(a)(1) because QBE is of diverse citizenship from each of the Interpleader-Defendants; at least two of the Interpleader-Defendants are of diverse citizenship; and the amount in controversy exceeds $75,000.

4.     The Court has personal jurisdiction over each of the Interpleader-Defendants pursuant to rule 7004(f) of the Federal Rules of Bankruptcy Procedure.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

3

6.    To the extent the Debtor's estate's interests in the proceeds of the Policy is actual and apparent, this interpleader action is a core proceeding under 28 U.S.C. § 157(b)(1) that rises in the Bankruptcy Proceeding. This matter is otherwise related to the Bankruptcy Proceeding under 28 U.S.C. 157(c).

## **PARTIES**

7.    Interpleader-Plaintiff QBE is a corporation organized under the laws of the State of North Dakota, with its principal place of business in the State of New York.

8.    Interpleader-Defendant Elizabeth Kane, at times herein relevant, was and is the duly appointed Chapter 7 trustee in the Bankruptcy Proceeding commenced by Island Air currently pending in this Court.

9.    Interpleader Defendant David Uchiyama, is and at all relevant times was a resident of the State of Hawaii.

10.    Interpleader-Defendant Christopher Gossert is and at all relevant times was a resident of the State of Hawaii.

11.    Interpleader-Defendant Paul Marinelli is and at all relevant times was a resident of the State of California.

12.    Interpleader-Defendant Jeffrey Au is and at all relevant times was a resident of the State of Hawaii.

13.     Interpleader-Defendant Catherine Yannone is and at all relevant times was a resident of the State of Hawaii.

14.     Interpleader-Defendant Philip Wegescheide is and at all relevant times was a resident of the State of Illinois.

15.     Interpleader-Defendant David Pflieger, is and at all relevant times a resident of the State of Alaska.

## FACTS

16.     QBE issued the Policy to Island Air for the Policy Period from March 2, 2017 to March 2, 2018.  Attached hereto as Exhibit 1 and incorporated herein by reference is a true and correct copy of the Policy.

17.     Subject to all of the Policy's terms, conditions, and exclusions, the D&O Coverage Part of the Policy affords specified liability coverage to Island Air, its Subsidiaries, and its Executives and Employees up to a maximum aggregate limit of liability of $5,000,000.  Section IV of the D&O Coverage Part provides an additional $1,000,000 limit of liability available solely to an Executive or natural person General Partner for Non-Indemnifiable Loss covered under Insuring Clause A of the D&O Coverage Part.

18.     Subject to all of the Policy's terms, conditions, and exclusions, the EPL Coverage Part of the Policy affords specified liability coverage for Island Air, its

5

Subsidiaries, Executives, Employees, and Independent Contractors, up to a maximum aggregate limit of liability of $5,000,000.

19.     The total aggregate limit of liability of the Policy for all Coverage Parts is $5,000,000.

20.     The Policy provides that QBE "shall have the right and duty to defend any Claim covered by the Policy." *See* Policy, General Terms & Conditions, Section VI.A. The Policy further provides that "Defense Costs are part of, and not in addition to, the Limit of Liability of each Liability Coverage Part" and that "[a]ny duty to defend shall cease upon exhaustion of the applicable Limit of Liability." *Id.*, Section IV.C. and VI.A.

21.     The Individual Defendants have tendered multiple matters to QBE for which they contend they are entitled to coverage under the Policy.  The matters tendered to QBE to date include:

   a.  an Adversary Proceeding styled *Kane v. PaCap Aviation Finance, LLC*, Adv. Proc. No. 19-90027, filed by the Trustee in this Court against, *inter alia*, Jeffrey Au, Paul Marinelli, Catherine Yannone, and Christopher Gossert (the "**Trustee Proceeding**");

   b.  a Cross-Claim filed in the Trustee Proceeding styled *PaCap Aviation Finance, LLC, et al. v. Lawrence Investments, LLC, et al.*,

6

       naming as Cross-Defendants, *inter alia*, Paul Marinelli, Catherine Yannone and Christopher Gossert;

c. a Third-Party Complaint filed in the Trustee Proceeding, styled *PaCap Aviation Finance LLC*, *v. David Uchyama*, naming David Uchiama as a Third-Party Defendant; and

d. subpoenas issued to Philip Wegescheide and David Pflieger in connection with the Trustee Proceeding.

22.    QBE has agreed to provide Defense Costs coverage in connection with each of the matters listed in the previous paragraph, subject to a full reservation of all of the Policy's terms, conditions, and exclusions, and subject to the order of this Court that such payments are not in violation of the automatic stay.

23.    QBE reasonably anticipates that other parties currently unknown to it are likely to assert additional demands for the proceeds of the Policy.

## COUNT I - INTERPLEADER

24.    QBE repeats and realleges the allegations in the foregoing paragraphs of this Complaint for Interpleader as if fully set forth herein.

25.    There are multiple adverse claimants who are either demanding, or may demand, the proceeds of the Policy.

26.    QBE has a bona fide concern that demands for payment from the Policy will significantly exceed the coverage provided by the Policy. QBE is further

7

concerned that the various Insureds have divergent interests and will have conflicting strategies with respect to the use of the Policy's proceeds, particularly with respect to the use of those proceeds to fund settlements.  Thus, attempts by QBE to make payment in response to one demand may lead to vexatious and multiple litigation from others who seek to obtain payment from the Policy.  QBE therefore faces the risk that the Interpleader-Defendants may obtain inconsistent decisions exposing QBE to multiple liability in excess of the Policy's proceeds.  Moreover, the outcome of multiple litigation concerning the Policy would not be properly determinative of the manner in which the Policy's proceeds should be apportioned.

27.    QBE stands neutral as to the respective parties who may claim to be entitled to payment under the Policy and seeks discharge from all obligations under or relating to the Policy.

WHEREFORE, QBE respectfully requests that the Court:

a.    issue an Order requiring the Interpleader-Defendants to interplead in this case all of their demands for coverage under or with respect to the Policy;

b.    issue an order authorizing service by publication on the Parties Unknown;

c.    issue an Order granting QBE leave to deposit the full remaining limit of the Policy into the registry of the Court and providing that, upon making such a deposit, the coverage afforded by the Policy shall be deemed exhausted, and QBE

and its agents and employees shall be discharged from all liability to the Interpleader-Defendants under or in connection with the Policy;

d.    enter a preliminary and permanent injunction enjoining the Interpleader-Defendants from instituting or prosecuting any action in any court, state or federal, against QBE or its agents and employees asserting any claims, rights, causes of action or demands of whatever nature, whether known or unknown, foreseen or unforeseen, under or in connection with the Policy;

e.    enter judgment discharging QBE and its agents and employees from all further liability relating in any way to the Policy or any demands that may be made in connection with the Policy; and

f.    grant any and all further relief that this Court may deem equitable and just.

DATED:  Honolulu, Hawaii, March 8, 2022.

/s/ Kamalolo K. Koanui-Kong
J. PATRICK GALLAGHER
KAMALOLO K. KOANUI-KONG

Attorneys for Interpleader-Plaintiff
QBE SPECIALTY INSURANCE
COMPANY

9

# Exhibit "1"

# QBE® Specialty Insurance Company
A Stock Company



## *The Solution* for Management Liability

---

**Home Office:**

**Administrative Office:**

c/o CT Corporation
314 East Thayer Avenue
Bismarck, North Dakota  58501

Wall Street Plaza
88 Pine Street
New York, New York  10005
1-877-772-6771

QBE and the links logo are registered service marks of QBE Insurance Group Limited.

**This policy consists of:**      Declarations
One or more coverage parts.
A coverage part consists of:
— One or more coverage forms
— Applicable forms and endorsements

**QBE Specialty Insurance Company**

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Robert V. James
President

Jose Ramon Gonzalez, Jr.
Secretary

QBBP-3004 (09-14)



*The Solution*
**General Terms and Conditions Declarations**

**QBE Specialty Insurance Company**
Wall Street Plaza, 88 Pine Street, New York, New York 10005
Home Office:  c/o CT Corporation System, 314 East Thayer Avenue, Bismarck, North Dakota  58501

**THE LIABILITY COVERAGE PARTS PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.  THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS.  PLEASE READ THIS POLICY CAREFULLY.**

**Item 1**: Parent Company: Hawaii Island Air, Inc.

Mailing Address: 550 Paiea Street Suite 236
Honolulu, HI 96819

**Item 2**: Policy Period From: March 2, 2017 To: March 2, 2018
At 12:01 A.M. Standard Time at the mailing address stated in Item 1

**Item 3**: Limit of Liability $5,000,000 Combined Maximum Aggregate Limit of Liability for Liability Coverage Parts

**Item 4**: Coverage Parts: Directors & Officers and Entity Liability
Employment Practices Liability

**Item 5**: A. Notice to Insurer of a Claim or circumstance:          B. All Other Notices to Insurer:

QBE Specialty Insurance Company                    QBE Specialty Insurance Company
Attn: The Claims Manager                            Attn: Underwriting
Wall Street Plaza                                  Wall Street Plaza
88 Pine Street, 18th Floor                         88 Pine Street, 18th Floor
New York, New York 10005                           New York, New York 10005
Telephone: (877) 772-6771                          Telephone: (877) 772-6771
Email: professional.liability.claims@us.qbe.com    Email: MLPLadmin@us.qbe.com

**Item 6**: Extended Reporting Period
Premium:  100% of annual premium
Length:    One Year

**Item 7**: Premium: $42,487

In witness whereof, the Insurer has caused this Policy to be executed, but it shall not be valid unless also signed by a duly authorized representative of the Insurer.

**QBE**

*The Solution*
**General Terms and Conditions**

In consideration of the payment of the premium, the Insurer and the **Insureds** agree as follows:

**I.      PREAMBLE**

The insurance coverages offered in this Policy are part of a portfolio of insurance coverages, consisting of this General Terms and Conditions ("GTC") and any individual **Liability Coverage Parts** and **Non-Liability Coverage Parts** purchased, as stated in Item 4 of the Declarations of this GTC. The type of coverage provided by each of the **Liability Coverage Parts** and **Non-Liability Coverage Parts** are identified in each particular Coverage Part. Unless expressly stated to the contrary, the terms, conditions and limitations in this GTC apply to the entire Policy, whereas the terms, conditions and limitations of each individual Coverage Part only apply to that particular Coverage Part. In the event of a conflict between any terms, conditions or limitations of the GTC and any terms, conditions and limitations of any individual Coverage Part, the terms, conditions and limitations of the individual Coverage Part shall control.

**II.     EXCLUSIONS**

No coverage shall be provided under any **Liability Coverage Part** for **Loss** on account of that portion of a **Claim**:

A.  Bodily Injury/Property Damage - for bodily injury, mental anguish, emotional distress, humiliation, sickness, disease or death of any person or damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is damaged or destroyed;

B.  Conduct - based upon, arising out of or resulting from any deliberate fraud, deliberate criminal act or deliberate violation of any statute or regulation, or any illegal profit or remuneration, by an **Insured**, established by a final, non-appealable adjudication adverse to such **Insured** in any underlying action, and the Insurer shall not utilize a declaratory action or proceeding brought by or against the Insurer to establish such final, non-appealable adjudication;

C.  ERISA - for any violation of the responsibilities, obligations or duties imposed by **ERISA** or for any functions identified in **ERISA** Section 3(21)(A) as not being the functions of a fiduciary, and commonly referred to as "settlor" functions;

D.  Pending or Prior Proceedings - based upon, arising out of or resulting from an action, proceeding or **Claim** commenced against an **Insured** pending on or prior to the Pending or Prior Proceedings Date stated in the Declarations of each applicable **Liability Coverage Part**;

E.  Pollution - based upon, arising out of or resulting from any:

1.  discharge, emission, release, dispersal or escape of any **Pollutants** or any threat thereof;

2.  treatment, removal or disposal of any **Pollutants**; or

3.  regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**,

including any **Claim** for financial loss to a **Company**, its securityholders or its creditors based upon, arising from or in consequence of any matter described in paragraphs 1, 2, or 3 above;

F.  Prior Notice - based upon, arising out of or resulting from any claim reported, or any circumstance reported and accepted, under the insurance policy (including any policies of which such policy is a renewal policy) replaced by this Policy; and

G.  Wage and Hour - based upon, arising out of or resulting from any violation of the responsibilities, obligations or duties imposed by any law governing wage, hour or payroll, including the Fair Labor Standards Act;

Exclusions D and F above shall not apply where this Policy is a renewal of a policy issued by the Insurer to the **Parent Company**.

With respect to all Policy exclusions, no conduct or knowledge of any **Insured** shall be imputed to any other **Insured Person**, and solely with respect to Exclusion B, only the conduct or knowledge of any past, present or future chief executive officer or chief financial officer of a **Company** shall be imputed to such **Company** and its **Subsidiaries**.

**III.    RETENTION OR DEDUCTIBLE**

A.  Any Retention or Deductible applicable to any Coverage Part shall apply as set forth in each Coverage Part and in the amount(s) stated in the Declarations of each Coverage Part. If different parts of a single **Claim** are

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 1   Filed   03/08/22   Page 14 of 42

subject to different Retentions or Deductibles, then the total amount of **Loss** applied to the applicable Retentions or Deductibles shall not exceed the largest applicable Retention or Deductible.

    B.   No Retention shall apply to any **Loss** for which an **Insured Person** is not indemnified by a **Company** because of such **Company's Financial Impairment**.

## IV.   LIMIT OF LIABILITY

    A.   The Combined Maximum Aggregate Limit of Liability, stated in Item 3 of the Declarations of this GTC, represents the maximum amount payable under all **Liability Coverage Parts** during the **Policy Period** for all **Liability Coverage Parts** combined.

    B.   The Limit of Liability, stated in Item 2 of the Declarations of each **Liability Coverage Part**, represents the maximum amount payable under each **Liability Coverage Part** during the **Policy Period** for any one **Claim** and in the aggregate as set forth in each such **Liability Coverage Part**.

    C.   **Defense Costs** are part of, and not in addition to, the Limit of Liability of each **Liability Coverage Part**.

    D.   The remaining portion of each of the limits of liability described above shall be the limits of liability available during any Extended Reporting Period applicable to any Coverage Part.

## V.   REPORTING

    A.   Notice of any **Claim** under any **Liability Coverage Part** is considered timely when reported to the Insurer as soon as practicable after the **Parent Company's** chief executive officer or chief financial officer first becomes aware of such **Claim**. The Insurer shall not assert that notice of a **Claim** was untimely unless the Insurer is materially prejudiced by the untimely notice.  However, in no event shall any notice be provided later than:

        1.   if the applicable **Liability Coverage Part** expires (or is otherwise terminated) without being renewed with the Insurer, 60 days after the effective date of such expiration or termination; or

        2.   the expiration date of the Extended Reporting Period, if applicable.

    B.   Notice requirements involving any **Non-Liability Coverage Part** shall be in accordance with the reporting requirements set forth in such **Non-Liability Coverage Part**.

    C.   Notice of any circumstance which could give rise to a **Claim** under any **Liability Coverage Part** is optional.  If an **Insured** elects to report any circumstance which could give rise to a **Claim**:

        1.   such notice shall include information regarding the nature of any **Wrongful Acts** or alleged or potential damages and the names of any actual or potential defendants; and

        2.   any **Claim** that may subsequently arise out of a reported circumstance shall be deemed to have been first made during the **Policy Period** in which such circumstance was first reported.

## VI.   DEFENSE AND SETTLEMENT

    A.   With respect to any **Claim** under any **Liability Coverage Part**, the Insurer shall have the right and duty to defend any **Claim**, unless otherwise specifically stated in a particular **Liability Coverage Part**.  The Insurer shall have such right and duty to defend even if any of the allegations in such **Claim** are groundless, false or fraudulent.  Any such duty to defend shall cease upon exhaustion of the applicable Limit of Liability.

    B.   With respect to any **Claim** under any **Liability Coverage Part**:

        1.   the **Insured** shall:

            (a)   not agree to any settlement, stipulate to any judgment, incur any **Defense Costs**, admit any liability or assume any contractual obligation, without the Insurer's prior written consent, provided that, unless otherwise stated in a particular **Liability Coverage Part**, the **Insured** may settle any **Claim**, without the Insurer's prior written consent, where the amount of such settlement, including **Defense Costs**, does not exceed the applicable Retention or Deductible;

            (b)   not do anything that could prejudice the Insurer's position or its potential or actual rights of recovery; and

            (c)   agree to provide the Insurer with all information, assistance and cooperation which the Insurer may reasonably require,

        provided that the failure of any **Insured** to comply with any of the requirements in paragraphs (a) - (c) above, shall not impair the rights of any **Insured Person** under this Policy; and

        2.   the Insurer:

    (a) may make any investigation it deems reasonably necessary and may, with the consent of the **Insureds**, make any settlement of any **Claim** it deems appropriate; and

    (b) shall not be liable for any such settlement, stipulation, incurred **Defense Costs**, admission or assumed obligation to which it has not given its prior written consent, and the Insurer shall not unreasonably withhold such consent.

## VII.  ALLOCATION

If in any **Claim**, the **Insureds** who are afforded coverage for a **Claim** incur **Loss** that is covered by this Policy and loss that is not covered by this Policy because such **Claim** includes both covered and uncovered matters, 100% of **Defense Costs** incurred by such **Insured** shall be covered **Loss**, and all loss other than **Defense Costs** shall be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

## VIII.  TREATMENT OF RELATED CLAIMS

All **Related Claims** shall be deemed a single **Claim** first made during the policy period in which the earliest of such **Related Claims** was either first made or deemed to have been first made in accordance with Section V. REPORTING above.

## IX.  SUBROGATION

A.  In the event of any payment under this Policy, the Insurer shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery, and the **Insureds** shall take all reasonable actions to secure and preserve the Insurer's subrogation rights.

B.  In no event shall the Insurer exercise any subrogation right against an **Insured Person**.  In any subrogation action against a **Company**, it is agreed that each **Company** agrees to fulfill any indemnification obligations to the fullest extent permitted by law and any contract or agreement providing an indemnification obligation exceeding any such law.

C.  If the Insurer recovers, either through subrogation or recoupment, any portion of an amount paid under this Policy, the Insurer shall reinstate the applicable limit of liability with any amounts recovered up to such amount paid, less any costs incurred by the Insurer in its recovery efforts.

## X.  EXTENDED REPORTING PERIOD

With respect to all **Liability Coverage Parts**:

A.  If this Policy does not renew, or terminates other than for non-payment of premium, the **Insureds** shall have the right to purchase an ERP for the premium and time period stated in Item 6 of the Declarations. In the event of the non-renewal or termination of one or more **Liability Coverage Parts** of this Policy, the **Insureds** may purchase an ERP solely as respects the **Liability Coverage Part(s)** that has been non-renewed or terminated.

B.  The right to an ERP shall lapse unless written notice of election to purchase such ERP, together with payment of the specified premium, is received by the Insurer within 30 days after the effective date of non-renewal or termination of the Policy. In the event the **Parent Company** elects not to purchase an ERP and an individual **Insured** or group of **Insureds** elects to purchase such ERP, such ERP shall only apply to **Claims** against such **Insured** or group of **Insureds**.

C.  The premium for the ERP shall be deemed fully earned at the inception of the ERP.

D.  Any ERP purchased shall become part of the **Policy Period**, extending such **Policy Period** to the expiration of the time period stated in Item 6 of the Declarations, but only with respect to **Loss** on account of a **Claim** for a **Wrongful Act** taking place before the effective date of non-renewal or termination.

## XI.  CHANGES IN EXPOSURE

A.  New Companies and Old Companies

This Policy's treatment of **Subsidiaries** shall be as stated below and as supplemented by any individual Coverage Part.

  Any **Insured** of a **Subsidiary**:

1.  acquired before or during the **Policy Period** is eligible for coverage under any:

    (a) **Liability Coverage Part**, but only for **Loss** on account of a **Claim** for a **Wrongful Act** which occurs after the date of such acquisition; and

    (b)  **Non-Liability Coverage Part**, but only after the effective date of such acquisition, and with respect to the Crime Coverage Part, subject to Section VIII. Other Insurance of such Coverage Part.

2.  ceasing to be a **Subsidiary** before or during the **Policy Period** is eligible for coverage under any:

    (a)  **Liability Coverage Part**, but only for **Loss** on account of a **Claim** for a **Wrongful Act** which occurs while such entity was a **Subsidiary**; and

    (b)  **Non-Liability Coverage Part**, as provided in such **Non-Liability Coverage Part**, but such **Subsidiary** and its **Insureds** shall cease to be **Insureds** under such **Non-Liability Coverage Part** as of the date of such cessation.

B.  Acquisition of the **Parent Company**

In the event of a **Change in Control** of the **Parent Company** during the **Policy Period**:

1.  any **Liability Coverage Part** shall remain in force until the expiration of the **Policy Period**, but only for any **Claim** for a **Wrongful Act** which occurs prior to such acquisition;

2.  the entire premium for this Policy shall be deemed fully earned as of the effective date of such **Change in Control**; and

3.  the **Parent Company** shall be entitled to receive a quote for an extension of the **Liability Coverage Parts** ("Run-Off Coverage") solely for **Claims** for **Wrongful Acts** which occurred prior to a **Change in Control**. Coverage offered pursuant to such quote shall be subject to additional or different terms and conditions and payment of additional premium. Any Run-Off Coverage purchased shall replace any Extended Reporting Period provided under Section X. EXTENDED REPORTING PERIOD.

## XII.  NOTICE

A.  All notices to the Insurer under this Policy of any event, loss, **Claim** or circumstances which could give rise to a **Claim** shall be given in writing to the address listed in Item 5A of the Declarations, and any such notice shall be deemed notice under the Policy in its entirety.

B.  All other notices to the Insurer under this Policy shall be given in writing to the address listed in Item 5B of the Declarations.

C.  Any notice under this Policy shall be effective on the date of mailing or receipt by the Insurer, whichever is earlier.

## XIII.  TERMINATION OF POLICY

This Policy shall terminate at the earliest of:

A.  20 days after receipt by the **Parent Company** of written notice from the Insurer of termination for non-payment of premium;

B.  expiration of the **Policy Period**; or

C.  surrender of the Policy to the Insurer by the **Parent Company** or notice to the Insurer by the **Parent Company** stating when such cancellation will take effect, and in either case any returned premium shall be computed on a pro rata basis.

## XIV.  REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGE

A.  In issuing this Policy, the Insurer has relied upon the information and representations in the **Application** as being true and accurate, and the **Application** is the basis for, and considered incorporated into, this Policy.

B.  The **Application** shall be construed as a separate request for coverage by each **Insured**, without any knowledge possessed by an **Insured** being imputed to any other **Insured Person**.

C.  If the **Application** contains any misrepresentation made with the actual intent to deceive or which, for reasons other than simple negligence or oversight, materially affect the Insurer's acceptance of the risk or the hazard assumed, the Insurer shall not be liable for **Loss** on account of any **Claim** based upon, arising out of or resulting from either of such misrepresentations:

1.  with respect to any **Insured Person** who had actual knowledge of any misrepresentation described in paragraph C above, and the Insurer can demonstrate that with such actual knowledge, such **Insured Person** reasonably believed that a **Claim** would arise from such misrepresentation;

2.  with respect to any **Company**, if the **Insured Person** described in paragraph 1 above is a past or present chief executive officer or chief financial officer of the **Parent Company**.

D. The Insurer shall not be entitled under any circumstances to void or rescind this Policy with respect to any **Insured**.

## XV. EFFECT OF BANKRUPTCY

Bankruptcy or insolvency of any **Insured** shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this Policy.

## XVI. WORLDWIDE TERRITORY

This Policy shall apply anywhere in the world, and any reference to laws, however described, shall include all U.S. federal, state and local statutory laws, all amendments to and rules and regulations promulgated under any such laws, common law, and any equivalent body of law anywhere in the world, unless specifically stated to the contrary.

## XVII. ROLE OF THE PARENT COMPANY

The **Parent Company** shall act on behalf of each **Insured** with respect to paying premiums, receiving any return premiums, agreeing to endorsements to this Policy and the giving or receiving of any notice provided for in this Policy (except notices of a **Claim** or circumstance which could give rise to a **Claim** or notice to apply for an ERP).

## XVIII. VALUATION AND FOREIGN CURRENCY

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If any element of **Loss** under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the exchange rate published in The Wall Street Journal on the date the element of **Loss** is due.

## XIX. ALTERATION, ASSIGNMENT AND HEADINGS

A. Any change in or modification of this Policy or assignment of interest under this Policy must be agreed to in writing by the Insurer.

B. The descriptions and headings and sub-headings of this Policy are solely for convenience, and form no part of the terms, conditions and limitations of coverage.

## XX. ESTATES, HEIRS, LEGAL REPRESENTATIVES, ASSIGNS, SPOUSES AND DOMESTIC PARTNERS

With respect to any **Liability Coverage Part**, **Insured Person** shall include:

A. the estate, heirs, legal representatives or assigns of any **Executive**, if such **Executive** is deceased, legally incompetent, insolvent or bankrupt; and

B. the lawful spouse or domestic partner of any **Executive** solely by reason of such spouse's or domestic partner's: 1. status as such; or 2. ownership interest in property which a claimant seeks as recovery for an alleged **Wrongful Act** of such **Executive**,

provided that no coverage shall apply with respect to loss arising from an act, error or omission by any estate, heir, legal representative, assign, spouse or domestic partner of an **Insured Person**.

## XXI. TRADE SANCTIONS

This insurance coverage does not apply to the extent that trade or economic sanctions of any country prohibit the insurer or any member of the insurer's group from providing insurance coverage.

## XXII. GLOSSARY

The following terms shall have the meaning ascribed to such terms in each applicable Coverage Part: **Claim**, **Defense Costs**, **Insured**, **Insured Person**, **Loss** and **Wrongful Act**.

A. **Application** means where provided to the Insurer, the application and any accompanying documentation submitted to the Insurer for this Policy or any documentation submitted to the Insurer in connection with the underwriting of this Policy.

B. **Change in Control** means:

1. the **Parent Company's** merger with, or acquisition by, another entity or the acquisition of all or substantially all of its assets by another entity, such that the **Parent Company** is not the surviving entity; or

2. when a person or entity or group of persons or entities acting in concert, acquires securities or voting rights which result in ownership or voting control by such person(s) or entity(ies) of more than 50% of the

outstanding securities or voting rights representing the present right to vote for or appoint directors or **Managers** of the **Parent Company**.

C. **Company** means the **Parent Company** and any **Subsidiary**, any foundation, political action committee or charitable trust controlled or sponsored by the **Parent Company** or any **Subsidiary**, and the **Parent Company** or any **Subsidiary** in its capacity as a debtor in possession under United States bankruptcy law.

D. **Employee** means any natural person whose labor or service was, is or will be engaged and directed by a **Company**, including a part-time, seasonal, leased and temporary employee, intern or volunteer. **Employee** does not include an independent contractor.

E. **ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")).

F. **Executive** means any natural person who was, now is or shall become:

   1. a duly elected or appointed director, officer, **Manager**, trustee, regent, governor, risk manager, comptroller or in-house general counsel of any **Company** organized in the United States of America, or in a functionally equivalent or comparable role to any of the foregoing; or

   2. a holder of a functionally equivalent position or comparable role to those described in paragraph 1 above in a **Company** that is organized in a jurisdiction other than the United States of America, including any position on an advisory board or committee.

G. **Extradition** means any formal process by which an **Insured** located in any country is or is sought to be surrendered to any other country for trial or otherwise to answer any criminal accusation, including the execution of an arrest warrant where such execution is an element of such process.

H. **Financial Impairment** means the status of a **Company** resulting from: 1. the appointment by a state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate such **Company**; or 2. such **Company** becoming a debtor in possession under United States bankruptcy law.

I. **Liability Coverage Part** means any Coverage Part identified in this Policy as a "Liability Coverage Part" within the heading to such Coverage Part or providing third party liability coverage in such Coverage Part.

J. **Manager** means any natural person, who was, now is, or shall become, a manager, member of the Board of Managers or equivalent executive of a **Company** that is a limited liability company.

K. **Non-Liability Coverage Part** means any Coverage Part or insuring clause in this Policy that does not provide any third party liability coverage.

L. **Parent Company** means the entity named in Item 1 of the Declarations.

M. **Policy Period** means the period of time stated in Item 2 of the Declarations of this GTC (subject to any termination in accordance with Section XIII. TERMINATION OF POLICY) and the ERP, if applicable.

N. **Pollutants** means any solid, liquid, gaseous or thermal irritants or contaminants, including smoke, soot, vapor, fumes, acids, chemicals, alkalis, asbestos, asbestos products or waste. Waste includes materials to be reconditioned, recycled or reclaimed.

O. **Related Claims** means all **Claims** based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances or **Wrongful Acts**.

P. **Subsidiary** means:

   1. any entity while more than 50% of the outstanding securities or other equity ownership, representing the present right to vote for election of, or to appoint, directors, **Managers**, or the foreign equivalent of any such directors or **Managers** of such entity, are owned or controlled by the **Parent Company** directly or indirectly through one or more **Subsidiaries**; or

   2. any entity while the **Parent Company** has the right, pursuant to either written contract or the bylaws, charter, operating agreement or similar documents of a **Company**, to elect or appoint a majority of the Board of Directors of a corporation or **Managers**.

QBBP-3000 (05-14)



***The Solution*** for Directors & Officers and Entity Liability
Coverage Part Declarations

**QBE Specialty Insurance Company**
Wall Street Plaza, 88 Pine Street, New York, New York 10005
Home Office:  c/o CT Corporation System, 314 East Thayer Avenue, Bismarck, North Dakota  58501

**THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.  THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

**Item 1**:    Parent Company:    Hawaii Island Air, Inc.

**Item 2**:    A.  Limit of Liability

         $5,000,000 per Claim
         $5,000,000 in the aggregate

      B.  Securityholder Derivative Demand Investigation Limit: $250,000

**Item 3**:    Additional Limit for Non-Indemnifiable Loss: $1,000,000

**Item 4**:    Retention:

      A.   Insuring Clause B: $50,000 per Claim
      B.   Insuring Clause C: $50,000 per Claim

**Item 5**:    Pending or Prior Proceedings Date: March 2, 2016

QBE and the links logo are registered service marks of QBE Insurance Group Limited.



*The Solution* for Private Company
*Directors & Officers and Entity Liability*
*Coverage Part*

In consideration of the payment of the premium and subject to the General Terms and Conditions, the Insurer and the **Insureds** agree as follows:

## I.   INSURING CLAUSE

A.   Side A - Non-Indemnifiable Loss Coverage for Insured Persons

The Insurer shall pay, on behalf of an **Insured Person**, **Loss** on account of a **Claim** first made during the **Policy Period**, to the extent that such **Loss** has not been paid or indemnified by any **Company**.

B.   Side B - Corporate Reimbursement Coverage for Indemnification of Insured Persons

The Insurer shall pay, on behalf of a **Company**, **Loss** on account of a **Claim** first made during the **Policy Period** to the extent the **Company** pays or indemnifies an **Insured Person** for such **Loss**.

C.   Side C - Entity Coverages

The Insurer shall pay, on behalf of a **Company**, **Loss** on account of a **Claim**, and **Defense Costs** on account of a **Securityholder Derivative Demand Investigation**, first made during the **Policy Period**.

## II.   EXCLUSIONS

In addition to the Exclusions set forth in Section II. EXCLUSIONS of the GTC, no coverage shall be provided under this Coverage Part for **Loss** on account of that portion of a **Claim**:

A.   Insured v. Insured - brought by, or on behalf of:

1.   a **Company** against another **Company**;

2.   a **Company** or **Outside Entity** against an **Insured Person**;

3.   an **Insured Person**, in any capacity, against an **Insured**,

provided that:

(a)   Exclusion A2 above shall not apply to a **Claim** brought: (i) outside the United States of America, Canada or their territories or possessions; (ii) while the **Parent Company** or **Outside Entity** is in **Financial Impairment**; (iii) as a securityholder derivative action; or (iv) while an **Insured Person** is no longer serving in his capacity as such; and

(b)   Exclusion A3 above shall not apply to any **Claim**: (i) for employment-related **Wrongful Acts** against an **Insured Person**; (ii) for contribution or indemnity; (iii) brought by an **Insured Person** who has ceased serving in his capacity as such for at least 1 year; or (iv) brought by, on behalf of or with the participation of a whistleblower;

B.   Publicly Traded Securities - based upon, arising out of or resulting from any public offering of, or purchase or sale of, equity or debt securities issued by any **Company** or **Outside Entity**, provided that this Exclusion B shall not apply to any **Claim** based upon, arising out of or resulting from the **Company's**: 1. securities that are not required to be registered; 2. failure to undertake or complete an initial public offering or sale of its securities; or 3. preparation for any public offering, including any "road show" presentation to potential investors or other similar presentation;

Exclusions C - I below shall only apply to Insuring Clause C, Side C - Entity Coverages:

C.   Antitrust - based upon, arising out of or resulting from anti-trust, price fixing or discrimination, restraint of trade, monopolization, unfair trade practices, predatory pricing or false advertising;

D.   Contract - based upon, arising out of or resulting from any liability in connection with any contract or agreement to which a **Company** is a party, provided that this Exclusion D shall not apply to the extent that such **Company** would have been liable in the absence of such contract or agreement;

E.   Employment Practices - based upon, arising out of or resulting from any employment-related **Wrongful Act**;

F.   Intellectual Property - based upon, arising out of or resulting from any infringement of copyright, patent, trademark, trade dress, trade name or service mark or any misappropriation of ideas, trade secrets or other intellectual property rights;

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 1   Filed  03/08/22   Page 21 of 42

G. Personal Injury - based upon, arising out of or resulting from any defamation (including libel and slander), disparagement, wrongful entry or eviction, invasion of privacy, false arrest, false imprisonment, assault, battery, loss of consortium, malicious use or abuse of process or malicious prosecution.

H. Professional Services - based upon, arising out of or resulting from the performance of or failure to perform **Professional Services**; and

I. Third Party Discrimination or Harassment - based upon, arising out of or resulting from any discrimination against, or harassment of, any third party.

With respect to this Coverage Part, the following exceptions shall apply to Section II. EXCLUSIONS of the GTC:

1. Exclusion A. Bodily Injury/Property Damage shall not apply to any **Claim** under Insuring Clause A; and

2. Exclusion E. Pollution shall not apply to any **Claim**: (a) under Insuring Clause A; or (b) brought by a securityholder of a **Company** against an **Insured Person**.

**III.   RETENTION**

No retention shall apply to any **Claim** under Insuring Clause A or to any **Securityholder Derivative Demand Investigation**.

**IV.   LIMIT OF LIABILITY**

A. The Securityholder Derivative Demand Investigation Limit stated in Item 2B of the Declarations of this Coverage Part represents the maximum amount payable under this Coverage Part during the **Policy Period** for **Defense Costs** on account of all **Securityholder Derivative Demand Investigations**, which amount shall be part of, and not in addition to, the Limit of Liability stated in Item 2A of such Declarations.

B. The Additional Limit for Non-Indemnifiable Loss stated in Item 3 of the Declarations of this Coverage Part represents an additional limit of liability available solely to an **Executive** or natural person **General Partner** for **Loss** on account of a **Claim** covered under Insuring Clause A. This additional limit of liability shall be in addition to and not part of, and excess of any other insurance written specifically as excess of, the Limit of Liability stated in Item 2A of such Declarations.

**V.   ADVANCEMENT**

A. If a **Company** fails to respond to an **Insured Person's** request for indemnification within 60 days of the **Insured Person's** request to the **Company** for such indemnification, then upon the reporting of the **Claim**, the Insurer shall advance **Defense Costs** and any other incurred **Loss** until such time that the **Company** accepts the **Insured's** request for indemnification or the Limit of Liability set forth in Item 2A of the Declarations of this Coverage Part has been exhausted, whichever occurs first. In any other **Claim**, the Insurer shall advance **Defense Costs** on a current basis, but no later than 60 days after receipt of the legal bills and any supporting documentation.

B. If it is determined by a final adjudication that any advanced **Defense Costs** are not covered under this Coverage Part, the **Insureds**, severally according to their respective interests, shall repay such uncovered **Defense Costs** to the Insurer, provided that nothing in this paragraph B shall limit the final non-appealable adjudication requirement in Exclusion B. Conduct of Section II. EXCLUSIONS of the GTC.   If the Insurer recovers any portion of an amount paid under this Coverage Part, the Insurer shall reinstate the applicable limit of liability with any amounts recovered up to such amount paid, less any costs incurred by the Insurer in its recovery efforts.

**VI.   REPORTING**

Notice of a **Securityholder Derivative Demand Investigation** is optional, but only **Loss** incurred after such **Securityholder Derivative Demand Investigation** is reported is eligible for coverage under this Coverage Part. If an **Insured** elects to report any **Securityholder Derivative Demand Investigation**, any **Claim** that may subsequently arise out of any reported **Securityholder Derivative Demand Investigation** shall be deemed to have been first made during the **Policy Period** in which such investigation was first reported.

**VII.   OTHER INSURANCE**

A. With the exception of insurance written specifically as excess of the Limit of Liability of this Coverage Part, this Coverage Part shall be excess of and shall not contribute with any valid and collectible insurance providing coverage for **Loss** for which this Coverage Part also provides coverage, provided that any payment by an **Insured** of a retention or deductible under any such other insurance shall reduce the applicable Retention under this Coverage Part by the amount of such payment which would otherwise have been **Loss** under this Coverage Part.

B.  This Coverage Part shall also be excess of and shall not contribute with any indemnity provided, and any valid and collectible insurance maintained, by an **Outside Entity** for an **Insured Person** serving in his capacity as such for the **Outside Entity**.

C.  Any personal umbrella excess liability insurance, independent directors liability insurance or any other similar personal liability insurance available to an **Insured** shall be specifically excess of this Coverage Part.

**VIII.  PRIORITY OF PAYMENTS**

A.  In the event that **Loss** under Insuring Clause A and any other **Loss** are concurrently due under this Coverage Part, then the **Loss** under Insuring Clause A shall be paid first.  In all other instances, the Insurer may pay **Loss** as it becomes due under this Coverage Part without regard to the potential for other future payment obligations under this Coverage Part.

B.  The coverage provided by this Coverage Part is intended first and foremost for the benefit and protection of **Insured Persons**.  In the event a liquidation or reorganization proceeding is commenced by or against a **Company** pursuant to United States bankruptcy law:

1.  the **Insureds** hereby agree not to oppose or object to any efforts by the Insurer, the **Company** or an **Insured** to obtain relief from any stay or injunction issued in such proceeding; and

2.  the Insurer shall first pay **Loss** on account of a **Claim** for a **Wrongful Act** occurring prior to the date such liquidation or reorganization proceeding commences, and then pay **Loss** in connection with a **Claim** for a **Wrongful Act** occurring after the date such liquidation or reorganization proceeding commences.

**IX.  SECURITIES OFFERING**

If during the **Policy Period**, a **Company** intends a public offering of securities under the Securities Act of 1933 and gives written notice to the Insurer within 30 days of the effective date of the Registration Statement for such offering, together with any additional information requested by the Insurer, the Insurer shall provide the **Company** with a quote for coverage with respect to such offering.  Coverage offered pursuant to this quote shall include coverage for **Wrongful Acts** occurring in the course of any "road show" presentation to potential investors or other similar presentation and shall be subject to additional or different terms and conditions and payment of additional premium.

**X.  GLOSSARY**

A.  **Claim** means:

1.  with respect to Insuring Clauses A and B, any investigation, evidenced by any written document, including a subpoena, target letter or search warrant, against an **Insured Person** for a **Wrongful Act**; and

2.  with respect to Insuring Clauses A, B and C:

(a)  a written demand for monetary or non-monetary (including injunctive) relief, including demands for arbitration, mediation, waiving or tolling of a statute of limitations or **Extradition**;

(b)  a civil or criminal proceeding, evidenced by: (i) the service of a complaint or similar pleading in a civil proceeding; or (ii) the filing of an indictment, information or similar document or an arrest in a criminal proceeding; and

(c)  a formal administrative or regulatory proceeding, evidenced by the filing of a formal notice of charges or the entry of a formal order of investigation,

against an **Insured** for a **Wrongful Act**, including any appeal therefrom.

The time when a **Claim** shall be deemed first made for the purposes of this Coverage Part shall be the date on which the **Claim** is first made against, served upon or received by the **Insured** or the applicable notice or order is filed or entered.

B.  **Defense Costs** means that part of **Loss** consisting of:

1.  reasonable costs, charges, fees (including, attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of any **Insured**) incurred in: (a) investigating, defending, opposing or appealing any **Claim** or (b) any **Securityholder Derivative Demand Investigation**; and

2.  the premium for appeal, attachment or similar bonds (but the Insurer shall be under no obligation to furnish any bond).

C.  **Insured** means any **Company** or **Insured Person**.

D.  **Insured Person** means:

1.  an **Executive**;

2. an **Employee**, but only with respect to a **Claim**: (a) brought by a securityholder of a **Company** in his capacity as such; or (b) that is also brought and maintained against an **Insured Person** included in paragraph 1 above; or

3. a holder of an equivalent position to those included in paragraph 1 above in an **Outside Entity**, while serving at the specific request or direction of the **Company**.

E. **Loss** means the amount that an **Insured** becomes legally obligated to pay on account of any **Claim** including:

1. compensatory damages;

2. judgments and settlements, including a judgment or settlement awarding plaintiffs' attorneys fees, provided that with respect to any settlement including plaintiffs' attorneys fees, that portion of the settlement can be demonstrated to be reasonable, taking into consideration the nature of legal action, time and expense involved in prosecuting such action, and the likelihood of a court awarding a similar amount as part of a judgment;

3. pre and post-judgment interest;

4. **Defense Costs**;

5. solely with respect to Insuring Clause A, taxes imposed by law upon an **Insured Person** in his capacity as such in connection with any bankruptcy, receivership, conservatorship or liquidation of a **Company**, to the extent such taxes are insurable by law;  and

6. punitive, exemplary or multiplied damages, fines or penalties, if and to the extent that any such damages, fines or penalties are insurable under the law of the jurisdiction most favorable to the insurability of such damages, fines or penalties.

In determining the most favorable jurisdiction as set forth in paragraph 6 above, due consideration shall be given to the jurisdiction with a substantial relationship to the relevant **Insureds** or to the **Claim** giving rise to such damages, fines or penalties, and the Insurer shall not challenge any opinion of independent legal counsel (mutually agreed to by the Insurer and the **Insured**) that such damages, fines or penalties are insurable under applicable law.

**Loss** does not include any portion of such amount that constitutes any:

(a) amount not insurable under the law pursuant to which this Coverage Part is construed;

(b) cost incurred to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c) amount that represents or is substantially equivalent to an increase in consideration paid (or proposed to be paid) by a **Company** in connection with its purchase of any securities and assets;

(d) tax, other than taxes described in paragraph 5 above; or

(e) cost incurred to clean up, remove, contain, treat, detoxify or neutralize **Pollutants**.

F. **Outside Entity** means:

1. any non-profit entity, community chest, fund or foundation; or

2. any other entity specifically added as an **Outside Entity** by endorsement to this Coverage Part,

that is not a **Company**.

G. **Professional Services** means services which are performed for others for a fee.

H. **Securityholder Derivative Demand Investigation** means an investigation by a **Company** to determine whether it is in the best interest of such **Company** to prosecute the claims alleged in a securityholder derivative demand or lawsuit. Where a **Securityholder Derivative Demand Investigation** is initiated because of a lawsuit rather than a demand, any coverage provided for **Defense Costs** on account of such **Securityholder Derivative Demand Investigation** shall in no way limit the coverage otherwise afforded under this Coverage Part to an **Insured** for **Loss** on account of a **Claim**.

J. **Wrongful Act** means:

1. any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by: (a) an **Insured Person** in his capacity as such; or (b) by a **Company**; or

2. any other matter claimed against an **Insured Person** solely by reason of serving in his capacity as such.

POLICY NUMBER: QPL0139298

QBBP-3001 (05-14)



*The Solution* for Employment Practices Liability
Coverage Part Declarations

**QBE Specialty Insurance Company**
Wall Street Plaza, 88 Pine Street, New York, New York 10005
Home Office:  c/o CT Corporation System, 314 East Thayer Avenue, Bismarck, North Dakota  58501

**THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.  THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

**Item 1**:   Parent Company:      Hawaii Island Air, Inc.

**Item 2**:   Limit of Liability

$5,000,000 per Claim
$5,000,000 in the aggregate

**Item 3**:   Retention: $50,000 per Claim

**Item 4**:   Pending or Prior Proceedings Date: March 2, 2016

QBE and the links logo are registered service marks of QBE Insurance Group Limited.



*The Solution* for Employment Practices Liability
Coverage Part

In consideration of the payment of the premium and subject to the General Terms and Conditions, the Insurer and the **Insureds** agree as follows:

**I.   INSURING CLAUSE**

The Insurer shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made during the **Policy Period**.

**II.   EXCLUSIONS**

In addition to the Exclusions set forth in Section II. EXCLUSIONS of the GTC, no coverage shall be provided under this Coverage Part for **Loss** on account of that portion of a **Claim**:

A.  Breach of Written Employment Contract - based upon, arising out of or resulting from any breach of any written employment contract or agreement, provided that this Exclusion A shall not apply to: 1. **Loss** to the extent an **Insured** would have been liable for such **Loss** in the absence of such written employment contract or agreement; or 2. **Defense Costs**;

B.  OSHA, Workforce Notification and Labor Relations - based upon, arising out of or resulting from any violation of the responsibilities, obligations or duties imposed by the Occupational Safety and Health Act, the Worker Adjustment and Retraining Notification Act, the National Labor Relations Act or any similar law; and

C.  Workers Compensation, Disability Benefits, Social Security, Unemployment - based upon, arising out of or resulting from any failure to comply with any obligation under any workers compensation, disability benefits, social security or unemployment insurance law;

Exclusions A - C above shall not apply to any **Claim** for **Retaliation**.

With respect to this Coverage Part, the following exceptions shall apply to Section II. EXCLUSIONS of the GTC:

1.  Exclusion A. Bodily Injury/Property Damage shall not apply to **Loss** for any mental anguish, emotional distress or humiliation when alleged as part of a **Claim** otherwise covered under this Coverage Part; and

2.  Exclusion C. ERISA and E. Pollution shall not apply to any **Claim** for **Retaliation**.

**III.   OTHER INSURANCE**

A.  With respect to any **Claim** for an **Employment Practices Wrongful Act**, other than that portion of a **Claim** made against a leased or temporary employee or **Independent Contractor**, this Coverage Part shall be primary insurance.

B.  With respect to:

1.  that portion of any **Claim** made against any leased or temporary employee or **Independent Contractor**; or

2.  any **Claim** for a **Third Party Wrongful Act**, where **Loss** is covered under this Coverage Part and other valid and collective insurance,

this Coverage Part shall be specifically excess of and shall not contribute with any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by the Coverage Part), regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

**IV.   COORDINATION OF COVERAGE**

Any **Loss** covered under this Coverage Part and one or more other **Liability Coverage Parts** shall first be covered under this Coverage Part, subject to its terms, conditions and limitations.  Any remaining portion of such **Loss** shall be covered under such other **Liability Coverage Part(s)**, subject to its terms, conditions and limitations.

**V.   GLOSSARY**

A.  **Benefits** means any payments (including insurance premiums), deferred compensation, perquisites or fringe benefits, in connection with an employee benefit plan and any other payment to or for the benefit of an employee arising out of the employment relationship. However, **Benefits** shall not include salary, wages, bonuses, commissions, **Stock Benefits** or non-deferred cash incentive compensation.

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 1   Filed  03/08/22   Page 26 of 42

B. **Claim** means any:

1. written demand for monetary or non-monetary (including injunctive) relief, including demands for arbitration, waiving or tolling of a statute of limitations, reinstatement, reemployment or re-engagement;

2. civil or criminal proceeding, evidenced by: (a) the service of a complaint or similar pleading in a civil proceeding; or (b) the filing of an indictment, information or similar document or an arrest in a criminal proceeding; and

3. arbitration proceeding pursuant to an employment contract or agreement, policy or practice of a **Company**;

4. administrative, regulatory or tribunal proceeding, other than a labor, grievance or other proceeding under a collective bargaining agreement, evidenced by the filing of a formal notice of charges or the entry of a formal order of investigation; or

5. any audit of an **Insured** conducted by the United States of America Office of Federal Contract Compliance Programs ("OFCCP"),

against an **Insured** for a **Wrongful Act**, including any appeal therefrom.

The time when a **Claim** shall be deemed first made for the purposes of this Coverage Part shall be the date on which the **Claim** is first made against, served upon or received by the **Insured** or the applicable notice or order is filed or entered.

C. **Defense Costs** means that part of **Loss** consisting of:

1. reasonable costs, charges, fees (including, attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of any **Insured**) incurred in investigating, defending, opposing or appealing any **Claim**; or

2. the premium for appeal, attachment or similar bonds (but the Insurer shall be under no obligation to furnish any bond).

D. **Discrimination** means any violation of any employment discrimination law.

E. **Employment Practices Wrongful Act** means any:

1. breach of any employment contract or agreement or contractual obligation, including any contract or agreement or contractual obligation arising out of any employee handbook, personnel manual, policy statement or other representation;

2. **Discrimination**;

3. **Harassment**;

4. **Retaliation**;

5. **Workplace Tort**; or

6. **Wrongful Employment Decision**,

committed, attempted, or allegedly committed or attempted by an **Insured** while acting in his or its capacity as such.

F. **Harassment** means any:

1. sexual harassment that is made a condition of employment with, used as a basis for employment decisions by, interferes with performance or creates an intimidating, hostile or offensive working environment within, a **Company**; or

2. workplace harassment, including bullying that interferes with performance or creates an intimidating, hostile or offensive working environment within a **Company**.

G. **Independent Contractor** means any natural person working for a **Company** pursuant to a written contract or agreement between such natural person and the **Company** which specifies the terms of the **Company's** engagement of such natural person.

H. **Insured** means any **Company** or **Insured Person**.

I. **Insured Person** means any:

1. **Executive** or **Employee**; or

2. **Independent Contractor**, but only if the **Company** agrees to indemnify the **Independent Contractor** in the same manner as **Employees** for liability arising out of a **Claim**.

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 1   Filed  03/08/22   Page 27 of 42

J. **Loss** means the amount that an **Insured** becomes legally obligated to pay on account of any **Claim** including:

1. compensatory damages (including back pay and front pay);

2. judgments and settlements, including a judgment or settlement awarding plaintiffs' attorneys fees, provided that with respect to any settlement including plaintiffs' attorney fees, that portion of the settlement can be demonstrated to be reasonable, taking into consideration the nature of legal action, time and expense involved in prosecuting such action, and the likelihood of a court awarding a similar amount as part of a judgment;

3. pre and post-judgment interest;

4. liquidated damages awarded pursuant to the Age Discrimination in Employment Act, Family Medical Leave Act or Equal Pay Act;

5. **Defense Costs**; and

6. punitive, exemplary or multiplied damages, if and to the extent that any such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages.

In determining the most favorable jurisdiction as set forth in paragraph 6 above, due consideration shall be given to the jurisdiction with a substantial relationship to the relevant **Insureds**, to the **Company**, or to the **Claim** giving rise to such damages, and the Insurer shall not challenge any opinion of independent legal counsel (mutually agreed to by the Insurer and the **Insured**) that such damages are insurable under applicable law.

**Loss** does not include any portion of such amount that constitutes any:

(a) amount not insurable under the law pursuant to which this Coverage Part is construed;

(b) cost incurred to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c) future salary, wages, commissions, or **Benefits** or other monetary payments of a claimant who has been or shall be hired, promoted or reinstated to employment pursuant to a settlement, order or other resolution of any **Claim**;

(d) salary, wages, commissions, **Benefits** or other monetary payments which constitute severance payments or payments pursuant to a notice period;

(e) **Benefits** due or to become due or the equivalent value of such **Benefits**;

(f) cost associated with providing any accommodation for persons with disabilities or any other status which is protected under any law, including the Americans with Disabilities Act and the Civil Rights Act of 1964;

(g) tax, fine or penalty imposed by law; or

(h) cost incurred to clean up, remove, contain, treat, detoxify or neutralize **Pollutants**.

K. **Retaliation** means retaliatory treatment against an **Employee** of a **Company** on account of such individual:

1. exercising his or her rights under law, refusing to violate any law or opposing any unlawful practice;

2. having assisted or testified in or cooperated with a proceeding or investigation (including any internal investigation conducted by the **Company's** human resources or legal department) regarding alleged violations of law by the **Insured**;

3. disclosing or threatening to disclose to a superior or any governmental agency any alleged violations of law; or

4. filing any claim against the **Company** under the Federal False Claims Act, Section 806 of the Sarbanes Oxley Act or any other whistleblower law.

L. **Stock Benefits** means any:

1. offering, plan or agreement between a **Company** and any **Employee** which grants stock, warrants, shares or stock options of the **Company** to such **Employee**, including grants of restricted stock, performance stock shares, membership shares or any other compensation or incentive granted in the form of securities of the **Company**; or

2. payment or instrument, the amount or value of which is derived from the value of securities of the **Company**, including stock appreciation rights or phantom stock plans or arrangements,

provided that **Stock Benefits** shall not include amounts claimed under any employee stock ownership plans or employee stock purchase plans.

M. **Third Party** means any natural person who is not an **Insured Person**.

N. **Third Party Wrongful Act** means any sexual harassment, or discrimination based upon status protected under any anti-discrimination law, against a **Third Party** committed, attempted, or allegedly committed or attempted by any **Insured** while acting in his or its capacity as such.

O. **Workplace Tort** means any employment-related:

1. misrepresentation, defamation (including libel and slander), invasion of privacy, wrongful infliction of emotional distress, mental anguish or humiliation; or

2. negligent retention, supervision, hiring or training, failure to provide or enforce consistent employment-related corporate policies and procedures, false imprisonment, negligent evaluation, wrongful discipline or wrongful deprivation of career opportunity,

but only when alleged as part of a **Claim** for any **Wrongful Employment Decision**, breach of employment contract, **Discrimination**, **Harassment** or **Retaliation**.

P. **Wrongful Act** means an **Employment Practices Wrongful Act** or **Third Party Wrongful Act**.

Q. **Wrongful Employment Decision** means any wrongful termination, discharge of employment, demotion, denial of tenure, failure or refusal to employ or promote, or wrongful or negligent employee reference.

**POLICY NUMBER: QBE0192298**
Endorsement Effective Date: March 2, 2017

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Service of Process Clause

# HAWAII

Upon any cause of action under this policy, QBE Specialty Insurance Company (hereafter "the Company") may be sued in the district court of the county in which the cause of action arose.

The Company appoints the Commissioner of Insurance for the State of Hawaii as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy.  Service of process upon the Commissioner shall be lawful service upon the Company.

The Company further designates

The Corporation Company, Inc.
900 Fort Street Mall, Suite 1800
Honolulu, HI 96813

as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

All other terms and conditions of this policy remain unchanged.

**POLICY NUMBER: QPL0192296**

**Effective Date of Endorsement: March 2, 2017**

QBBPP-2090 (05-14)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PRIOR ACTS EXCLUSION

This endorsement modifies insurance provided under the following:

DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

It is hereby agreed that Section **II. EXCLUSIONS** is amended by the addition of the following:

Prior Acts - based upon, arising out of or resulting from any **Wrongful Act** actually or allegedly committed or attempted, in whole or in part, prior to February 4, 2016.

All other terms and conditions of this Policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**INSURED PERSON AMENDED TO INCLUDE ANY ADVISORY BOARD MEMBER
ENDORSEMENT**

This endorsement modifies insurance provided under the following:

DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that:

**I.**   The definition of **Insured Person** in paragraph D. of Section **X. GLOSSARY** is amended by the addition of the following:

An **Insured Person** shall include any natural person who was, now is or shall be a board observer or duly elected member of an advisory board including a **Scientific Advisory Board**.

**II.**  Section **X. GLOSSARY** is amended by the addition of the following:

**Scientific Advisory Board** means a group of scientists, independent from management, created by or requested by the **Company** to provide objective feedback and guidance on the **Company's** progress and goals.

All other terms and conditions of this Policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMEND FORMER INSURED PERSON TIME THRESHOLD ENDORSEMENT**

This endorsement modifies insurance provided under the following:

DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that paragraph (b)(iii) in Exclusion A. Insured v. Insured of Section **II. EXCLUSIONS** is replaced by the following:

(iii) brought by an **Insured Person** who has ceased serving in his or her capacity as such for at least 2 year(s); or

All other terms and conditions of this Policy remain unchanged.

Case 1:22-cv-00391-SOM-KJM   Document 11-5   Filed 09/08/22   Page 35 of 43   PageID.407
Case 1:22-cv-00391-SOM-KJM   Document 81-20   Filed 07/31/23   Page 87 of 149  PageID.1034
**POLICY NUMBER: QPL0192298**
**Endorsement Effective Date: March 2, 2017**                                        QBBPP-2180 (05-14)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMEND BODILY INJURY/PROPERTY EXCLUSION FOR SECURITYHOLDER CARVEBACK**

This endorsement modifies insurance provided under the following:
DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

It is hereby agreed that Section **II. EXCLUSIONS,** paragraph 1. is replaced by the following:

1.  Exclusion A. Bodily Injury/Property Damage shall not apply to: (a) any **Claim** under Insuring Clause A; or (b) **Loss** on account of derivative demand or action or **Claim** brought by a securityholder or limited partner of a **Company** against an **Insured Person**.

All other terms and conditions of this Policy remain unchanged.

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 1   Filed  03/08/22   Page 34 of 42

**POLICY NUMBER: 24PL019288**

**Endorsement Effective Date: March 2, 2017**                                                    **QBBPP-2200 (05-14)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMEND DEFINITION OF CLAIM TO INCLUDE MEDIATION**

This endorsement modifies insurance provided under the following:

  EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

It is hereby agreed that Section **V. GLOSSARY**, paragraph B. **Claim** 1. is amended by the addition of the word "mediation," after the word "arbitration,".

All other terms and conditions of this Policy remain unchanged.

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 1   Filed  03/08/22   Page 35 of 42

**POLICY NUMBER: QPL0192498**
**Endorsement Effective Date: March 2, 2017**                                    QBBPP-2213 (09-14)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**PROFESSIONAL SERVICES EXCLUSION WITH SECURITYHOLDER CLAIM CARVEBACK**

This endorsement modifies insurance provided under the following:

DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that Exclusion H. Professional Services in Section **II. EXCLUSIONS** is amended by the addition of the following:

Exclusion H shall not apply to any **Claim** brought by a securityholder of a **Company** against a **Company**. However, in no event shall any coverage be provided for any portion of such **Claim** that is brought by the securityholder in solely his capacity as a client of such **Company**.

All other terms and conditions of this Policy remain unchanged.

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 1   Filed  03/08/22   Page 36 of 42

**POLICY NUMBER: QPL0192208**

Endorsement Effective Date: March 2, 2017                                      QBBPP-2216 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## INSURED V. INSURED CARVEBACK FOR FINANCIAL IMPAIRMENT

This endorsement modifies insurance provided under the following:
DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that paragraph (b) of Exclusion A. Insured v. Insured in Section **II. EXCLUSIONS** is replaced by the following:

Exclusion A3 above shall not apply to any **Claim**: (i) for employment-related **Wrongful Acts** against an **Insured Person**; (ii) for contribution or indemnity; (iii) brought by an **Insured Person** who has ceased serving in his capacity as such for at least 1 year; (iv) brought while the **Parent Company** is in **Financial Impairment**; or (v) brought by, on behalf of or with the participation of a whistleblower;

All other terms and conditions of this Policy remain unchanged.

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 1   Filed  03/08/22   Page 37 of 42

**POLICY NUMBER: QPL0191298**
**Effective Date of Endorsement: March 2, 2017**                          QBBPP-2247 (12-14)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NAMED CO-DEFENDANT COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

It is hereby agreed that:

I.  Coverage under this Policy shall also apply to the **Named Co-Defendants** for any **Claim** made against the **Named Co-Defendants** but only to the extent that:

   a.  a **Claim** is made against the **Named Co-Defendants** for a **Wrongful Act** of an **Insured** and such **Claim** is made and continuously maintained against both the **Insured** and the **Named Co-Defendants**;
   b.  the **Named Co-Defendants** become co-defendants in such **Claim** by reason of their actual or alleged status as a controlling shareholder; and
   c.  the **Insured** and the **Named Co-Defendants** are represented by the same legal counsel.

II.  Section **XXII. GLOSSARY** is amended by the addition of the following:

   **Named Co-Defendants** means the **Sponsor Company** and any **Affiliated Entity** including any directors, of-ficers, general partners, managing directors or employees thereof.

   **Sponsored Company** means:

   PaCap Aviation Finance
   Malama Investments

   **Affiliated Entity** means any entity that is:

   a.  A pooled investment vehicle created, managed or controlled by the **Sponsored Company**;
   b.  An investment or management company controlled by the **Sponsored Company** that renders services to an **Affiliated Entity** described in paragraph a. above; or
   c.  A special purpose vehicle created and controlled by the **Sponsored Company** for the purpose of making an acquisition of the **Parent Company**.

All other terms and conditions of this Policy remain unchanged.

QBBPP-2247 (12-14)                                                          Page 1 of 1

**POLICY NUMBER: QPL0199203**

**Effective Date of Endorsement: March 02, 2017**                                  **QBBPP-2073M (05-14)**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIFIED INDIVIDUAL EXCLUSION – CLAIMS BROUGHT BY SUCH INDIVIDUAL

This endorsement modifies insurance provided under the following:

DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that Section **II. EXCLUSIONS** is amended by the addition of the following:

No coverage shall be provided under this Coverage Part for **Loss** on account of that portion of a **Claim** brought by or on behalf of any Individual listed below, and/or any entity on which such individual(s) is a director, officer, management committee member or trustee (or equivalent position), or any entity in such individual(s) owns, or controls, five percent (5%) or more of an equity or debt ownership interest (individually or collectively) either directly or indirectly and/or any past, present or future director or officer (or equivalent position) of any such entity.

Larry Ellison

All other terms and conditions of this Policy remain unchanged.

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 1   Filed  03/08/22   Page 39 of 42

**POLICY NUMBER: QPL0192298**                                          **QBPD-6000 (02-15)**
**Endorsement Effective Date: March 2, 2017**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

It is hereby agreed that:

**I.**   This Policy is amended by the addition of the following:

   If aggregate insured losses attributable to a **Certified Act of Terrorism** under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**II.**   Solely for the purposes of this endorsement, this Policy is amended by the addition of the following:

   **Certified Act of Terrorism** means an act that is certified by the Secretary of Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act,, to be an act of terrorism.  The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:
   **1.**   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and
   **2.**   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**III.**   The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any **Loss** that is otherwise excluded under this Policy.

All other terms and conditions of this Policy remain unchanged.

B1040 (Form 1040) (12/15)

Case 1:22-cv-90391-SOM-KJM   Document 11-5   Filed 09/08/22   Page 42 of 43   PageID.414
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 94 of 149   PageID.1041

# ADVERSARY PROCEEDING COVER SHEET
(Instructions on Reverse)

**ADVERSARY PROCEEDING NO.**

| **PLAINTIFF(S)** | **DEFENDANT(S)** |
|---|---|
| **ATTORNEY(S)** (Firm Name, Address, Telephone No.) | **ATTORNEY(S)** (If Known) |

| **PARTY** (Check One Box Only) | **PARTY** (Check One Box Only) |
|---|---|
| Debtor    U.S. Trustee<br>Creditor    Trustee    Other | Debtor    U.S. Trustee<br>Creditor    Trustee    Other |

**CAUSE OF ACTION** (Write a brief statement of cause of action, including all U.S. statutes involved.)

## NATURE OF SUIT

(Number up to 5 boxes with the lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

*Note: Only a complaint including an objection to discharge under 11 U.S.C. § 727 will defer the clerk's entry of the debtor's discharge in bankruptcy. A complaint to determine the dischargeability of a debt under 11 U.S.C. § 523 does not affect the entry of a discharge with respect to other debts.*

**FRBP 7001(1) – Recovery of Money/Property**
11 – Recovery of money/property - § 542 turnover of property
12 – Recovery of money/property - § 547 preference
13 – Recovery of money/property - § 548 fraudulent transfer
14 – Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
21 – Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
31 – Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
41 – Objection/revocation of discharge - § 727(c), (d), (e)

**FRBP 7001(5) – Revocation of Confirmation**
51 – Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
66 – Dischargeability - § 523(a)(1), (14), (14A) priority tax claims
62 – Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
67 – Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
61 – Dischargeability - § 523(a)(5), domestic support
68 – Dischargeability - § 523(a)(6), willful and malicious injury
63 – Dischargeability - § 523(a)(8), student loan
64 – Dischargeability - § 523 (a)(15), divorce or separation obligation (other than domestic support)
65 – Dischargeability – other

**FRBP 7001(7) – Injunctive Relief**
71 – Injunctive relief – imposition of stay
72 – Injunctive relief – other

**FRBP 7001(8) – Subordination of Claim or Interest**
81- Subordination of claim or interest

**FRBP 7001(9) – Declaratory Judgment**
91 – Declaratory judgment

**FRBP 7001(10) – Determination of Removed Action**
01 – Determination of removed claim or cause

**Other**
SS-SIPA Case – 15 U.S.C. §§ 78aaa et seq.
02 – Other (e.g.,other actions that would have been brought in state court if unrelated to bankruptcy case)

| Check if this case involves a substantive issue of state law | Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| Check if a jury trial is demanded in complaint | Demand:  $ |

Other Relief Sought:

B1040 (Form 1040) (12/15)

Case 1:22-cv-00391-SOM-KJM   Document 11-5   Filed 09/08/22   Page 43 of 43   PageID.415
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 95 of 149   PageID.1042

## BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR | BANKRUPTCY CASE NO. | |
|---|---|---|
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

## RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT IN WHICH ADVERSARY PROCEEDING IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |
| DATE | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet.  When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party.**  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| | ) | |
| QBE SPECIALTY INSURANCE | ) | Adv. Pro. 22-90006 |
| COMPANY, | ) | (Chapter 7) |
| | ) | |
| Plaintiff, | ) | June 3, 2022 |
| | ) | 2:03 p.m. |
| vs. | ) | |
| | ) | |
| ELIZABETH KANE, AS CHAPTER 7 | ) | U.S. Bankruptcy Court |
| TRUSTEE, | ) | 1132 Bishop Street, Suite 250 |
| | ) | Honolulu, HI 96813 |
| Defendant. | ) | |
| _____ | ) | |

TRANSCRIPT OF SCHEDULING CONFERENCE
BEFORE THE HONORABLE ROBERT J. FARIS
UNITED STATES BANKRUPTCY JUDGE

<u>APPEARANCES:</u>

| | |
|---|---|
| For QBE Specialty Insurance: | Kamalolookalani Koanui-Kong, Esq. |
| | Gallagher Kane Amai & Reyes |
| | 745 Fort Street, Suite 1550 |
| | Honolulu, HI  96797 |
| | |
| For QBE Specialty Insurance: | John E. Howell, Esq. |
| | Wiley Rein LLP |
| | 2050 M Street NW |
| | Washington, D.C. 20006 |
| | |
| For Paul Marinelli: | Christopher J. Muzzi, Esq. |
| | Tsugawa Lau & Muzzi |
| | 55 Merchant Street, Suite 3000 |
| | Honolulu, HI 96813 |
| | |
| For Jeffrey Au & PaCap | Christian K. Adams, Esq. |
| Aviation Finance LLC: | Adams Miyashiro Krek LLP |
| | 900 Fort Street Mall, Suite 1700 |
| | Honolulu, HI  96813 |
| | |
| For Jeffrey Au & PaCap | Peter W. Ito, Esq. |
| Aviation Finance LLC: | 1550 Larimer Street, Suite 667 |
| | Denver, CO  80202 |

EXHIBIT D

<u>APPEARANCES:</u> (Continued)

For Elizabeth Kane, as          Simon Klevansky, Esq.
Chapter 7 Trustee:              Klevansky Piper, LLP
                                1136 Union Mall, Suite 701
                                Honolulu, HI 96813

For Christopher Gossert and     David C. Farmer, Esq.
Catherine Yannone:              225 Queen Street, Suite 15A
                                Honolulu, HI 96813

For David Pflieger:             Jean Christensen, Esq.
                                2070 W. Vineyard Street, Suite 1
                                Wailuku, HI 96793

For David Uchiyama:             Scott E. Kubota, Esq.
                                Four Waterfront Plaza, Suite 480
                                500 Ala Moana Boulevard
                                Honolulu, HI 96813

For Philip Wegescheide:         Harvey J. Lung, Esq.
                                Jai William Keep-Barnes, Esq.
                                Lung Rose Voss & Waglind
                                700 Bishop Street, Suite 900
                                Honolulu, HI 96813

Transcription Service:          Jessica B. Cahill, CER/CET-708
                                Maukele Transcribers, LLC
                                467 Maukele Place
                                Wailuku, Maui, HI  96793
                                Telephone: (808)244-0776

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

```
 1  JUNE 3, 2022                                    2:03 P.M.

 2          THE COURT:  Okay.  Good afternoon, it's Judge Faris.

 3  Madam Clerk, please go ahead.

 4          THE CLERK:  The United States Bankruptcy Court for the

 5  District of Hawaii is now in session.  The Honorable Robert J.

 6  Faris presiding.

 7          Calling adversary proceeding 22-90006, QBE Specialty

 8  Insurance Company v. Elizabeth Kane, et al.  Proceeding is called

 9  for a scheduling conference.

10          Ms. Koanui-Kong, please state your appearance.

11          MS. KOANUI-KONG:  Good afternoon, Your Honor.

12  Kamalolookalani Kong and my co-counsel John Howell on behalf of

13  QBE Specialty Insurance Company.

14          THE CLERK:  Mr. Muzzi, please state your appearance.

15          MR. MUZZI:  Good afternoon, Your Honor.  Christopher

16  Muzzi on behalf of interpleader Defendant Paul Marinelli.

17          THE CLERK:  Mr. Adams, please state your appearance.

18          MR. ADAMS:  Good afternoon, Your Honor.  Christian

19  Adams appearing on behalf of Jeffrey Au and PaCap, along with

20  Peter Ito.

21          THE CLERK:  Ms. Christensen, please state your

22  appearance.

23          MS. CHRISTENSEN:  Good afternoon, Your Honor. Jean

24  Christensen appearing on behalf of Defendant David Pflieger.

25          THE CLERK:  Mr. Klevansky, please state your
```

Case 1:22-cv-00391-SOM-KJM   Document 11-6   Filed 09/08/22   Page 5 of 10     PageID.420   4
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 100 of 149
PageID.1047

1    appearance.

2              MR. KLEVANSKY:  Good afternoon, Your Honor.  Simon

3    Klevansky appearing on behalf of the Trustee.

4              THE CLERK:  Mr. Farmer, please state your appearance.

5              MR. FARMER:  Good afternoon, Your Honor.  David Farmer

6    appearing on behalf of interpleader Defendants Gossert and

7    Yannone.

8              THE CLERK:  Mr. Kubota, please state your appearance.

9              MR. KUBOTA:  Good afternoon, Your Honor.  Scott Kubota

10   appearing on behalf of David Uchiyama.

11             THE CLERK:  Mr. Lung, please state your appearance.

12             MR. LUNG:  Thank you.  Good afternoon, Your Honor.

13   Harvey Lung and Jai Keep-Barnes on behalf of interpleader

14   Defendant Philip Wegescheide.

15             THE CLERK:  Mr. Howell -- I mean -- yes, Mr. Howell,

16   please state your appearance.

17             MR. HOWELL:  John Howell on behalf of QBE Specialty

18   Insurance Company.

19             THE CLERK:  And Mr. Ito, please state your appearance.

20             MR. ITO:  Good afternoon, Your Honor.  Peter Ito for

21   interpleader Defendants Jeffrey Au and PaCap Aviation Finance.

22             THE COURT:  Okay.  Thank you, everyone.

23             I see at least from -- some of the papers indicate that

24   at least some people, maybe everybody, is looking for a trial in

25   June of 2023.  The next case on the calendar day is asking for a

Case 1:22-cv-00391-SOM-KJM   Document 11-6   Filed 09/08/22   Page 6 of 10   PageID.421   5
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 101 of 149
PageID.1048

1    trial on the first half of that same month, so I would propose

2    June 20 or June 27th.  I'll go around and see what people think

3    about that date.

4          But before we do that I'll point out that I know that

5    PaCap and perhaps some of its affiliates have demanded a jury

6    trial.  You may know from the related adversary proceedings that

7    I typically handle those by setting a trial date in this Court.

8    The scheduling conference order will set a date by which people

9    will have to move to strike the jury demand.  If no timely motion

10   is made or if a motion is made, and it's denied, so there

11   wouldn't be a jury trial, then I issue a recommendation to the

12   District Court, asking the District Court to set a date for a

13   jury trial and to provide that the reference will be withdrawn

14   about three months before that date.

15         So the trial date we set here may be inoperative if the

16   jury demand sticks and would be operative if it doesn't.  And I'm

17   not going to decide today, obviously, whether the jury demand is

18   valid or not.

19         So the dates I want to propose would be June 20 or 27,

20   2023.  And let me just go around with people in the order which

21   they appeared.  I'll start with QBE.  Ms. Koanui-Kong or Mr.

22   Howell.

23         MS. KOANUI-KONG:  This is Kamaloloo.  I have no

24   objection.  Mr. Howell may have.

25         MR. HOWELL:  No objection to either of those dates,

Case 1:22-cv-00391-SOM-KJM   Document 11-6   Filed 09/08/22   Page 7 of 10     PageID.422     6
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 102 of 149
PageID.1049

```
 1   Your Honor.

 2              THE COURT:  All right.  Thank you.  Mr. Muzzi.

 3              MR. MUZZI:  Your Honor, my first preference would be

 4   June 20th, and then June 27th.

 5              THE COURT:  Okay.  All right.  Mr. Adams, Mr. Ito.

 6              MR. ITO:  Your Honor, Peter Ito.  Either date works for

 7   us.  Thank you.

 8              THE COURT:  Okay.  Ms. Christensen.

 9              MS. CHRISTENSEN:  No objection to either of those

10   dates, Your Honor.

11              THE COURT:  Okay.  Mr. Klevanksy.

12              MR. KLEVANSKY:  Your Honor, we have no objection to

13   either date in June of 2023.

14              Your Honor, I apologize, my call-in dropped, and I

15   reconnected, so I'm afraid I missed the Court's prior comment

16   before citing to the dates.  I hesitate to ask the Court to

17   repeat, but the Court had indicated a comment on a jury demand or

18   something of that character, am I correct?

19              THE COURT:  Yes, that's right.  I was just explaining

20   how I handle situations where there's a jury demand such as PaCap

21   has made, and I think -- you know the drill. You've seen this

22   before.  So nothing I said would come as a surprise to you.

23              MR. KLEVANSKY:  Okay.  There's no ruling on the issue

24   today?  It's not before the Court, and the Court will follow its

25   ordinary procedures.  I understand.
```

Case 1:22-cv-00391-SOM-KJM   Document 11-6   Filed 09/08/22   Page 8 of 10   PageID.423   7
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 103 of 149
PageID.1050

 1                THE COURT:  Yes, exactly.

 2                MR. KLEVANSKY:  Thank you.  And I apologize for asking

 3     the Court to repeat.

 4                THE COURT:  Quite all right.  Quite all right.  Mr.

 5     Farmer.

 6                MR. FARMER:  Your Honor, we have no objection to either

 7     date.

 8                THE COURT:  All right.  Mr. Kubota.

 9                MR. KUBOTA:  No objection to either date.

10                THE COURT:  All right.  Mr. Lung.

11                MR. LUNG:  Thank you, Your Honor.  We have no objection

12     to either date as well.

13                THE COURT:  Okay.  Great.  Let's go with June 20th,

14     since that was Mr. Muzzi's first preference and nobody else had

15     any objection to either date.

16                So we would just issue the scheduling order in the

17     usual form.  And I talked about how the jury demand would be

18     handled.  Is there anything else to be discussed?  Anybody else

19     want to raise anything?  Rather than just call on people, if you

20     have anything you wish to raise just speak up, please.

21                MR. HOWELL:  Your Honor, this is John Howell for QBE.

22     And, you know, I think I set forth in our complaint, you know,

23     the intention of my client is to seek an order from the Court

24     permitting it to deposit the proceeds of the policy that's at

25     issue here into the Court's registry and obtain a discharge at an

Case 1:22-cv-00391-SOM-KJM   Document 11-6   Filed 09/08/22   Page 9 of 10   PageID.424   8
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 104 of 149
PageID.1051

 1    injunction.  And we would expect to be making that motion in the

 2    next couple weeks.

 3           There have been a few motions in the main bankruptcy

 4    proceeding to lift the automatic stay to allow defense costs to

 5    be advanced, and there's been -- some defense costs have been

 6    advanced and other insureds are gathering their invoices, and

 7    it's the intention of QBE to continue advancing those costs until

 8    such time as it's granted a discharge, and then the parties can

 9    make their claims to the proceeds as they see fit.

10           THE COURT:  Okay.  All right.  Well, I will look

11    forward to that motion being filed and any other motions anybody

12    wants to file.

13           Any other procedural housekeeping or other matters

14    anybody wants to raise today?  Okay.  All right.  Apparently not.

15    Great.  So June 20, 2023, at 9:30 for trial.  The Court will

16    prepare and issue the scheduling order, which will have the usual

17    pretrial dates and procedures, which will be familiar to those of

18    you who have practiced in the Bankruptcy Court here before.  And

19    for those of you who haven't, please take a look at them

20    carefully.  Thank you very much.

21        (Proceedings concluded at 2:12 p.m.)

22

23

24

25

Case 1:22-cv-00391-SOM-KJM  Document 11-6  Filed 09/08/22  Page 10 of 10  PageID.425
Case 1:22-cv-00450-SOM-KJM  Document 81-20  Filed 07/31/23  Page 105 of 149  9
PageID.1052

CERTIFICATE

I, Jessica B. Cahill, court approved transcriber, do hereby certify that pursuant to 28 U.S.C. §753, the foregoing is a complete, true, and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated: <u>August 4, 2022</u>

_____

Jessica B. Cahill, CER/CET-708

Case 1:22-cv-00391-SOM-KJM   Document 11-7   Filed 09/08/22   Page 1 of 8   PageID.426
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 106 of 149
PageID.1053

# EXHIBIT E

Case 1:22-cv-00391-SOM-KJM   Document 11-7   Filed 09/08/22   Page 2 of 8   PageID.427
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 107 of 149
PageID.1054

**From:** Rains, Darryl P. <DRains@mofo.com>
**Sent:** Tuesday, June 7, 2022 2:33 PM
**To:** 'Howell, John' <JHowell@wiley.law>
**Cc:** Melvin, Kimberly <KMelvin@wiley.law>; Christopher J. Muzzi (cmuzzi@hilaw.us)
<cmuzzi@hilaw.us>; Connelly, Rahman <rahman.connelly@pillsburylaw.com>; Bregman, Julie
<JBregman@mofo.com>; Marsh, Shirley <SMarsh@mofo.com>; Marinuzzi, Lorenzo
<LMarinuzzi@mofo.com>; Rains, Darryl P. <DRains@mofo.com>
**Subject:** RE: Invoice for Services Rendered re Island Air/Carbonview (April 2022)

John:

Thanks for your email.  We have just completed our work to revise our invoices to
eliminate charges not properly allocated to the insured matter.  We have also
collected the invoices issued by Chris Muzzi's and Rahman Connelly's firms.

The attached spreadsheet lists all of our (revised) charges and disbursements, and
has tabs for the invoices issued by Messrs. Muzzi's and Connelly's firms.

My firm will send the underlying invoices to you by overnight service.

The next step is to schedule a conference call with you and Kim to discuss next
steps.  The topics to be discussed will include:

- Whether you will commit to paying these invoices, and our current and future
  invoices, on an ongoing basis
- Whether we will need to file a declaratory judgment action, and assert claims for
  bad faith, in order to compel you to pay these invoices
- The proper allocation of defense fees and costs between insured and uninsured
  clients.

I will make myself available for such a call on Wednesday, Thursday, or Friday of this

EXHIBIT E

week.  Please suggest a few dates and times that would work for the two of you.

Thanks for your patience and professional courtesies.  I look forward to speaking with you.

Darryl


**Darryl P. Rains**
Senior Of Counsel
DRains@mofo.com
T +1 (650) 813- 5866
M +1 (650) 296-0988

Morrison Foerster
755 Page Mill Road
Palo Alto, CA 94304-1018



mofo.com | LinkedIn | Twitter

---

**From:** Howell, John <JHowell@wiley.law>
**Sent:** Tuesday, June 7, 2022 8:36 AM
**To:** Rains, Darryl P. <DRains@mofo.com>
**Cc:** Melvin, Kimberly <KMelvin@wiley.law>
**Subject:** FW: Invoice for Services Rendered re Island Air/Carbonview (April 2022)


<mark>External Email</mark>

---

Darryl,

Can you let us know where things stand with the segregation of the earlier invoices?

Thanks,

John

 John E. Howell
Attorney at Law
jhowell@wiley.law

Wiley Rein LLP • 2050 M Street NW • Washington, DC 20036
o:  202.719.7047 • m:  617.372.2608
Download V-Card | wiley.law | Bio | Executive Summary Blog

Please update your records to reflect our new office address.

Case 1:22-cv-00391-SOM-KJM   Document 11-7   Filed 09/08/22   Page 4 of 8    PageID.429
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 109 of 149
PageID.1056

**From:** Marsh, Shirley <SMarsh@mofo.com>
**Sent:** Monday, June 6, 2022 3:58 PM
**To:** Legal Invoices <LegalInvoices@lawrenceinv.com>
**Cc:** professional.liability.claims@us.qbe.com; Melvin, Kimberly <KMelvin@wiley.law>; Marinuzzi, Lorenzo <LMarinuzzi@mofo.com>; Rains, Darryl PButterfield, Benjamin W. <BButterfield@mofo.com>; Bregman, Julie <JBregman@mofo.com>
**Subject:** Invoice for Services Rendered re Island Air/Carbonview (April 2022)



Good afternoon,

Attached please find our invoice, and back-up, for services rendered through April 30, 2022 respecting Island Air/Carbonview.

If you have any questions, or if we can be of any assistance, please do not hesitate to contact us.

Thank you and best regards,
Shirley

**Shirley Marsh**
Legal Secretary to Lorenzo Marinuzzi
smarsh@mofo.com
T +1 (212) 336-4203



mofo.com | LinkedIn | Twitter

============================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.
.

CONFIDENTIALITY: This email and any attachments are confidential, except where the email states it can be disclosed, and it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender and delete this email and any attachments.

Case 1:22-cv-00391-SOM-KJM   Document 11-7   Filed 09/08/22   Page 5 of 8    PageID.430
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 110 of 149
PageID.1057

========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.
.

Case 1:22-cv-00391-SOM-KJM  Document 11-7  Filed 09/08/22  Page 6 of 8  PageID.431
Case 1:22-cv-00450-SOM-KJM  Document 81-20  Filed 07/31/23  Page 111 of 149
PageID.1058

| Month | Matter No | Matter | Invoice | Date | Total Fees | Less 10% Discount | Client Accommodation | Total Disbs | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | | Morrison & Foerster Billing & Payment Ledger for Matter(s): 076884-0000008 - between 8/1/2019 and 5/11/2022 | | | | | | | |
| Aug-19 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5852869 | 9/23/2019 | $ 23,064.50 | $ (2,306.45) | | $ 16,995.41 | $ 37,753.46 |
| Sep-19 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5864440 | 11/8/2019 | $ 137,068.50 | $ (13,706.85) | | $ 7,313.89 | $ 130,675.54 |
| Oct-19/Nov-19 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5878144 | 12/27/2019 | $ 104,603.00 | $ (10,460.30) | | $ 11,213.90 | $ 105,356.60 |
| Dec-19 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5891988 | 2/26/2020 | $ 45,430.00 | $ (4,543.00) | | $ 816.65 | $ 41,703.65 |
| Jan-20 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5894555 | 2/26/2020 | $ 39,843.50 | $ (3,984.35) | | $ 453.41 | $ 36,312.56 |
| Feb-20 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5897594 | 3/19/2020 | $ 31,676.00 | $ (3,167.60) | | $ 431.06 | $ 28,939.46 |
| Mar-20 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5904351 | 4/17/2020 | $ 111,101.00 | $ (11,110.10) | | $ 3,473.88 | $ 103,464.78 |
| Apr-20 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5914261 | 5/28/2020 | $ 160,381.50 | $ (16,038.15) | | $ 35.62 | $ 144,378.97 |
| May-20 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5923243 | 6/30/2020 | $ 104,659.00 | $ (10,465.90) | | $ 64.21 | $ 94,257.31 |
| Jun-20 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5931234 | 7/30/2020 | $ 123,407.50 | $ (12,340.75) | | $ 7,423.59 | $ 118,490.34 |
| Jul-20 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5938833 | 8/31/2020 | $ 106,112.00 | $ (10,611.20) | | $ - | $ 95,500.80 |
| Aug-20 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5946235 | 9/25/2020 | $ 130,583.50 | $ (13,058.35) | | $ 600.60 | $ 118,125.75 |
| Sep-20 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5957481 | 10/31/2020 | $ 121,335.50 | $ (12,133.55) | | $ 125.40 | $ 109,327.35 |
| Oct-20 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5964427 | 11/30/2020 | $ 273,804.50 | $ (27,380.45) | | $ 10,525.42 | $ 256,949.47 |
| Nov-20 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5973641 | 12/31/2020 | $ 186,311.50 | $ (18,631.15) | | $ 6,666.44 | $ 174,346.79 |
| Dec-20 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5975810 | 1/13/2021 | $ 65,466.00 | $ (6,546.60) | $ (15,000.00) | $ 1,299.82 | $ 45,219.22 |
| Jan-21 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5984309 | 2/17/2021 | $ 83,394.00 | $ (8,339.40) | | $ 3,252.82 | $ 78,307.42 |
| Feb-21 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5995131 | 3/31/2021 | $ 68,911.50 | $ (6,891.15) | | $ 3,868.93 | $ 65,889.28 |
| Mar-21 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 5997295 | 4/12/2021 | $ 63,180.50 | $ (6,318.05) | | $ 7,652.55 | $ 64,515.00 |
| Apr-21 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 6006778 | 5/19/2021 | $ 80,452.00 | $ (7,869.70) | $ (1,755.00) | $ 9,670.84 | $ 80,498.14 |
| May-21 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 6013324 | 6/9/2021 | $ 4,905.00 | $ (490.50) | | $ 3,043.05 | $ 7,457.55 |
| Jun-21 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 6023084 | 7/13/2021 | $ 3,420.00 | $ (342.00) | | $ 4,623.35 | $ 7,701.35 |
| Jul-21 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 6031549 | 8/12/2021 | $ 41,313.50 | -4,131.35 | | $ 2,995.55 | $ 40,177.70 |
| Aug-21 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 6041764 | 9/16/2021 | $ 63,843.50 | -6,384.35 | | $ 2,913.40 | $ 60,372.55 |
| Sep-21 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 6051570 | 10/18/2021 | $ 166,277.50 | $ (16,627.75) | | $ 8,140.36 | $ 157,790.11 |
| Oct-21 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 6060923 | 11/16/2021 | $ 143,339.00 | $ (14,333.90) | | $ 12,779.31 | $ 141,784.41 |
| Nov-21 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 6068374 | 12/8/2021 | $ 151,982.00 | $ (15,198.20) | | $ 2,728.10 | $ 139,511.90 |
| Dec-21 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 6076754 | 1/10/2022 | $ 90,325.50 | $ (9,032.55) | | $ 8,258.77 | $ 89,551.72 |
| Jan-22 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 6091975 | 3/2/2022 | $ 106,972.50 | $ (10,697.25) | | $ 3,882.80 | $ 100,158.05 |
| Feb-22 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 6095035 | 3/14/2022 | $ 110,008.50 | $ (11,000.85) | | $ 2,713.80 | $ 101,721.45 |
| Mar-22 | 076884-0000008 | ISLAND AIR/CARBONVIEW | 6105136 | 4/18/2022 | $ 78,833.50 | $ (7,883.35) | | $ 3,245.50 | $ 74,195.65 |
| TOTAL | | | | Total USD: | $ 3,022,006.00 | $ (302,025.10) | $ (16,755.00) | $ 147,208.43 | $ 2,850,434.33 |

Case 1:22-cv-00391-SOM-KJM   Document 11-7   Filed 09/08/22   Page 7 of 8   PageID.432
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 112 of 149
PageID.1059

| Month | Matter Number | Invoice | Date | Fees | Disbursements | Courtesy Discount | Tax | Total Billed |
|---|---|---|---|---|---|---|---|---|
| Sept 2019- Oct 2019 | 50185.1 | 15106 | 10/25/2019 | $ 23,940.00 | $ 314.30 | $ - | $ 1,142.86 | $ 25,397.16 |
| Nov-19 | 50185.1 | 15107 | 11/22/2019 | $ 2,926.00 | $ 45.90 | $ - | $ 140.04 | $ 3,111.94 |
| Dec-19 | 50185.1 | 15250 | 12/31/2019 | $ 9,580.00 | $ 232.01 | $ - | $ 462.34 | $ 10,274.35 |
| 1/1/2020 | 50185.1 | 15251 AMENDED | 1/31/2020 | $ 5,101.00 | $ 3.40 | $ (1,240.00) | $ 182.09 | $ 4,046.49 |
| Feb-20 | 50185.1 | 15285 | 2/26/2020 | $ 1,343.00 | $ 38.70 | $ - | $ 65.11 | $ 1,446.81 |
| Mar-20 | 50185.1 | 15407 | 3/25/2020 | $ 2,172.50 | $ 54.00 | $ - | $ 104.91 | $ 2,331.41 |
| 4/1/2020 - 5/2020 | 50185.1 | 15503 | 5/22/2020 | $ 10,428.00 | $ 221.99 | $ - | $ 501.83 | $ 11,151.82 |
| Jun-20 | 50185.1 | 15608 | 6/26/2020 | $ 3,436.50 | $ 2.80 | $ - | $ 162.06 | $ 3,601.36 |
| Jul-20 | 50185.1 | 15640 | 7/27/2020 | $ 237.00 | $ 3.60 | $ - | $ 11.34 | $ 251.94 |
| Aug-20 | 50185.1 | 15760 | 8/26/2020 | $ 2,212.00 | $ 1.90 | $ - | $ 104.32 | $ 2,318.22 |
| Sep-20 | 50185.1 | 15831 | 9/25/2020 | $ 4,623.50 | $ 12.80 | $ - | $ 218.46 | $ 4,854.76 |
| Oct-20 | 50185.1 | 15916 | 10/27/2020 | $ 829.50 | $ 9.80 | $ - | $ 39.55 | $ 878.85 |
| Nov-20 | 50185.1 | 15995 | 11/24/2020 | $ 1,698.50 | $ 11.40 | $ - | $ 80.57 | $ 1,790.47 |
| Jan-21 | 50185.1 | 16150 | 1/29/2021 | $ 2,036.00 | $ 4.20 | $ - | $ 96.13 | $ 2,136.33 |
| Feb-21 | 50185.1 | 16242 | 2/28/2021 | $ 2,551.50 | $ 221.90 | $ - | $ 130.68 | $ 2,904.08 |
| 3/1/2021 - 4/2021 | 50185.1 | 16356 | 4/27/2021 | $ 5,670.00 | $ 12.70 | $ - | $ 267.77 | $ 5,950.47 |
| May-21 | 50185.1 | 16415 | 5/26/2021 | $ 1,579.50 | $ 1.00 | $ - | $ 74.47 | $ 1,654.97 |
| Jun-21 | 50185.1 | 16494 | 6/25/2021 | $ 81.00 | $ - | $ - | $ 3.82 | $ 84.82 |
| Jul-21 | 50185.1 | 16560 | 7/28/2021 | $ 1,174.50 | $ 121.16 | $ - | $ 61.05 | $ 1,356.71 |
| Aug-21 | 50185.1 | 16611 | 8/27/2021 | $ 12,312.00 | $ 1,477.35 | $ - | $ 649.75 | $ 14,439.10 |
| Sep-21 | 50185.1 | 16664 | 9/29/2021 | $ 6,480.00 | $ 1,976.90 | $ - | $ 398.49 | $ 8,855.39 |
| Oct-21 | 50185.1 | 16750 | 10/31/2021 | $ 7,463.00 | $ 84.55 | $ - | $ 355.64 | $ 7,903.19 |
| Nov-21 | 50185.1 | 16859 | 11/30/2021 | $ 50,253.50 | $ 560.82 | $ (10,050.70) | $ 1,920.78 | $ 42,684.40 |
| Dec-21 | 50185.1 | 16870 | 12/31/2021 | $ 6,723.00 | $ 245.43 | $ (672.30) | $ 296.67 | $ 6,592.80 |
| Jan-22 | 50185.1 | 16946 | 1/31/2022 | $ 3,864.00 | $ 573.76 | $ - | $ 209.11 | $ 4,646.87 |
| Feb-22 | 50185.1 | 17051 | 2/28/2022 | $ 21,855.00 | $ 631.35 | $ (2,185.50) | $ 956.58 | $ 21,257.43 |
| Mar-22 | 50185.1 | 17128 | 3/31/2022 | $ 4,770.50 | $ 207.12 | $ (477.05) | $ 212.07 | $ 4,712.64 |
| TOTAL | 50185.1 | | | $ 195,341.00 | $ 7,070.84 | $ (14,625.55) | $ 8,848.49 | $ 196,634.78 |

**Christopher Muzzi Invoices**

Case 1:22-cv-00391-SOM-KJM   Document 11-7   Filed 09/08/22   Page 8 of 8   PageID.433
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 113 of 149
PageID.1060

| Month | Matter Number | Invoice | Date | Fees | Disbursements | 10% Discount | Total Billed |
|---|---|---|---|---|---|---|---|
| 1-Jan | 063832-0000001 | 8687866 | 2/9/2021 | $ 26,675 00 | $ - | $ (2,667 50) | $ 24,007 50 |
| 1-Feb | 063832-0000001 | 8392407 | 3/9/2021 | $ 56,939 00 | $ - | $ (5,393 90) | $ 51,545 10 |
| 21-Mar | 063832-0000001 | 8399517 | 4/15/2021 | $ 13,677 00 | $ - | $ (1,367 70) | $ 12,309 30 |
| 1-Jul | 063832-0000001 | 8419340 | 8/4/2021 | $ 35,405 00 | $ - | $ (3,540 50) | $ 31,864 50 |
| 31-Aug | 063832-0000001 | 8426142 | 9/14/2021 | $ 28,906 00 | $ - | $ (2,890 60) | $ 26,015 40 |
| 30-Sep | 063832-0000001 | 8432596 | 10/20/2021 | $ 76,968 00 | $ 72 97 | $ (7,696 80) | $ 69,344 17 |
| 31-Oct | 063832-0000001 | 8436590 | 11/10/2021 | $ 69,119 00 | $ 1,940 79 | $ (6,911 90) | $ 64,147 89 |
| 21-Nov | 063832-0000001 | 8443370 | 12/27/2021 | $ 70,569 00 | $ 262 17 | $ (7,056 90) | $ 63,774 27 |
| 21-Dec | 063832-0000001 | 8447990 | 1/31/2022 | $ 61,234 00 | $ - | $ (6,132 40) | $ 55,101 60 |
| Jan-22 | 063832-0000001 | 8454211 | 2/17/2022 | $ 61,260 00 | $ - | $ (6,126 00) | $ 55,134 00 |
| Mar-22 | 063832-0000001 | 8463746 | 4/26/2022 | $ 67,190 00 | $ - | $ (6,719 00) | $ 60,471 00 |
| **TOTALS** | | | | **$ 567,942.00** | **$ 2,275.93** | **$ (56,503.20)** | **$ 513,714.73** |

**Rahman Connelly Invoices**

Case 1:22-cv-00391-SOM-KJM   Document 11-8   Filed 09/08/22   Page 1 of 5     PageID.434
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 114 of 149
PageID.1061

# EXHIBIT F

Case 1:22-cv-00391-SOM-KJM   Document 11-8   Filed 09/08/22   Page 2 of 5   PageID.435
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 115 of 149
PageID.1062

**From:** Marsh, Shirley
**Sent:** Tuesday, June 7, 2022 4:13 PM
**To:** Rains, Darryl P. <DRains@mofo.com>
**Cc:** Bregman, Julie <JBregman@mofo.com>
**Subject:** RE: Invoice for Services Rendered re Island Air/Carbonview (April 2022)

Hi Darryl,
Hope all is well.
The invoices has all been printed, packaged and are out for delivery via UPS overnight.
Please let me know if you need anything else.
Best,
Shirley

**From:** Rains, Darryl P. <DRains@mofo.com>
**Sent:** Tuesday, June 7, 2022 2:33 PM
**To:** 'Howell, John' <JHowell@wiley.law>
**Cc:** Melvin, Kimberly <KMelvin@wiley.law>; Christopher J. Muzzi (cmuzzi@hilaw.us)
<cmuzzi@hilaw.us>; 'Rahman Connelly' <rahman.connelly@pillsburylaw.com>; Bregman, Julie
<JBregman@mofo.com>; Marsh, Shirley <SMarsh@mofo.com>; Marinuzzi, Lorenzo
<LMarinuzzi@mofo.com>; Rains, Darryl P. <DRains@mofo.com>
**Subject:** RE: Invoice for Services Rendered re Island Air/Carbonview (April 2022)

John:

Thanks for your email.  We have just completed our work to revise our invoices to
eliminate charges not properly allocated to the insured matter.  We have also
collected the invoices issued by Chris Muzzi's and Rahman Connelly's firms.

The attached spreadsheet lists all of our (revised) charges and disbursements, and
has tabs for the invoices issued by Messrs. Muzzi's and Connelly's firms.

EXHIBIT F

Case 1:22-cv-00391-SOM-KJM   Document 11-8   Filed 09/08/22   Page 3 of 5   PageID.436
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 116 of 149
PageID.1063

My firm will send the underlying invoices to you by overnight service.

The next step is to schedule a conference call with you and Kim to discuss next steps.  The topics to be discussed will include:

- Whether you will commit to paying these invoices, and our current and future invoices, on an ongoing basis
- Whether we will need to file a declaratory judgment action, and assert claims for bad faith, in order to compel you to pay these invoices
- The proper allocation of defense fees and costs between insured and uninsured clients.

I will make myself available for such a call on Wednesday, Thursday, or Friday of this week.  Please suggest a few dates and times that would work for the two of you.

Thanks for your patience and professional courtesies.  I look forward to speaking with you.

Darryl


**Darryl P. Rains**
Senior Of Counsel
DRains@mofo.com
T +1 (650) 813- 5866
M +1 (650) 296-0988

Morrison Foerster
755 Page Mill Road
Palo Alto, CA 94304-1018

**ⅡⅠORRISON**
**FOERSTER**

mofo.com | LinkedIn | Twitter

---

**From:** Howell, John <JHowell@wiley.law>
**Sent:** Tuesday, June 7, 2022 8:36 AM
**To:** Rains, Darryl P. <DRains@mofo.com>
**Cc:** Melvin, Kimberly <KMelvin@wiley.law>
**Subject:** FW: Invoice for Services Rendered re Island Air/Carbonview (April 2022)


**External Email**

---

Darryl,

Case 1:22-cv-00391-SOM-KJM   Document 11-8   Filed 09/08/22   Page 4 of 5    PageID.437
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 117 of 149
PageID.1064

Can you let us know where things stand with the segregation of the earlier invoices?

Thanks,

John

 | John E. Howell
Attorney at Law
jhowell@wiley.law

Wiley Rein LLP • 2050 M Street NW • Washington, DC 20036
o:  202.719.7047 • m:  617.372.2608
Download V-Card | wiley.law | Bio | Executive Summary Blog

Please update your records to reflect our new office address.

---

**From:** Marsh, Shirley <SMarsh@mofo.com>
**Sent:** Monday, June 6, 2022 3:58 PM
**To:** Legal Invoices <LegalInvoices@lawrenceinv.com>
**Cc:** professional.liability.claims@us.qbe.com; Melvin, Kimberly <KMelvin@wiley.law>; Marinuzzi, Lorenzo <LMarinuzzi@mofo.com>; Rains, Darryl PButterfield, Benjamin W. <BButterfield@mofo.com>; Bregman, Julie <JBregman@mofo.com>
**Subject:** Invoice for Services Rendered re Island Air/Carbonview (April 2022)

<strong style="color:red">External Email</strong>

---

Good afternoon,

Attached please find our invoice, and back-up, for services rendered through April 30, 2022 respecting Island Air/Carbonview.

If you have any questions, or if we can be of any assistance, please do not hesitate to contact us.

Thank you and best regards,
Shirley

**Shirley Marsh**
Legal Secretary to Lorenzo Marinuzzi
smarsh@mofo.com
T +1 (212) 336-4203

**ΙΙΙorrison  ꓔoerster**

mofo.com | LinkedIn | Twitter

Case 1:22-cv-00391-SOM-KJM   Document 11-8   Filed 09/08/22   Page 5 of 5   PageID.438
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 118 of 149
PageID.1065

=========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.
.

CONFIDENTIALITY: This email and any attachments are confidential, except where the email states it can be disclosed, and it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender and delete this email and any attachments.

Case 1:22-cv-00391-SOM-KJM   Document 11-9   Filed 09/08/22   Page 1 of 3     PageID.439
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 119 of 149
PageID.1066

# EXHIBIT G

Case 1:22-cv-00391-SOM-KJM   Document 11-9   Filed 09/08/22   Page 2 of 3   PageID.440
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 120 of 149
PageID.1067

Kimberly M. Melvin
202.719.7035
kmelvin@wiley.law

John E. Howell
202.719.7047
jhowell@wiley.law



Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Tel:  202.719.7000

**wiley.law**

July 14, 2022

**VIA E-MAIL**

Darryl Rains
Morrison & Foerster LLP
DRains@mofo.com

Re:   Insured:       Hawaii Island Air, Inc.
      Insurer:       QBE Specialty Insurance Company
      Matter:        Elizabeth A. Kane, Bankruptcy Trustee, et al.
      QBE Policy:    QPL0192298 (the "Policy")
      QBE Claim:     570784N

Dear Mr. Rains,

As you know, this firm represents QBE Specialty Insurance Company ("QBE") in connection
with the above-referenced matter.  On behalf of QBE, we write in response to your June 14,
2022 letter concerning legal fees and costs incurred on behalf of your client, Paul Marinelli, and
certain other entities in connection with the above-referenced matter.  Although Mr. Marinelli
previously informed QBE that he would not seek coverage for **Defense Costs** under the Policy,
after QBE filed the interpleader proceeding styled *QBE Specialty Insurance Company v. Kane*,
Ad. Proc. No. 22-90006 (Bankr. D. Haw.) (the "Interpleader"), Mr. Marinelli has submitted
$3,560,492.84 in legal fees generated by your firm, Pillsbury Winthrop Shaw and Pittman LLP
and local counsel Tsugawa Lau & Muzzi LLLC.[1]  Your June 14, 2022 letter requested that 80%
of such amounts be covered under the Policy.

QBE has advanced **Defense Costs** in connection with this matter to the extent that the relevant
**Insureds** received an order from the Bankruptcy Court granting relief from the automatic stay.
The Court granted Mr. Marinelli's motion for relief from the automatic stay to seek coverage
under the Policy on May 31, 2022. *In re Hawaii Island Air, Inc.*, No. #17-01078 (D. Haw.), Dkt.
No. 1105.  QBE received supporting documentation for the invoices discussed above on July 1,
2022 and received payment instructions today, July 14, 2022.

As discussed in QBE's Motion for Leave to Deposit Interpleader Funds, and for Discharge,
Injunction, and Dismissal with Prejudice filed today in the Interpleader prior to receipt of
supporting documentation from your firm, QBE was informed that certain **Insureds** received
settlement demands that, together with the legal fees submitted by Mr. Marinelli (as well as
those incurred and to be submitted by other **Insureds**), exceed the remaining limit of liability of
the Policy.  In light of the competing demands on the Policy's proceeds by various **Insureds**,
QBE is unable to accept Mr. Marinelli's proposal to pay 80% of legal fees and costs jointly

---

[1] Terms appearing in bold are defined in the Policy.

EXHIBIT G

Case 1:22-cv-00391-SOM-KJM   Document 11-9   Filed 09/08/22   Page 3 of 3    PageID.441
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 121 of 149
PageID.1068

Darryl Rains
July 14, 2022
Page 2

incurred on behalf of himself and non-**Insured** parties. QBE notes further that Mr. Marinelli and the non-**Insured** parties engaged two national law firms, in addition to local counsel, and incurred more than $3.5 million in legal fees and costs without informing QBE of the magnitude of the amounts being incurred and purporting not to request coverage for those amounts under the Policy.[2]

Under these circumstances, QBE is constrained to seek leave to deposit the remaining Policy proceeds into the Bankruptcy Court's registry.  As we discussed, QBE intended to continue paying pay covered **Defense Costs**, including those incurred by Mr. Marinelli, subject to the receipt of supporting documentation and agreement concerning an appropriate allocation for amounts incurred on behalf of non-Insured parties. Unfortunately, because settlement demands have been made that exceed the remaining limit of liability, QBE is unable to make further **Defense Costs** payments at this time.

QBE continues to reserve all rights and defenses under the Policy and applicable law.  If the **Insured** has any questions concerning this letter, please feel free to contact us.

Sincerely,

Kimberly M. Melvin
John E. Howell

cc:     Michael Chung (Michael.chung@us.qbe.com)

---

[2] QBE is not liable for any incurred **Defense Costs** to which it has not given prior written consent, such consent not to be unreasonably withheld.  Policy, General Terms & Conditions, Section VI.B.2.

wiley.law

Case 1:22-cv-00391-SOM-KJM   Document 11-10   Filed 09/08/22   Page 1 of 6     PageID.442
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 122 of 149
PageID.1069

# EXHIBIT H

Case 1:22-cv-00391-SOM-KJM   Document 11-10   Filed 09/08/22   Page 2 of 6   PageID.443
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 123 of 149
PageID.1070

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| In re | ) | Case No. 17-01078 |
| | ) | (Chapter 7) |
| HAWAII ISLAND AIR, INC., | ) | |
| | **)** | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| QBE SPECIALTY INSURANCE | ) | Adv. Proc. No. 22-90006 |
| COMPANY, | ) | |
| | ) | DECLARATION OF COUNSEL FOR |
| Interpleader Plaintiff, | ) | INTERPLEADER DEFENDANTS |
| | ) | CHRISTOPHER GOSSERT AND |
| vs. | ) | CATHERINE YANNONE aka Kitty |
| | ) | Lagareta; EXHIBIT "1" |
| Elizabeth A. Kane, Trustee for | ) | |
| HAWAII ISLAND, AIR, INC., | ) | |
| DAVID UCHIYAMA, | ) | |
| CHRISTOPHER GOSSERT, PAUL | ) | |
| MARINELLI, JEFFREY AU, | ) | |
| CATHERINE YANNONE, PHILIP | ) | |
| WEGESCHEIDE, DAVID | ) | |
| PFLIEGER, and PARTIES | ) | |
| UNKNOWN, | ) | JUDGE:  Honorable Robert J. Faris |
| | ) | |
| Interpleader Defendants. | ) | |
| _____ | ) | |

## DECLARATION OF COUNSEL
## FOR INTERPLEADER DEFENDANTS CHRISTOPHER GOSSERT AND
## CATHERINE YANNONE aka Kitty Lagareta

    1.    I, DAVID C. FARMER, am Counsel for Interpleader-Defendants

CHRISTOPHER GOSSERT and CATHERINE YANNONE aka Kitty Lagareta in

EXHIBIT H

Case 1:22-cv-00391-SOM-KJM   Document 11-10   Filed 09/08/22   Page 3 of 6     PageID.444
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 124 of 149
PageID.1071

this action (together "Defendants") and make this Declaration upon personal knowledge.

2.    Attached hereto as Exhibit "1" is a true and accurate copy of a letter dated July 11, 2022, from counsel for the plaintiffs in the related lawsuit entitled *Elizabeth A. Kane, Bankruptcy Trustee, et al. v. PaCap Aviation Finance, LLC, et al.*; Civil Nos. 19-00574 JAO-RT and 20-00246 JAO-RT (Consolidated) to me, which contains a settlement offer from plaintiffs to Defendants.

3.    Although the letter states it will expire on July 25, 2022, I have been informed that the offer remains open and is still valid.

4.    Defendants and plaintiffs are in active and ongoing discussions to finalize the pending settlement offer, which Defendants intend to submit to the Court for approval pursuant to Haw. Rev. Stat. § 663-15.5.

## 28 U.S.C. § 1746 DECLARATION

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 19th day of August 2022.

/s/ David C. Farmer
DAVID C. FARMER

Attorney for Interpleader Defendants
CHRISTOPHER GOSSERT and
CATHERINE YANNONE aka Kitty Lagareta

Case 1:22-cv-00391-SOM-KJM   Document 11-10   Filed 09/08/22   Page 4 of 6      PageID.445
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 125 of 149
PageID.1072

# EXHIBIT "1"

Case 1:22-cv-00391-SOM-KJM   Document 11-10   Filed 09/08/22   Page 5 of 6   PageID.446
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 126 of 149
PageID.1073

Nickolas A. Kacprowski
Partner

nickolas.kacprowski@dentons.com
D    +1 808-441-6131

Dentons US LLP
1001 Bishop Street
Suite 1800
Honolulu, HI  96813
United States

dentons.com

July 11, 2022

**By Email**

| Subject to FRE Rule 408 and |
| HRS Chapter 658H |
| Confidential Settlement Communication |

David Farmer, Esq.
225 Queen Street, Suite 15A
Honolulu, HI 96813
Email:  farmerd001@gmail.com

Re:    Elizabeth A. Kane, Bankruptcy Trustee, et al. v. PaCap Aviation Finance, LLC,
       et al.; Civil Nos. 19-00574 JAO-RT and 20-00246 JAO-RT (Consolidated)

Dear Mr. Farmer:

Following up on discussions we had through the mediator, Plaintiffs make this offer to resolve any claims against Christopher Gossert and Catherine Yannone for $1.2 million each, which are their shares of the QBE insurance policy at issue.  We would also be amendable to discussing reducing those amounts by the amounts of defense costs that Mr. Gossert and Ms. Yannone have incurred that have or would draw down the QBE policy.  We would agree that any settlement agreement would be contingent on you obtaining approval and funding of the settlement amount from the Debtor's insurer, QBE, and would not be effective as to any parties until such approval and funding is obtained.[1]  Plaintiffs further offer to join in any motion for good faith settlement and dismissal of all claims against Mr. Gossert and Ms. Yannone from other parties.

This offer will expire on July 25, 2022.

---

[1]    Settlement of the Trustee's claims necessarily would require Bankruptcy Court approval, and we would seek that approval at the appropriate time.

Fernanda Lopes & Associados ► Guevara & Gutierrez ► Paz Horowitz Abogados ► Sirote ► Adepetun Caxton-Martins Agbor & Segun ►
Davis Brown ► East African Law Chambers ► Eric Silwamba, Jalasi and Linyama ► Durham Jones & Pinegar ► LEAD Advogados ► Rattagan
Macchiavello Arocena ► Jiménez de Aréchaga, Viana & Brause ► Lee International ► Kensington Swan ► Bingham Greenebaum ► Cohen &
Grigsby ► Sayarh & Menjra ► For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

Case 1:22-cv-00391-SOM-KJM   Document 11-10   Filed 09/08/22   Page 6 of 6   PageID.447
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 127 of 149
PageID.1074

dentons.com

**Subject to FRE Rule 408 and
HRS Chapter 658H
Confidential Settlement Communication**

Very truly yours,

Nickolas A. Kacprowski

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 1 of 22    PageID.448
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 128 of 149
PageID.1075

# EXHIBIT I

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 2 of 22   PageID.449
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 129 of 149
PageID.1076

GALLAGHER KANE AMAI & REYES
Attorneys at Law, A Law Corporation

J. PATRICK GALLAGHER 3417-0
KAMALOLO K. KOANUI-KONG 10753-0
745 Fort Street, Suite 1550
Honolulu, Hawaii 96813
Tel. No. (808) 531-2023
pgallagher@insurlawhawaii.com
kkoanui-kong@insurlawhawaii.com

WILEY REIN LLP

KIMBERLY M. MELVIN
JOHN E. HOWELL
2050 M Street NW
Washington, DC 20036
Tel. No. (202) 719-7000
kmelvin@wiley.law
jhowell@wiley.law

Attorneys for Interpleader-Plaintiff
QBE SPECIALTY INSURANCE COMPANY

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re: | ) Case No.: 17-01078 |
| | ) (Chapter 7) |
| HAWAII ISLAND AIR, INC., | ) |
| | ) ADVERSARY NO. 22-90006 |
| Debtor. | ) |
| | ) **INTERPLEADER-PLAINTIFF** |
| | ) **QBE SPECIALTY INSURANCE** |
| | ) **COMPANY'S REPLY IN** |
| QBE SPECIALTY INSURANCE | ) |
| COMPANY, | ) **Hearing** |
| | ) **Date: September 9, 2022** |
| Interpleader-Plaintiff, | ) **Time: 10:00 a.m.** |
| | ) **Judge: Honorable Robert J. Faris** |
| v. | ) |
| | ) *(Caption continued on next page)* |

EXHIBIT I

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 3 of 22     PageID.450
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 130 of 149
PageID.1077

| | | |
|---|---|---|
| ELIZABETH KANE, AS CHAPTER 7 TRUSTEE FOR HAWAII ISLAND AIR, INC., DAVID UCHIYAMA, CHRISTOPHER GOSSERT, PAUL MARINELLI, JEFFREY AU, CATHERINE YANNONE, PHILIP WEGESCHEIDE, PACAP AVIATION FINANCE, LLC, MALAMA INVESTMENTS, LLC, DAVID PFLIEGER, AND PARTIES UNKNOWN, | ) ) ) ) ) ) ) ) ) ) ) | **SUPPORT OF FIRST AMENDED MOTION FOR LEAVE TO DEPOSIT INTERPLEADER FUNDS AND FOR DISCHARGE, INJUNCTION AND DISMISSAL WITH PREJUDICE; DECLARATION OF KIMBERLY M. MELVIN IN SUPPORT OF INTERPLEADER-PLAINTIFF QBE SPECIALTY INSURANCE COMPANY'S MOTION FOR** |
| Interpleader-Defendants. | ) ) ) ) ) ) ) ) ) ) ) | **INTERPLEADER FUNDS AND FOR DISCHARGE, INJUNCTION AND DISMISSAL WITH PREJUDICE; EXHIBITS 1 – 3; CERTIFICATION OF WORD LIMIT; CERTIFICATE OF SERVICE** |

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 4 of 22   PageID.451
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 131 of 149
PageID.1078

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.     INTRODUCTION ......................................................................................1

II.    ARGUMENT ...........................................................................................3

      A.    The Conditions for Interpleader and Discharge of QBE are Met. ........3

      B.    An Injunction is Necessary to Prevent Irreparable Harm ...................10

III.    CONCLUSION ........................................................................................15

U.S. Bankruptcy Court - Hawaii   #22-90006   Dkt # 146   Filed  09/02/22   Page 3 of 21

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 5 of 22   PageID.452
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 132 of 149
PageID.1079

# TABLE OF AUTHORITIES

## CASE
## PAGECases

*. Pruco Life Ins. Co. v. Chao Hui Tan*, No. 19-CV-00335-WHO, 2020 WL 2572804 (N.D. Cal. May 21, 2020) ........................................................................................................................14

*also Am. Gen. Life Ins. Co. v. Maurer,* No. CV 17-00187-BRO (KK), 2017 WL 7803793, at *10 (C.D. Cal. July 14, 2017) ................................................................................................................14

*Davis v. Jackson Nat. Life Ins. Co.*, No. 2:14-CV-96-FTM-38DNF, 2014 WL 5780086, at *2 (M.D. Fla. Nov. 5, 2014) ........................................................................................................13

*Id* 8

*In re Hawaii Island Air, Inc.*, No. 17- 01079 (Bankr. D. Haw. Filed Apr. 26, 2022), Dkt. No. 1081, at 29 8

*Krishna v. Colgate Palmolive Co.*, No. 90 CIV. 4116, 1991 WL 125186, at *2 (S.D.N.Y. July 2, 1991)... 8

*Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1014 (9th Cir. 2012) ........................................................10

*Lehto v. Allstate Ins. Co.*, 31 Cal. App. 4th 60, 71, 36 Cal. Rptr. 2d 814, 820 (1994), *as modified* (Jan. 13, 1995) ...............................................................................................6, 7, 8, 9

*Lincoln Nat'l Life Ins. Co. v. Mudd*, No. SACV2001271JVSKESX, 2020 WL 10689643, at *2 (C.D. Cal. Sept. 30, 2020) ................................................................................................11

*Marinelli v. QBE*, No. 22-cv-391 (D. Haw.) ..........................................................................................12

*Metro. Life Ins. Co. v. Billini*, No. CIVS0602918WBSKJM, 2007 WL 4209405, at *2 (E.D. Cal. Nov. 27, 2007) .........................................................................................................12

*Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 895 (9th Cir. 2012) ................................................9

*Midland Nat'l Life Ins. Co. v. Owens*, No. SACV212006JVSADSX, 2022 WL 2057495, at *4 (C.D. Cal. Apr. 27, 2022) ........................................................................................................14

*Miller, Inc. Ret. Income Plan v. Magallon,* No. 207CV00162, 2008 WL 2620748, at *3 (E.D. Cal. July 2, 2008) ...............................................................................................................11

*Miller, Inc. Ret. Income Plan v. Magallon,* No. 207CV00162MCEGGH, 2008 WL 2620748, at *3 (E.D. Cal. July 2, 2008) ................................................................................................14

*Minnesota Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 980 (9th Cir. 1999). ...............................................8

*Nat'l Life Ins. Co. v. Alembik-Eisner*, 582 F. Supp. 2d 1362, 1369–70 (N.D. Ga. 2008) .........................13

*Nebraska Ass'n of Sch. Boards, Inc. v. Strategic Governmental Sols., Inc.,* No. 4:08CV3052, 2008 WL 1774989, at *3 (D. Neb. Apr. 14, 2008) .................................................................15

*New York Life Ins. Co. v. Terry*, No. 5:15-CV-353-HAI, 2017 WL 102965 (E.D. Ky. Jan. 10, 2017)......10

*Oregon Mut. Ins. Co. v. Homeward Residential, Inc.*, No. 13-CV-02359 JST, 2013 WL 12122294, at *5 (N.D. Cal. Oct. 24, 2013) .............................................................................................15

*Oregon Mut. Ins. Co. v. Homeward Residential, Inc.*, No. 13-CV-02359 JST, 2013 WL 12122294, at *5 (N.D. Cal. Oct. 24, 2013), report and recommendation adopted, No., 2013 WL 12122415 (N.D. Cal. Nov. 13, 2013) ...................................................................................................15

*Primerica Life Ins. Co. v. Grim*, No. 09-CV-0108-RAJ, 2009 WL 3297481, at *3 (W.D. Wash. Oct. 13, 2009) ...................................................................................................................11, 12

*Primerica*, 2009 WL 3297481, at *3 ........................................................................................................12

*Pruco Life Ins. Co. v. Tan*, No. 19-CV-00335-JCS, 2020 WL 2574662, at *5 (N.D. Cal. May 4, 2020) ..14

*Prudential Ins. Co. of America v. Hovis*, 553 F.3d 258, 264 (3d Cir.2009) ...............................................10

*Radder v. Symetra Life Ins. Co.*, No. CV110873, 2012 WL 13012453, at *2 (C.D. Cal. Apr. 20, 2012) ....9

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 6 of 22     PageID.453
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 133 of 149
PageID.1080

*Schwartz v. State Farm Fire & Cas. Co.,* 88 Cal. App. 4th 1329, 1341, 106 Cal. Rptr. 2d 523, 532
    (2001), *as modified on denial of reh'g (*June 5, 2001). .........................................................................7

*Trustees of IL WU-PMA Pension Plan v. Peters*, 660 F. Supp. 2d 1118, 1145 (N.D. Cal. 2009) .............14

v

Case 1:22-cv-00391-SOM-KJM  Document 11-11  Filed 09/08/22  Page 7 of 22  PageID.454
Case 1:22-cv-00450-SOM-KJM  Document 81-20  Filed 07/31/23  Page 134 of 149
PageID.1081

**INTERPLEADER-PLAINTIFF QBE SPECIALTY INSURANCE
COMPANY'S REPLY IN SUPPORT OF FIRST AMENDED MOTION
FOR LEAVE TO DEPOSIT INTERPLEADER FUNDS AND FOR
<u>DISCHARGE, INJUNCTION AND DISMISSAL WITH PREJUDICE</u>**

## I.     <u>INTRODUCTION</u>

QBE seeks leave to deposit the remaining proceeds (the "Proceeds") of the

directors and officers liability policy it issued to the Debtor (the "Policy") into the

Court's registry, to be discharged from further liability and to enjoin other

proceedings concerning the Policy.  It retains no interest in the Proceeds and seeks

no advantage in filing this proceeding.  The Insureds under the Policy have divergent

strategies and demands concerning the use of the Proceeds and have asserted claims

amongst themselves for which they seek coverage.[1]

QBE sought to resolve this matter globally through mediation in November

2021 but was unable to do so because the Insureds disagreed about whether to pursue

settlement discussions at that time.  Given the conflicting positions of the Insureds

and that QBE cannot favor the interests of some Insureds over others, QBE was

constrained to institute this proceeding to allow a fair apportionment of the Proceeds.

Certain Interpleader-Defendants, Mr. Marinelli, Mr. Au, PaCap Aviation

Finance LLC ("PaCap") and Mr. Wegescheide, have opposed this motion, asserting

that QBE can and should pay their defense costs without regard to the pending

---

[1]     Capitalized terms not defined in this reply are defined in the Policy.

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 8 of 22     PageID.455
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 135 of 149
PageID.1082

settlement demands against other Interpleader-Defendants, Mr. Gossert and Ms. Yannone. Even that is not possible. Mr. Marinelli and Mr. Au/PaCap did not submit their defense costs at the initiation of the underlying dispute. Instead, they held those costs for nearly three years. Only after this proceeding had been instituted did they seek coverage for their defense costs that collectively exceed the remaining Proceeds.

QBE does not seek to avoid any responsibility under the Policy. However, it cannot comply with all of the Insureds' conflicting demands for the use of the Proceeds, and it cannot favor the interests of some Insureds over others. In these circumstances, courts have held that an insurer may file an interpleader to ensure that all insureds' interests are fairly accounted for and to protect itself from duplicative and inconsistent liability.

Indeed, such circumstances are uniquely suited for resolution through the interpleader mechanism of Federal Rule of Civil Procedure 22 and Bankruptcy Rule 7022. The Interpleader-Defendants have made claims to the Proceeds that are mutually incompatible. QBE is a disinterested stakeholder disclaiming any interest in the Proceeds. Under well-established law, QBE is entitled to a discharge from further liability concerning the Policy or the Proceeds. Moreover, re-litigation of the Interpleader-Defendants' claims to the Proceeds in other proceedings would constitute irreparable harm that would destroy the effectiveness of this proceeding

2

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 9 of 22   PageID.456
Case 1:22-cv-00450-SOM-KJM   Document 81-20   Filed 07/31/23   Page 136 of 149
PageID.1083

and undermine the relief to which QBE is entitled.  Accordingly, an injunction against such proceedings is appropriate and necessary.

## II.  ARGUMENT

### A.  The Conditions for Interpleader and Discharge of QBE are Met.

The history of this matter is unique.  Three years ago, on August 12, 2019, the Debtor's Chapter 7 Trustee (the "Trustee") filed an Adversary Proceeding styled *Kane v. PaCap Aviation Finance, LLC*, Adv. Proc. No. 19-90027, in this Court against, *inter alia*, Jeffrey Au, Paul Marinelli, Catherine Yannone, and Christopher Gossert (the "Trustee Proceeding").  At that time, QBE accepted coverage for the Trustee Proceeding under the Policy and agreed to defend or to advance Defense Costs, subject to a reservation of rights. Declaration of Kimberly M. Melvin dated September 2, 2022 ("Melvin Reply Decl.") ¶ 4.

The Policy affords coverage for Defense Costs.  Policy, Section X.E. However, two Interpleader-Defendants, Mr. Marinelli and Mr. Au, chose not to submit their defense costs to QBE for reimbursement as they were incurred. Declaration of Michael Chung in Support of QBE's Motion for Leave to Deposit Interpleader Funds, Dkt. No. 114 ("Chung Decl.") ¶ 5.  Mr. Marinelli's counsel incurred $3,560,783.84 jointly on behalf of Mr. Marinelli and other defendants to the Trustee Proceeding who are not covered under the Policy.  Chung Decl. ¶ 6. The invoices were issued by two national law firms, as well as Hawaii counsel.

3

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 10 of 22
Case 1:22-cv-00450-SOM-KJM   Document 85-20   Filed 07/31/23   Page 137 of 149
PageID.1084

Melvin Reply Decl. ¶ 5.  Mr. Marinelli did not provide copies of invoices for these costs until June 2022 (well after the interpleader was filed) and then acknowledged that they are not covered in their entirety but that "proper allocation of defense fees and costs between insured and uninsured clients" is necessary.   Melvin Reply Dec. ¶ 6 and Exhibit 1.    Mr. Marinelli did not provide supporting documentation for the invoices until July 1, 2022.  Melvin Reply Decl. ¶ 7.   These invoices were not paid by Mr. Marinelli himself but were paid pursuant to an indemnification agreement by Lawrence Investments LLC or an affiliated entity. Melvin Reply Decl. ¶ 8, Exhibit 2.

Meanwhile, Mr. Au and PaCap incurred $2,920,436.55 in costs, which Mr. Au did not submit until August 8, 2022.  Melvin Reply Decl. ¶ 8. Mr. Au and PaCap submitted additional invoices on September 2, 2022, bringing the total to $3,630,732.93, QBE has also received defense invoices on behalf of Mr. Wegescheide totaling $12,678.37 and Mr. Pflieger totaling $48,945. Chung Decl. ¶ 6.

The submitted defense amounts alone total more than $7.25 million, which well exceeds the $5,513,221.51 in remaining Proceeds.  Mr. Marinelli's assertion in response to this motion that "[n]o conflict has arisen among the insureds as to the

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 11 of 22
Case 1:22-cv-00450-SOM-KJM   Document 85-20   Filed 07/31/23   Page 138 of 149
PageID.1085

payment of [] defense costs" is simply false.  Dkt. 139 at 1.[2]  QBE cannot pay all of the defense costs submitted by the various Insureds, and their submissions of amounts in excess of the remaining limits necessarily conflict.  Had Mr. Marinelli and Mr. Au sought relief from the automatic stay and submitted their defense costs as they were incurred, QBE could have audited them for reasonableness and worked to resolve allocation issues concerning uninsured parties.  Instead, Mr. Marinelli and Mr. Au stood by for years without submitting those costs before changing course and demanding payment immediately.

Further complicating these matters, Interpleader-Defendant PaCap filed cross-claims and third-party claims against other Insured Interpleader-Defendants in connection with the causes of action asserted in the Trustee Proceeding:

a.   a Cross-Claim filed in the Trustee Proceeding styled *PaCap Aviation Finance, LLC, et al. v. Lawrence Investments, LLC, et al.*, naming as Cross-Defendants, *inter alia*, Paul Marinelli, Catherine Yannone and Christopher Gossert; and

---

[2]   If, as Mr. Marinelli contends, there were no conflict among the Interpleader-Defendants concerning the payment of defense costs, there would be no reason to oppose this motion.  Mr. Marinelli could simply apply for payment of his submitted costs from the interpleaded funds and immediately receive payment if his entitlement to such payment were as clearly established as he suggests.  The fact that Mr. Marinelli objects to the Court determining the fair and appropriate apportionment of the Policy Proceeds in this interpleader proceeding, where all Insureds' interests are represented, belies his contention that there is no conflict.

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 12 of 22
Case 1:22-cv-00450-SOM-KJM   Document 85-20   Filed 07/31/23   Page 139 of 149
PageID.1086
PageID.1592

    b.       a Third-Party Complaint filed in the Trustee Proceeding, styled *PaCap*

*Aviation Finance LLC*, *v. David Uchiyama*, naming David Uchiyama

as a Third-Party Defendant (the "PaCap Third-Party Complaint").

 Given the various competing demands on the Proceeds, QBE attempted to pursue global settlement discussions to use the Policy Proceeds to resolve all pending matters to the benefit of all Insureds through a November 2021 mediation. Melvin Reply Decl. ¶ 10, Exhibit 3.  Mr. Au and PaCap refused to participate in that mediation.  *Id.*  Then, in June 2022, the Trustee made individual settlement demands on Mr. Gossert and Ms. Yannone totaling $2.4 million.  Declaration of David A. Farmer Dkt. No. 133 at 11-12.  The Trustee continues to seek settlements of the Trustee Proceeding using the Proceeds of the Policy despite voluntarily dismissing her counterclaim in this interpleader.  *Id.*

While QBE initially intended to continue advancing Defense Costs under the Policy pending the Court's grant of this motion, the amount of the fees and costs that Mr. Marinelli and Mr. Au submitted nearly three years after the Trustee Proceeding had been filed, combined with the pending settlement demands against Mr. Gossert and Ms. Yannone, made that course of action impracticable.

"An insurer cannot favor the interests of one insured over the other."  *Lehto v. Allstate Ins. Co.*, 31 Cal. App. 4th 60, 71, 36 Cal. Rptr. 2d 814, 820 (1994), *as modified* (Jan. 13, 1995).  Further, "[a]n insurer's refusal to pay a policy limit claim

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 13 of 22
Case 1:22-cv-00450-SOM-KJM   Document 86-20   Filed 07/31/23   Page 140 of 149
PageID.8620
PageID.1087

is not unreasonable if the insurer has a good faith belief that it is faced with multiple claims against its insureds." *Id.* "An insurer facing multiple claims on a limited pool of funds has at least two means of protecting itself without breaching its duty to either insured." *Schwartz v. State Farm Fire & Cas. Co.,* 88 Cal. App. 4th 1329, 1341, 106 Cal. Rptr. 2d 523, 532 (2001), *as modified on denial of reh'g (*June 5, 2001).[3] "The first is to seek a negotiated agreement among the insureds as to a fair apportionment of the pool of funds. If that approach fails, an insurer may file an interpleader action as other insurers do when faced with multiple claimants to a single fund." *Id.*

QBE attempted the first approach—facilitating a global resolution of the Trustee Proceeding and related matters. That approach failed at least in part because not all of the Insureds agreed to participate, and QBE filed this interpleader proceeding to ensure that the interests of all of the Insureds are fairly protected. In these circumstances, an "interpleader action [is] perfectly proper" and will "provide[] a judicially supervised forum for the collective resolution of all

---

[3]      The District Court has noted that the Hawaii Supreme Court often looks to California law when its own precedent is silent. *E.g., Puna Geothermal Venture v. Allianz Glob. Risks US Ins. Co*., No. CV 19-00451 SOM-WRP, 2019 WL 6619851, at \*5 (D. Haw. Dec. 5, 2019); *Aana v. Pioneer Hi-Bred Int'l, Inc*., No. CIV. 12-00231 LEK, 2014 WL 806224, at \*13 (D. Haw. Feb. 27, 2014).

7

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 14 of 22
Case 1:22-cv-00450-SOM-KJM   Document 86-20   Filed 07/31/23   Page 141 of 149
PageID.1088

competing claims, the very purpose of interpleader." *Lehto* 36 Cal. Rptr. 2d 814 at 820.

Mr. Marinelli's contention that settlement demands had not been made against Mr. Gossert and Ms. Yannone at the time this proceeding was filed is not determinative. Interpleader "extends to potential, as well as actual, claims." *Minnesota Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 980 (9th Cir. 1999). "Actual claims need not have been actually filed; it is sufficient that the stakeholder can demonstrate a real and reasonable fear of multiple liability." *Id.*; *see also Krishna v. Colgate Palmolive Co*., No. 90 CIV. 4116, 1991 WL 125186, at *2 (S.D.N.Y. July 2, 1991) ("The language of both Rule 22 and 28 U.S.C. § 1335 allow for the invocation of interpleader for the possibility of prospective claims.").

The criteria for interpleader are plainly met—both now and at the time this adversary proceeding was filed. Although Mr. Marinelli and Mr. Au had not submitted defense invoices for payment at the time QBE filed this proceeding, they had reserved the right to do so, and the Trustee Proceeding involved and continues to involve a claim for damages well in excess of the remaining Proceeds. *See* Trustee Elizabeth A. Kane's Opposition to Paul Marinelli's Motion to Lift the Automatic Stay, *In re Hawaii Island Air, Inc.*, No. 17- 01079 (Bankr. D. Haw. Filed Apr. 26, 2022), Dkt. No. 1081, at 29 (stating that the Trustee "seek[s] to recover amount in excess of the $5 million [] Policy"). "There is no requirement that the threat to

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 15 of 22
Case 1:22-cv-00450-SOM-KJM   Document 86-20   Filed 07/31/23   Page 142 of 149
PageID.862
PageID.1089

multiple liability come from a pre-existing claim and courts have allowed interpleader when a competing claim has not yet been made." *Radder v. Symetra Life Ins. Co.*, No. CV110873, 2012 WL 13012453, at *2 (C.D. Cal. Apr. 20, 2012). Here, the potential for claims for settlements and defense costs under the Policy had more than "a minimal threshold level of substantiality," when this proceeding was filed, and QBE's fear of conflicting claims was borne out by the current demands for payment of defense costs and settlements that well exceed the remaining Proceeds. *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 895 (9th Cir. 2012).

QBE filed this proceeding to ensure that the interests of each of the Insureds is protected in the absence of any opportunity to settle the Trustee Proceeding and associated cross-claims and third-party claims on a global basis. QBE cannot pay the defense costs and settlements requested by the various Interpleader-Defendants because they exceed the remaining Proceeds. The "very purpose of interpleader" is to afford a forum to fairly resolve the competing claims. *Lehto*, 36 Cal. Rptr. 2d 814 at 820. QBE therefore respectfully requests that the Court permit it to deposit the Proceeds into the Court's registry and discharge QBE from any further liability in connection with the Policy or the Proceeds.

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 16 of 22
Case 1:22-cv-00450-SOM-KJM   Document 8-20   Filed 07/31/23   Page 143 of 149
PageID.1090
PageID.863

**B.**    <u>**An Injunction is Necessary to Prevent Irreparable Harm**</u>.

In light of the conflicting demands upon the Proceeds, "[t]his is a classic interpleader action, and as such Defendants should be enjoined from prosecuting any other proceeding related to the same subject matter." *New York Life Ins. Co. v. Terry*, No. 5:15-CV-353-HAI, 2017 WL 102965 (E.D. Ky. Jan. 10, 2017).  The U.S. Court of Appeals for the Ninth Circuit has held that "a disinterested stakeholder may not be subjected to liability for its failure to resolve the controversy over entitlement to the stake in one claimant's favor, but []a stakeholder whose alleged tort caused the controversy is not absolved of liability by filing an interpleader action." *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1014 (9th Cir. 2012).  For such purported torts to survive, they must be "truly independent" of the issue of who is entitled to the interpleaded funds and in what amount.  *Id.* at 1014 (quoting *Prudential Ins. Co. of America v. Hovis*, 553 F.3d 258, 264 (3d Cir.2009)).  For this reason, the *Lee* court found that a negligence claim concerning alleged errors by the insurer in policy documentation that led to the dispute between the claimants over the policy proceeds was "wholly separate and apart" from a life insurer's alleged failure to pay policy proceeds and therefore the independent tort claim was not extinguished by interpleader.  *Id.*  The *Lee* Court observed that "many courts have held that those who have acted in bad faith to create a controversy over the stake may not claim the protection of interpleader." *Id.* at 1012 (collecting authority).  In the absence of such

10

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 17 of 22
Case 1:22-cv-00450-SOM-KJM   Document 86-20   Filed 07/31/23   Page 144 of 149
PageID.1091

a wholly independent tort, "[c]ourts may dismiss insurance companies from interpleader actions and grant permanent injunctions as they relate to insurance amount, provided the insurance company be disinterested." *Lincoln Nat'l Life Ins. Co. v. Mudd*, No. SACV2001271JVSKESX, 2020 WL 10689643, at *2 (C.D. Cal. Sept. 30, 2020) (noting that an interpleader action "prevents a breach of contract claim for failure to perform under the policy").

QBE is indisputably disinterested in the Proceeds, and there is no allegation that QBE caused the competing demands for the Proceeds to pay defense costs or settlements. An injunction is therefore appropriate.

Mr. Marinelli and Mr. Au contend that QBE is not entitled to an injunction against litigation involving the Policy and the Proceeds. Neither disputes that the Court has the power to enter an injunction in this Rule 22 interpleader proceeding. *See Miller, Inc. Ret. Income Plan v. Magallon,* No. 207CV00162, 2008 WL 2620748, at *3 (E.D. Cal. July 2, 2008) ("[I]t is still possible for the Court to enjoin defendants in a Rule interpleader action . . . when 'it is found that pending or threatened state court and/or other federal district court proceedings will destroy the effectiveness of the interpleader suit or the enforceability of its judgment."); *Primerica Life Ins. Co. v. Grim*, No. 09-CV-0108-RAJ, 2009 WL 3297481, at *3 (W.D. Wash. Oct. 13, 2009) ("[U]nder Rule 22 interpleader, the Court may nonetheless discharge [an insurer] from liability regarding the policy proceeds and

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 18 of 22
Case 1:22-cv-00450-SOM-KJM   Document 86-20   Filed 07/31/23   Page 145 of 149
PageID.1092

enjoin the [defendants] from pursuing any further claims against [the insurer] or its agents concerning the policy proceeds under principles of equity.").

Mr. Marinelli contends, however, that such an injunction should not extend to the lawsuit he filed in the District Court against QBE asserting breach of contract and "bad faith" against QBE in connection with his claim for defense costs under the Policy. Complaint, *Marinelli v. QBE,* No. 22-cv-391 (D. Haw.) (the "Marinelli Action"). This argument is unfounded. Where an insurer deposits policy proceeds in an interpleader action, it is appropriate that the insureds be "enjoined from pursuing any further claims regarding the policy proceeds against [the insurer] or its agents." *Primerica*, 2009 WL 3297481, at *3. "Given the futility of an interpleader action if claimants file separate suits against the stakeholder, the court may enjoin the claimants from doing so." *Metro. Life Ins. Co. v. Billini*, No. CIVS0602918WBSKJM, 2007 WL 4209405, at *2 (E.D. Cal. Nov. 27, 2007). This interpleader proceeding would be futile if Mr. Marinelli or others were able to maintain a separate proceeding seeking the same Proceeds that QBE seeks to deposit here.

Mr. Marinelli asserts that his claims for breach of contract damages and "bad faith" are independent of this interpleader proceeding. Dkt. 139 at 7. They are not. The purported contract damages Mr. Marinelli would seek are the very Proceeds of the Policy that are the subject of this interpleader and that Mr. Marinelli asserts

12

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 19 of 22
Case 1:22-cv-00450-SOM-KJM   Document 86-20   Filed 07/31/23   Page 146 of 149
PageID.1093

should be paid on his behalf.  Complaint, Marinelli Action[4] ¶ 68.  With respect to

the "bad faith" claim, "the question is whether the []claims are independent of the

reason for the filing of the interpleader action." *Nat'l Life Ins. Co. v. Alembik-Eisner*,

582 F. Supp. 2d 1362, 1369–70 (N.D. Ga. 2008).  Where an insurer does "not act in

bad faith in filing the interpleader action" it does "not act[] in bad faith in refusing

to pay out the proceeds of the policy" interpleaded.  *Id* at 1371.  Where interpleader

is proper, an insurer "should be relieved of *all* liability regarding damages and

attorney fees related to the insurance policy." *Davis v. Jackson Nat. Life Ins. Co.*,

No. 2:14-CV-96-FTM-38DNF, 2014 WL 5780086, at *2 (M.D. Fla. Nov. 5, 2014)

(emphasis added).

Mr. Marinelli's action against QBE fundamentally challenges the propriety of

this interpleader proceeding itself and is not an independent tort under *Lee*.

Complaint, Marinelli Action ¶ 3.  It is hard to imagine a proceeding that would more

"destroy the effectiveness of the interpleader suit" than a claim alleging that the

filing of the interpleader was improper and that instead of interpleading the

Proceeds, QBE should have paid the majority of them to the entity that has

indemnified Mr. Marinelli for his litigation costs.  *Miller, Inc. Ret. Income Plan v.*

*Magallon,* No. 207CV00162MCEGGH, 2008 WL 2620748, at *3 (E.D. Cal. July 2,

---

[4]      QBE reserves the right to assert in response to the Marinelli Action that such
action asserts compulsory counterclaims that Mr. Marinelli waived by failing to
bring them in this proceeding.

13

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 20 of 22
Case 1:22-cv-00450-SOM-KJM   Document 86-20   Filed 07/31/23   Page 147 of 149
PageID.1094

2008).  The injunction QBE seeks is limited to actions concerning the Policy or the Proceeds and is well within the Court's authority.

Mr. Marinelli and Mr. Au also assert that QBE does not face irreparable harm absent an injunction.  The "irreparable harm" standard "is usually met, however, where there is a likelihood of costly and judicially wasteful relitigation of claims and issues that were already adjudicated in federal court." *Trustees of IL WU-PMA Pension Plan v. Peters*, 660 F. Supp. 2d 1118, 1145 (N.D. Cal. 2009). Accordingly, "[t]he Court will generally grant such an injunction [against further claims] where there is a likelihood of costly and judicially wasteful relitigation of claims and issues that were already adjudicated in federal court." *Pruco Life Ins. Co. v. Tan*, No. 19-CV-00335-JCS, 2020 WL 2574662, at *5 (N.D. Cal. May 4, 2020), *report and recommendation adopted sub nom. Pruco Life Ins. Co. v. Chao Hui Tan*, No. 19-CV-00335-WHO, 2020 WL 2572804 (N.D. Cal. May 21, 2020).

In interpleader cases involving insurance contracts, the claimants to the insurance proceeds "must be enjoined from bringing any further action in state or federal court regarding the contracts" to prevent such wasteful relitigation and potentially inconsistent results. *Midland Nat'l Life Ins. Co. v. Owens*, No. SACV212006JVSADSX, 2022 WL 2057495, at *4 (C.D. Cal. Apr. 27, 2022)); *see also Am. Gen. Life Ins. Co. v. Maurer,* No. CV 17-00187-BRO (KK), 2017 WL 7803793, at *10 (C.D. Cal. July 14, 2017) (finding that insurers "would

14

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 21 of 22
Case 1:22-cv-00450-SOM-KJM   Document 1-11   Filed 07/31/23   Page 148 of 149
PageID.1095
PageID.868

suffer irreparable harm if it were forced to relitigate the same claims regarding Decedent's Policy in a subsequent proceeding."); *Oregon Mut. Ins. Co. v. Homeward Residential, Inc.*, No. 13-CV-02359 JST, 2013 WL 12122294, at *5 (N.D. Cal. Oct. 24, 2013), report and recommendation adopted, No., 2013 WL 12122415 (N.D. Cal. Nov. 13, 2013) (finding that "claimants should be enjoined from bringing any further action in state or federal court regarding their claims to the insurance benefits").

Additional litigation over the same Proceeds QBE is interpleading here would itself constitute waste and irreparable harm. "Lawsuits in another forum would destroy the relief to which [QBE] is entitled, and constitute irreparable harm." *Nebraska Ass'n of Sch. Boards, Inc. v. Strategic Governmental Sols., Inc.,* No. 4:08CV3052, 2008 WL 1774989, at *3 (D. Neb. Apr. 14, 2008). A permanent injunction against any lawsuit in state or federal court concerning the Policy or the Proceeds is appropriate and necessary to prevent that harm.

## III.   <u>CONCLUSION</u>

QBE requests leave to deposit into the Court's registry the remaining Proceeds of the Policy. Because there are conflicting claims to the Policy Proceeds, "step one" of the interpleader analysis is met, and QBE respectfully requests that it be discharged from liability with respect to the Policy Proceeds and dismissed from this action with prejudice. To avoid irreparable harm of wasteful and duplicative litigation that would defeat the purpose of this proceeding, QBE further requests a

15

Case 1:22-cv-00391-SOM-KJM   Document 11-11   Filed 09/08/22   Page 22 of 22
Case 1:22-cv-00450-SOM-KJM   Document 16-20   Filed 07/31/23   Page 149 of 149
PageID.1096
PageID.869

permanent injunction against any action in state or federal court against QBE

concerning the Policy or the Proceeds of the Policy.

DATED:  Honolulu, Hawaii, September 2, 2022.


/s/ *Kamalolo K. Koanui-Kong*
J. PATRICK GALLAGHER
KAMALOLO K. KOANUI-KONG
KIMBERLY M. MELVIN
JOHN E. HOWELL

Attorneys for Interpleader-Plaintiff
QBE SPECIALTY INSURANCE
COMPANY

16